FILED ___ LODGED
RECEIVED ___ COPY

FEB 21 2002

CLERK US DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Danny Lee Jones,<br><br>    Petitioner,<br><br>v.<br><br>Terry Stewart, et al.,<br><br>    Respondents. | CV 01-384-PHX-SRB<br><br>**ORDER**<br><br>(Death Penalty) |

    Petitioner has filed a motion for an order to allow confidential contact visits with him by Dr. Alan Goldberg, a neuropsychologist, and Jeannette Sheldon, an investigator for the Federal Public Defender, on February 25, 26, 27, and 28, 2002.[1] (Dkt. 26). Respondents oppose the motion. (Dkt. 27).

    Petitioner argues that the Arizona Department of Corrections ("ADOC") will not permit contact visits with inmates housed in Special Management Unit II ("SMU II"), including all inmates sentenced to death, absent a court order. Petitioner requests the Court enter an order allowing contact visits by Dr. Goldberg and Ms. Sheldon for the purpose of neuropsychological testing of Petitioner between 1:00 p.m. and 5:30 p.m. on

---

[1] On February 8, 2002, Petitioner filed a second motion for order allowing a contact visit with him by Dr. Pablo Stewart, a psychiatrist, and Jeannette Sheldon on March 18, 2002. That motion is not yet fully briefed.

February 25, 26 and 27, 2002, and between 9:00 a.m. and 1:00 p.m. on February 28, 2002. Petitioner contends that such tests cannot be performed through a thick glass partition separating inmates from visitors in non-contact visitation. Petitioner additionally requests that: (1) Dr. Goldberg not be required to wear a flak jacket and goggles if they interfere with testing of Petitioner; (2) ADOC remove handcuffs from Petitioner upon request by Dr. Goldberg for purposes of neurological testing; (3) Petitioner not be required to wear a stun belt during the visit because it may interfere with test results or be triggered inappropriately; (4) provision of a table no wider than three feet and four chairs; (5) Dr. Goldberg be allowed to physically contact Petitioner as necessary to conduct testing; and (6) Dr. Goldberg be permitted to bring in a small bag of candy for his own consumption due to his diabetic condition. Petitioner consents to an inventory of all instruments, equipment, manuals and the like before and after each testing session.

      Respondents oppose the motion. They argue that ADOC policy bars contact visits with inmates in special management units, including all inmates on death row in SMU II, requires anyone having contact with such inmates to wear protective goggles and a stab-resistant vest, and requires the inmate to be restrained whenever he is outside "a cell environment." (Response at 2). Respondents argue these measures are rationally related to legitimate penological concerns. They report that between November 2000 and June 2001, there were thirteen incidences of death row inmates found in possession of weapons or dangerous contraband. Respondents argue that as a consequence, ADOC instituted the use of stun belts on all death row inmates during court-ordered contact visits. (Id.) Respondents attach an affidavit of Bradley Johnson, M.D., a former ADOC psychiatrist, in which Dr. Johnson opines on the potential dangers to mental health professionals who conduct contact visits with inmates. Respondents ask the Court, in the event it grants Petitioner's motion, to deny Petitioner's request that the Court preclude use of ADOC's safety measures, such as wearing goggles and a stab-resistant vest and use of the stun

belt. Respondents also ask the Court to deny the motion with respect to Jeannette Sheldon.

In reply, Petitioner argue that until relatively recently, ADOC has not challenged contact visits or the participation of Ms. Sheldon, in lieu of attendance by counsel, during such visits. Petitioner also complains of the continuously evolving nature of security measures undertaken by ADOC.

The Court is mindful of the responsibilities of, and burdens upon, ADOC. However, competing responsibilities must be accommodated. In this case, such responsibilities include the evaluation of Petitioner by a neuropsychologist and psychiatrist in connection with his claims of unconstitutional conviction and/or sentence.

The Court concludes that contact visits will facilitate and expedite the evaluation of Petitioner by Dr. Goldberg and Respondents have not established that Petitioner poses such a security risk as to prevent a contact visit. The Court will also order that Ms. Sheldon be allowed to participate in contact visits to Petitioner with Dr. Goldberg, in lieu of attendance by counsel.

Accordingly,

**IT IS ORDERED** granting Petitioner's motion for order allowing contact visits with him by Dr. Alan Goldberg, a neuropsychologist, and Jeannette Sheldon, an investigator for the Federal Public Defender (Dkt. 26) under the following terms:

(1) Visitation by Dr. Alan Goldberg and Jeannette Sheldon shall occur on February 25, 26 and 27, 2002 from 1:00 p.m. to 5:30 p.m. and on February 28, 2002, from 9:00 a.m. to 1:00 p.m.

(2) Petitioner's counsel shall make arrangements with Respondents or their designees, for said visits.

(3) The Warden, through designated staff, may require Dr. Goldberg and Ms. Sheldon to subject all instruments, equipment, manuals and the like to inspection and inventory prior to and subsequent to each meeting with Petitioner.

(4) If requested by Dr. Goldberg, the Warden, through staff, shall remove handcuffs from Petitioner during the times required to complete certain tests. Petitioner shall remain in leg irons throughout the duration of the meetings. ADOC may require Petitioner to wear a stun belt during the meetings.

(5) Dr. Goldberg shall be allowed to remove any stab-resistant vest and/or goggles provided by ADOC if in his opinion such items interfere with the testing and evaluation of Petitioner. Ms. Sheldon shall wear the stab-resistant vest and goggles at all times during the meetings.

(6) The meetings between Petitioner, Dr. Goldberg, and Ms. Sheldon shall be confidential and take place in a room that allows for privacy. However, the room may have windows which allow the Warden, through staff, to observe the examination. If requested by Dr. Goldberg, the door to the room shall remain closed. Dr. Goldberg and Ms. Sheldon shall sit in chairs closest to the door, and Petitioner shall not go between them and the door without permission. The room in which the meetings take place shall have four chairs and a table no larger than three feet in width.

(7) Dr. Goldberg shall be allowed to have physical contact, i.e., touch Petitioner, to the extent necessary to conduct testing.

(8) Due to a diabetic condition, Dr. Goldberg shall be allowed to have a small bag of candy on his person during the meeting with Petitioner. However, Dr. Goldberg shall not give any candy or other food to Petitioner.

(9) The Arizona Department of Corrections ("ADOC") shall be held harmless from any liability resulting from any injury or harm inflicted upon Dr. Goldberg and/or Ms. Sheldon by Petitioner during the course of the meetings described herein; provided

1 | however, that such release from liability shall not extend to a release from liability for
2 | acts arising out of ADOC's own negligence or actionable wrongdoing.
3 |     DATED this __21__ day of February, 2002.

*/s/ Susan R. Bolton*
_____
SUSAN R. BOLTON
United States District Judge