```
┌─────────────────────────────────────┐
│ ✓ FILED      ____ LODGED             │
│   RECEIVED   ____ COPY               │
│                                      │
│        MAR 3 1 2004                  │
│                                      │
│  CLERK U S DISTRICT COURT            │
│     DISTRICT OF ARIZONA              │
│  BY_____ DEPUTY             │
└─────────────────────────────────────┘
```

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Danny Lee Jones, )  No. CV 01-384-PHX-SRB
)
      Petitioner, )  <u>DEATH PENALTY CASE</u>
)
vs. )
)  **ORDER RE: MOTIONS FOR**
)  **DISCOVERY AND EVIDENTIARY**
Dora B. Schriro, et al., )  **HEARING**
)
      Respondents. )
)
_____ )

Petitioner Danny Lee Jones ("Petitioner") is a state prisoner under sentence of death. Pending before the Court are Petitioner's motions for discovery and evidentiary hearing. (Dkts. 72, 73.)[1] Petitioner seeks discovery with regard to Claims 1-4, 6, 15, 16, 20-B and 20-I through M. He requests an evidentiary hearing on Claims 1-4, 15, 16, 20, 25 and 26. Respondents filed a consolidated opposition to the motions. Petitioner filed a reply.

Pursuant to the Court's general procedures governing resolution of capital habeas proceedings, the parties have completed briefing of both the procedural status and the merits of Petitioner's habeas claims. Therefore, the Court will first determine whether the claims for which Petitioner seeks discovery and/or an evidentiary hearing are appropriate for review on the merits by a federal habeas court or subject to a procedural bar before addressing the requests for evidentiary development.

---

[1] "Dkt." refers to the documents in this Court's case file.



**FACTUAL AND PROCEDURAL BACKGROUND**

In 1993, Petitioner was tried before a jury in Mohave County Superior Court for the murder of a friend, Robert Weaver, the murder of Weaver's 7-year-old daughter, Tisha, and the attempted murder of Weaver's grandmother, Katherine Gumina. The prosecution argued to the jury that the impetus of the crime was to steal Robert Weaver's gun collection and that Petitioner had acted alone. During trial, Petitioner admitted killing Robert Weaver, but testified that he had acted in self-defense, struck Gumina reflexively after he was startled by her, and that a man named Frank Sperlazzo, to whom Robert Weaver owed money for drugs, killed Tisha Weaver. (RT 9/9/93 at 3-142.)[2] The jury convicted Petitioner on all counts, and the trial judge sentenced him to death. On direct appeal, the Arizona Supreme Court affirmed. State v. Jones, 185 Ariz. 471, 917 P.2d 200 (1996).

Following denial of Petitioner's direct appeal, the Arizona Supreme Court appointed counsel to represent Petitioner in post-conviction proceedings under Rule 32 of the Arizona Rules of Criminal Procedure. It also directed the superior court to review and approve additional reasonable fees and costs pursuant to then-Ariz.Rev.St. § 13-4041(H) and ordered counsel to direct requests for the appointment of investigators and experts pursuant to Ariz.Rev.St. §§ 13-4013(B) and 13-4041(J) to the superior court. (PCR doc. 1.)

Rule 32 counsel filed several motions for appointment of experts and discovery. These included motions for disclosure of jail and prison records, including any psychiatric/psychological evaluations, disciplinary records, grading or population placement calculations and family history. (PCR doc. 12, 19.) The Rule 32 court granted these requests.[3] (PCR doc. 12, 19.) Counsel also filed motions for the appointment of a defense

---

[2] "RT" refers to the state court reporter's transcript; "PCR doc." refers to instruments and minute entries from Petitioner's Rule 32 post-conviction proceedings.

[3] Petitioner asserts that the Rule 32 court did not rule on his "Motion for Order to Disclose Petitioner's Jail Records," PCR doc. 12. (Dkt. 72 at 2.) In fact, the Rule 32 court signed the form of order provided by Petitioner on March 4, 1999. (PCR doc. 12.) Petitioner also asserts that the Rule 32 court never ruled on his "Motion to Authorize Release of the Confidential Portions of Defendant's Arizona Department of Corrections File," PCR doc. 19.

1  investigator, an aggravation/mitigation specialist, a forensic laboratory and DNA expert, an

2  Arizona certified criminal defense specialist, and a neuropsychologist. (PCR docs. 24, 26,

3  27.) Furthermore, counsel filed a motion for discovery of any information regarding a

4  polygraph given to Sperlazzo by Jerry LeClair of the Kingman Police Department, from

5  August through December, 1993. (PCR doc. 23.) The Rule 32 court granted the motion for

6  discovery and authorized the expenditure of up to $2,000 for a private investigator. (PCR

7  doc. 31.) Following oral argument, the court denied Petitioner's remaining motions for the

8  appointment of experts. (PCR doc. 42.) In April 2000, following a limited evidentiary

9  hearing, the trial court denied post-conviction relief. (RT 4/4/00; PCR docs. 72, 60, 59.) On

10 February 13, 2001, the Arizona Supreme Court summarily denied review. Petitioner

11 thereafter commenced habeas proceedings in this Court.

12              **PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT**

13         Because this case was filed after April 24, 1996, it is governed by the Antiterrorism

14 and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"). Lindh v. Murphy,

15 521 U.S. 320, 336 (1997); Woodford v. Garceau, 538 U.S. 202, 210 (2003). The AEDPA

16 requires that a writ of habeas corpus not be granted unless it appears that the petitioner has

17 properly exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); see also

18 Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509 (1982). To

19 properly exhaust state remedies, the petitioner must "fairly present" his claims to the state's

20 highest court in a procedurally appropriate manner. O'Sullivan v. Boerckel, 526 U.S. 838,

21 848 (1999).

22         A claim is "fairly presented" if the petitioner has described the operative facts and the

23 federal legal theory on which his claim is based so that the state courts have a fair

24 opportunity to apply controlling legal principles to the facts bearing upon his constitutional

25 claim. Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard v. Connor, 404 U.S. 270, 277-78

26

27 (Dkt. 72 at 2.) However, the Rule 32 court signed the form of order submitted with the

28 motion on March 15, 1999. (PCR doc. 19.)

1   (1971).[4] If a petitioner's habeas claim includes new factual allegations not presented to the

2   state court, the claim may be considered unexhausted if the new facts "fundamentally alter"

3   the legal claim presented and considered in state court. <u>Vasquez v. Hillery</u>, 474 U.S. 254,

4   260 (1986).

5        A habeas petitioner's claims may be precluded from federal review in either of two

6   ways. First, a claim may be procedurally defaulted in federal court if it was actually raised

7   in state court but found by that court to be defaulted on state procedural grounds. <u>Coleman</u>,

8   501 U.S. at 729-30. Second, a claim may be procedurally defaulted in federal court if the

9   petitioner failed to present the claim in any forum and "the court to which the petitioner

10   would be required to present his claims in order to meet the exhaustion requirement would

11   now find the claims procedurally barred." <u>Id.</u> at 735 n.1. This is often referred to as

12   "technical" exhaustion because although the claim was not actually exhausted in state court,

13   the petitioner no longer has an available state remedy. <u>See</u> <u>Gray v. Netherland</u>, 518 U.S. 152,

14   161-62 (1996) ("A habeas petitioner who has defaulted his federal claims in state court meets

15   the technical requirements for exhaustion; there are no state remedies any longer 'available'

16   to him.").

17        Rule 32 of the Arizona Rules of Criminal Procedure governs when petitioners may

18   seek relief in post-conviction proceedings and raise federal constitutional challenges to their

19   convictions or sentences in state court. Rule 32.2 provides, in part:

20        a. Preclusion. A defendant shall be precluded from relief under this
         rule based upon any ground:

21        . . . .

22        (2) Finally adjudicated on the merits on appeal or in any previous
         collateral proceeding;

23

24        *(3)   That has been waived at trial, on appeal, or in any previous*
         *collateral proceeding.*

25   _____

26       [4]    Resolving whether a petitioner has fairly presented his claim to the state court,

27   thus permitting federal review, is an intrinsically federal issue which must be determined by
   the federal court. <u>Wyldes v. Hundley</u>, 69 F.3d 247, 251 (8th Cir. 1995); <u>Harris v. Champion</u>,

28   15 F.3d 1538, 1556 (10th Cir. 1994).

b. Exceptions. Rule 32.2(a) shall not apply to claims for relief based on Rules 32.1(d), (e), (f), (g) and (h). When a claim under [these sub-sections] is raised in a successive or untimely petition, the petition must set forth the reasons for not raising the claim in the previous petition or in a timely manner. If meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner, the petition shall be summarily dismissed.

Ariz.R.Crim.P. 32.2 (2002)(emphasis added). Thus, pursuant to Rule 32.2, petitioners may not be granted relief on any claim which could have been raised in a prior Rule 32 petition for post-conviction relief. Only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted from a prior petition will the preclusive effect of Rule 32.2 be avoided.

Therefore, in the present case, if there are claims which have not been raised previously in state court, the Court must determine whether Petitioner has state remedies currently available to him pursuant to Rule 32. If no remedies are currently available, petitioner's claims are "technically" exhausted but procedurally defaulted. Coleman, 501 U.S. at 732, 735 n.1. In addition, if there are claims that were fairly presented in state court but found defaulted on state procedural grounds, such claims also will be found procedurally defaulted in federal court so long as the state procedural bar was independent of federal law and adequate to warrant preclusion of federal review. Harris v. Reed, 489 U.S. 255, 262 (1989). A state procedural default is not independent if, for example, it depends upon an antecedent federal constitutional ruling. See Stewart v. Smith, 536 U.S. 856 (2002) (per curiam). A state bar is not adequate unless it was firmly established and regularly applied at the time of application by the state court. Ford v. Georgia, 498 U.S. 411, 424 (1991).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. Reed v. Ross, 468 U.S. 1, 9 (1984). As a general matter, the Court will not review the merits of procedurally defaulted claims unless a petitioner demonstrates legitimate cause for the failure to properly exhaust in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on

1    the merits in federal court. <u>Coleman</u>, 501 U.S. at 735 n.1.

2        Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that "some

3    objective factor external to the defense impeded counsel's efforts to comply with the State's

4    procedural rule." <u>Id.</u>. at 753. Objective factors which constitute cause include interference

5    by officials which makes compliance with the state's procedural rule impracticable, a

6    showing that the factual or legal basis for a claim was not reasonably available to counsel,

7    and constitutionally ineffective assistance of counsel. <u>Murray v. Carrier</u>, 477 U.S. 478, 488

8    (1986). "Prejudice" is actual harm resulting from the alleged constitutional error. <u>Magby</u>

9    <u>v. Wawrzaszek</u>, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice resulting from a

10   procedural default, a habeas petitioner bears the burden of showing not merely that the errors

11   at his trial constituted a possibility of prejudice, but that they worked to his actual and

12   substantial disadvantage, infecting his entire trial with errors of constitutional dimension.

13   <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982).

14       If a petitioner cannot meet the cause and prejudice standard, the Court still may hear

15   the merits of procedurally defaulted claims if the failure to hear the claims would constitute

16   a "fundamental miscarriage of justice." <u>Sawyer v. Whitley</u>, 505 U.S. 333 (1992). The

17   "fundamental miscarriage of justice" exception is also known as the actual or procedural

18   innocence exception. There are two types of claims recognized under this exception: (1) that

19   a petitioner is "innocent of the death sentence," or, in other words, that the death sentence

20   was erroneously imposed; and (2) that a petitioner is innocent of the capital crime. In the

21   first instance, the petitioner must show by clear and convincing evidence that, but for a

22   constitutional error, no reasonable factfinder would have found the existence of any

23   aggravating circumstance or some other condition of eligibility for the death sentence under

24   the applicable state law. <u>Id.</u> at 336. In the second instance, the petitioner must show that "a

25   constitutional violation has probably resulted in the conviction of one who is actually

26   innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995). To establish the requisite probability,

27   the petitioner must show that "it is more likely than not that no reasonable juror would have

28   found petitioner guilty beyond a reasonable doubt." <u>Id.</u> Furthermore:

[A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Id. at 324.

## PROCEDURAL STATUS OF CLAIMS

The Court reviews the procedural status of all the claims for which an evidentiary hearing and/or discovery is sought:  Claims 1-4, 6, 15-16, 20, and 25-26.  Respondents concede that Claims 4 and 20 are properly exhausted.  (Dkts. 61 at 24, 41; 79 at 4.) Respondents contest exhaustion regarding the remaining claims, which are discussed below.

### Claim 1

In Claim 1, Petitioner alleges that he is factually innocent of Tisha Weaver's death because Frank Sperlazzo killed her.  He also alleges that he is innocent of the death penalty because one of the aggravating factors found by the court for both capital sentences was based on the conviction for Tisha's death and because various mitigating circumstances were not presented to or considered by the court.

Respondents argue that Claim 1 is unexhausted because Petitioner may pursue relief on an innocence claim under Rule 32.1(h) of the Arizona Rules of Criminal Procedure. Alternatively, Respondents argue that Claim 1 is not cognizable as a freestanding constitutional claim under Herrera v. Collins, 506 U.S. 390 (1993), which requires newly discovered evidence.  In reply, Petitioner asserts that he "argued at every level that he is innocent of the death penalty and innocent of Tisha Weaver's death," and that "[c]ontrary to Respondents' assertions . . . this claim is not a claim 'of actual innocence based on newly discovered evidence.' Herrera v. Collins, 506 U.S. 390, 400, 113 S.Ct. 853, 860 (1993)." (Dkt. 66 at 12.)

The Court finds that exhaustion of Claim 1 is irrelevant because the claim fails to provide any ground for habeas relief.  Petitioner concedes that he has no newly discovered evidence to proffer and fails to provide any authority that a claim of innocence alone,

1   especially one without new evidence, can rise to the level of a federal constitutional

2   violation.  See Herrera, 506 U.S. at 417 (observing that the threshold for a cognizable

3   freestanding innocence claim would have to be "extraordinarily high" and that a showing

4   would have to be "truly persuasive" for execution of a innocent prisoner to violate federal

5   constitution); Turner v. Calderon, 281 F.3d 851, 872-73 (9th Cir. 2002) (denying certificate

6   of appealability where petitioner neither alleged an independent constitutional violation nor

7   presented affirmative proof of innocence).  Likewise, regarding innocence of the death

8   penalty, Petitioner again fails to cite any authority that such an allegation can rise to the level

9   of an independent constitutional violation.  Accordingly, habeas relief on Claim 1 is denied.

10          **Claim 2**

11          In Claim 2, Petitioner alleges that during Rule 32 proceedings, the court violated his

12  due process right to a full and fair post-conviction proceeding by refusing to appoint an

13  independent investigator with capital experience, a neuropsychologist, a mitigation specialist,

14  an Arizona criminal defense specialist, and forensic experts.  Petitioner further alleges the

15  court violated his due process right to a full and fair post-conviction proceeding by

16  prohibiting any contact with trial jurors, which inhibited his ability to investigate potential

17  juror misconduct.

18          The Court finds that exhaustion of Claim 2 is irrelevant because the claim fails to

19  provide any ground for habeas relief.   In Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir.

20  1989) (per curiam), the Ninth Circuit Court of Appeals, following the majority of circuits,

21  held that errors concerning the process of a state post-conviction proceeding are not

22  cognizable in habeas corpus proceedings under 28 U.S.C. § 2254.  These errors are not

23  cognizable because they do not attack the constitutionality of a petitioner's detention but,

24  rather, represent an attack on a proceeding collateral to the detention.  Id.; see also Ortiz v.

25  Stewart, 149 F.3d 923, 939 (9th Cir. 1998); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th

26  Cir. 1997).  Accordingly, habeas relief on Claim 2 is denied.

27          **Claims 3, 6, 15, and 16**

28          In Claim 3, Petitioner alleges that the trial court violated his right to due process, a fair

- 8 -

1   trial, and a fair and reliable sentencing by granting him only limited funding for pretrial

2   expert assistance.  In Claim 6, Petitioner alleges that the trial court did not consider all of his

3   proffered mitigation in violation of his Fifth, Sixth, Eighth and Fourteenth Amendment

4   rights.   In Claim 15, Petitioner alleges that the State's failure to preserve potentially

5   exculpatory evidence violated his right to due process and a fair trial under the Fifth, Sixth,

6   Eighth and Fourteenth Amendments.  Claim 16 alleges that the State violated Petitioner's

7   right to due process, a fair trial and a reliable sentencing by suppressing exculpatory

8   evidence.

9       Petitioner presented Claims 3, 6, 15 and 16 to the state court in his first Rule 32

10  petition.  The court found these claims precluded based on Rule 32.2(a)(3) of the Arizona

11  Rules of Criminal Procedure because they could have been raised at trial or on direct appeal.

12  (RT 2/23/00 at 3-13.)[5]  The Arizona Supreme Court summarily denied review, therefore, we

13  "look through" that ruling and rely on the Rule 32 court's ruling as the last reasoned state

14  court ruling on these claims. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  The state

15  court's ruling was based solely on a state procedural bar and was independent of federal law.

16  See Stewart v. Smith, 536 U.S. 856, 860 (2002) (finding Rule 32.2(a)(3) rulings independent

17  of federal law).  Further, the Ninth Circuit has repeatedly held that a procedural bar based on

18  Rule 32.2(a)(3) is adequate because Arizona courts consistently and regularly apply Rule

19  32.2(a)(3).  See Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998) (citing Poland v.

20  Stewart, 117 F.3d 1094, 1106 (9th Cir. 1997); Martinez-Villareal v. Lewis, 80 F.3d 1301,

21  1306 (9th Cir. 1996); Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992)).  Because the

22  Rule 32 court's preclusion ruling rests on independent and adequate state grounds, federal

23  habeas review of these claims is barred unless Petitioner establishes cause and prejudice for

24  the default or that a fundamental miscarriage of justice will result if the claims are not

25

26      [5] Petitioner argues that the minute entry from the Rule 32 conference did not identify

27  the court's basis for finding these claims precluded, however, it is clear from the transcript
    of the conference that the Rule 32 court found preclusion based on Rule 32.2(a)(3) of the

28  Arizona Rules of Criminal Procedure.

1  reviewed on the merits. Petitioner has not alleged cause and prejudice with respect to Claims

2  6 or 15; accordingly, Claims 6 and 15 are procedurally barred.

3       With respect to Claims 3 and 16, Petitioner argues that they were properly exhausted

4  on direct review by virtue of the Arizona Supreme Court's independent sentencing review.

5  The Court disagrees. The Arizona Supreme Court has repeatedly stated that it independently

6  reviews each capital case to determine whether the death sentence is appropriate. See State

7  v. Lopez, 174 Ariz. 131, 143, 847 P.2d 1078, 1090 (1992); see also State v. Stokley, 182

8  Ariz. 505, 516, 898 P.2d 454, 465 (1995) ("When a death sentence is imposed in Arizona,

9  this court independently reviews the entire record for error, determines whether the

10 aggravating circumstances have been proved beyond a reasonable doubt, considers any

11 mitigating circumstances, and then weighs the aggravating and mitigating circumstances in

12 deciding whether there are mitigating circumstances sufficiently substantial to call for

13 leniency.") Arguably, that review of capital sentences rests on both state and federal grounds.

14 See State v. Brewer, 170 Ariz. 486, 493-94, 826 P.2d 783, 790-91 (1992) (discussing

15 Supreme Court's decisions in Gregg v. Georgia, 428 U.S. 153 (1976) and Godfrey v.

16 Georgia, 446 U.S. 420, 428 (1980), and stating that independent review of death penalty

17 necessary to ensure against arbitrary and capricious application); State v. Watson, 129 Ariz.

18 60, 63, 628 P.2d 943, 946 (1981) (Arizona Supreme Court "painstakingly examine[s] the

19 record to determine whether [the death penalty] has been erroneously imposed."); State v.

20 Richmond, 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976) (same).

21      The Arizona Supreme Court has never held that its review encompasses any and all

22 federal constitutional error at sentencing. In Brewer, the Arizona Supreme Court observed

23 that it has a duty to determine the propriety of the death penalty and that this decision "is

24 guided, above all, by the state's narrowly construed statutes specifying the limited

25 circumstances for which a defendant may be deemed death-eligible." 170 Ariz. at 494, 826

26 P.2d at 791. Thus, it appears that the Arizona Supreme Court's review is limited to ensuring

27 that, based on the evidence in the record, the imposition of a death sentence rests on

28 permissible grounds. While that analysis may include some degree of constitutional review,

1   the claims at issue here – whether the trial court provided adequate funding for defense
2   experts and whether the State suppressed exculpatory evidence – fall outside this limited
3   scope. Consequently, Claims 3 and 16 were not properly exhausted by virtue of the Arizona
4   Supreme Court's independent sentencing review, and the claims remain precluded as
5   determined by the state court.

6       Petitioner next argues that ineffective assistance of counsel establishes cause and
7   prejudice to excuse his failure to comply with state rules requiring that claims be raised at
8   trial and/or on appeal. Petitioner asserts only that his trial counsel was ineffective, as alleged
9   in Claim 20. First, no part of Claim 20 is based on counsel's failure to raise or preserve
10  Claims 3 and 16 at trial and/or sentencing. Therefore, even if Petitioner's allegations in
11  Claim 20 are meritorious, they would not establish cause for Petitioner's waiver at trial of
12  the State's alleged suppression of exculpatory evidence or Petitioner's failure to argue that
13  the trial court did not provide sufficient funding for defense experts. Second, Petitioner does
14  not allege any cause that would excuse the failure to raise Claims 3 and 16 on appeal, i.e.,
15  ineffective assistance of appellate counsel. Therefore, the Court finds that Petitioner has not
16  established cause based on ineffective assistance of counsel to excuse his default with respect
17  to Claims 3 and 16.

18      With respect to Claim 16, Petitioner also alleges that cause exists because
19  "'interference by officials' prevented him from discovering exculpatory evidence to support
20  [Claim 16]" and the "state concealed and later destroyed evidence relating to Frank
21  Sperlazzo." (Dkt. 66 at 46.) These assertions are conclusory and speculative and are not
22  sufficient to show cause and prejudice. Additionally, while the State's actions as alleged by
23  Petitioner might have hindered his ability to fully develop the claim, they did not preclude
24  him from raising and preserving the claim. Thus, the Court finds that Petitioner has not
25  established cause and prejudice to overcome the procedural default of Claim 16.

26  **Claim 25**

27      In Claim 25, Petitioner alleges that the Arizona Supreme Court's "abandonment" of
28  proportionality review of death sentences is unconstitutional. (Dkt. 54 at 139-42.) Petitioner

1  raised this claim for the first time in his Rule 32 petition. The Rule 32 court denied the claim

2  summarily, stating that it did not believe it had the "authority to rule on those [claims] that

3  have already been addressed by the Supreme Court." (RT 2/23/00 at 2.)  The Arizona

4  Supreme Court summarily denied review of this claim, therefore, our analysis of the

5  procedural status of this claim is based on the Rule 32 court's ruling. See Ylst, 501 U.S. at

6  803.

7        It appears the trial court's decision was based, not on preclusion due to prior rulings

8  in Petitioner's case, but on the fact that the Arizona Supreme Court and/or the United States

9  Supreme Court had previously addressed this legal claim in other cases. The Court reaches

10 this conclusion for two reasons.  First, the Arizona Supreme Court did not address

11 proportionality review in its appellate opinion on Petitioner's case, see Jones, 185 Ariz. at

12 471, 917 P.2d at 200, and Petitioner's case has never been brought before the United States

13 Supreme Court. Second, in contrast to the Rule 32 court's ruling on Claims 3, 6, 15 and 16,

14 the court did not express reliance on a state procedural bar in dismissing these claims.

15 Because the Rule 32 court did not "clearly and expressly" rely on a state procedural bar in

16 dismissing Claim 25, this Court is not precluded from reviewing it on the merits. Harris v.

17 Reed, 489 U.S. at 266.  Additionally, the Rule 32 court's ruling amounted to a denial on the

18 merits based on previously decided law.  Because the state court did not deny this claim

19 based on a procedural bar, and appears to have addressed it on the merits, Claim 25 is

20 properly exhausted.

21        Nonetheless, the Court finds no basis for evidentiary development of Claim 25 and

22 concludes that it is meritless as a matter of law.  Where statutory sentencing procedures

23 adequately channel the sentencer's discretion, a proportionality analysis is not

24 constitutionally required. McCleskey v. Kemp, 481 U.S. 279, 306 (1987); Pulley v. Harris,

25 465 U.S. 37 (1984).  Arizona's sentencing procedures for imposing the death penalty

26 adequately channel the sentencer's discretion. See Walton v. Arizona, 497 U.S. 639 (1990),

27 rev'd in part on other grounds by, Ring v. Arizona, 536 U.S. 584, 609 (2002); Richmond v.

28 Lewis, 506 U.S. 40, 50-51 (1992). In addition, the Ninth Circuit has expressly rejected the

1    argument that a petitioner's constitutional rights are violated by the Arizona Supreme Court's
2    failure to conduct a proportionality review.  See Ceja v. Stewart, 97 F.3d 1246, 1251 (9th Cir.
3    1996).  Accordingly, Claim 25 is denied on the merits.

4        **Claim 26**

5        In Claim 26, Petitioner alleges that death by lethal injection or by lethal gas violates
6    the Eighth Amendment, and that being afforded a choice as to method of execution is cruel
7    and unusual punishment.  (Dkt. 54 at 142-60.)  Respondents assert that while the lethal
8    injection portion of this claim was fairly presented in state court, the claim in its entirety was
9    not properly exhausted and is barred from federal review.[6]  (Dkt. 61 at 53.)

10        In his Rule 32 petition, Petitioner alleged that death by lethal injection is cruel and
11    unusual punishment.  (PCR doc. 44 at 49-50.)  Although he compared lethal injection to
12    lethal gas and the electric chair in arguing that injection was cruel and unusual, the focus of
13    the claim was death by lethal injection, not lethal gas or choice as to method of execution.
14    The Rule 32 court treated Claim 26 identically to Claim 25, summarily denying the claim
15    because it did not believe it had the "authority to rule on those [claims] that have already
16    been addressed by the Supreme Court." (RT 2/23/00 at 2.)  For the same reasons discussed
17    with respect to Claim 25, it does not appear that the Rule 32 court's summary denial rests on
18    an independent and adequate state procedural bar.  Therefore, the lethal injection aspect of
19    Claim 26 is properly exhausted and will be considered with respect to the pending motions;
20    it also will be reviewed on the merits in a future order.

21        Petitioner argues that the balance of Claim 26 was exhausted by virtue of the Arizona
22    Supreme Court's independent sentencing review.  For the reasons discussed with respect to
23    Claim 16, the Court disagrees.  The issues presented here – constitutionality of lethal gas and

24

25    _____

26        [6]    Respondents' Answer states that Petitioner raised lethal injection as cruel and
     unusual punishment in his Rule 32 petition, and then contradicts itself by stating that
27    Petitioner did not challenge lethal injection. (Dkt. 61 at 53.)  Based on the Court's review
     of Petitioner's Rule 32 petition, the Court assumes that Respondents meant to assert that
28    Petitioner challenged lethal injection but not lethal gas in his Rule 32 petition.

1 │ choice as to method of execution – fall outside the scope of the Arizona high court's

2 │ independent sentencing review, which is limited to ensuring that imposition of a death

3 │ sentence rests on permissible state statutory grounds. The Court, therefore, finds that these

4 │ aspects of Claim 26 were not properly exhausted in state court. If Petitioner were to return

5 │ to state court, these aspects of Claim 26 would be found precluded pursuant to Rule

6 │ 32.2(a)(3) of the Arizona Rules of Criminal Procedure. The lethal gas and "choice" aspects

7 │ of Claim 26 are, therefore, procedurally defaulted and will not be reviewed on the merits

8 │ absent a showing of cause and prejudice, or a fundamental miscarriage of justice.

9 │ Petitioner asserts that "[c]ounsel's errors in failing to investigate and present *this*

10 │ *evidence* rises to the level of ineffective assistance of counsel, constituting cause for the

11 │ procedural default," and that "[s]everal of the ineffective assistance claims go directly to this

12 │ claim," citing Claim 21. (Dkt. 66 at 92) (emphasis added). However, Petitioner does not

13 │ identify the "evidence" that counsel allegedly failed to investigate and present. In addition,

14 │ although Claim 21 alleges that trial and appellate counsel were ineffective for failing to raise,

15 │ among other issues, the constitutionality of [Petitioner's] death sentence and the Arizona

16 │ death penalty scheme," it does not specifically address counsel's failure to argue

17 │ unconstitutionality of lethal gas and choice of execution method. (Dkt. 54 at 130-31.) Thus,

18 │ even assuming Claim 21 is properly exhausted, the ineffectiveness claims raised therein do

19 │ not establish cause. In sum, the lethal gas and choice of execution method aspects of Claim

20 │ 26 are procedurally barred.

21 │ **Summary of Findings**

22 │ The Court concludes that Claims 1 and 2 fail to state cognizable grounds for habeas

23 │ relief. Claims 3, 6, 15, 16 and 26 (in part) are procedurally barred. Claim 25 fails on the

24 │ merits. Accordingly, Petitioner's motions for discovery and/or an evidentiary hearing as to

25 │ Claims 1, 2, 3, 6, 15, 16, 25 and 26 (in part) are denied, and these claims will be dismissed.

26 │ The Court will review whether an evidentiary hearing and/or discovery should be granted

27 │ with respect to the exhausted claims – Claims 4, 20 and 26 (in part).

28 │ /      /      /

1

## LEGAL STANDARD FOR EVIDENTIARY HEARING
## AND DISCOVERY

2

### Evidentiary Hearing

3

The decision whether to grant an evidentiary hearing when there are material facts in

4

dispute is generally at the discretion of the district court judge.  See Townsend v. Sain, 372

5

U.S. 293, 312, 318 (1963), overruled in part by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992),

6

and limited by § 2254(e)(2); Baja v. Ducharme, 187 F.3d 1075, 1077 (9th Cir. 1999); Rule

7

8, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (providing that the district court

8

judge shall determine if an evidentiary hearing is required).  However, a judge's discretion

9

is significantly circumscribed by § 2254(e)(2) of the AEDPA.  See Williams v. Taylor, 529

10

U.S. 420 (2000).

11

Section 2254 provides that:

12

*If the applicant has failed to develop the factual basis of a claim in State court*
13
*proceedings, the court shall not hold an evidentiary hearing on the claim*
*unless the applicant shows that –*

14

(A) the claim relies on –

15

       (i) a new rule of constitutional law, made retroactive to cases on collateral
16
       review by the Supreme Court, that was previously unavailable; or

17

       (ii) a factual predicate that could not have been previously discovered
       through the exercise of due diligence; and

18

(B) the facts underlying the claim would be sufficient to establish by clear and
19
convincing evidence that but for constitutional error, no reasonable factfinder
would have found the applicant guilty of the underlying offense.

20

28 U.S.C. § 2254(e)(2) (emphasis added).

21

As interpreted by the Supreme Court, subsection (e)(2) precludes an evidentiary

22

hearing in federal court only if the failure to develop a claim's factual basis is due to a "lack

23

of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."

24

Williams, 529 U.S. at 432.  "The purpose of the fault component of 'failed' is to ensure the

25

prisoner undertakes his own diligent search for evidence."  Id. at 435.  The Court found that

26

this rule served AEDPA's goal of furthering comity in that "federal courts sitting in habeas

27

are not an alternative forum for trying facts and issues which a prisoner made insufficient

28

1  effort to pursue in state proceedings." Id.; see also Cardwell v. Netherland, 971 F.Supp. 997,

2  1008 (E.D. Va. 1997) ("Ordinarily, a § 2254 petition is limited to the factual record

3  developed in state court proceedings"), aff'd Cardwell v. Greene, 152 F.3d 331 (4th Cir.

4  1998), overruled on other grounds, Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000).   In

5  correlation,  subsection  (e)(2)  allows  factual  development  when  a  petitioner  diligently

6  attempts to develop the factual basis of a claim in state court and is "thwarted, for example,

7  by the conduct of another or by happenstance was denied the opportunity to do so."

8  Williams, 529 U.S. at 432; see Baja, 187 F.3d at 1078-79.

9        In compliance with § 2254(e)(2), when the factual basis for a particular claim has not

10  been fully developed in state court, the first question for a district court in evaluating whether

11  to grant an evidentiary hearing on the claim is whether the petitioner was diligent in

12  attempting to develop its factual basis.   See Baja, 187 F.3d at 1078 (quoting Cardwell v.

13  Greene, 152 F.3d 331, 337 (4th Cir. 1998), overruled on other grounds, Bell v. Jarvis, 236

14  F.3d 149 (4th Cir. 2000)).   The Supreme Court set an objective standard for determining

15  "diligence," such that the requirement is dependent upon whether a petitioner "made a

16  reasonable attempt, in light of the information available at the time, to investigate and pursue

17  claims in state court." Williams, 529 U.S. at 435.   For example, when there is information

18  in the record that would alert a reasonable attorney to the existence and importance of certain

19  evidence, the attorney "fails" to develop the factual record if he does not make reasonable

20  efforts to sufficiently investigate and present the evidence to the state court. See id. at 438-

21  40 (counsel lacked diligence because he was on notice of possibly material evidence and

22  conducted only a cursory investigation); Alley v. Bell, 307 F.3d 380, 390-91 (6th Cir. 2002)

23  (lack of diligence because petitioner knew of and raised claims of judicial bias and jury

24  irregularities in state court, but failed to investigate all the factual grounds for such claims).

25        Absent unusual circumstances, diligence requires "that the prisoner, at a minimum,

26  seek an evidentiary hearing in state court in the manner prescribed by state law." Williams,

27  529 U.S. at 437; see Bragg v. Galaza, 242 F.3d 1082, 1090 (9th Cir. 2001), amended on

28  denial of reh'g, 253 F.3d 1150 (9th Cir. 2001) ("inactions show insufficient diligence" on

1    ineffective counsel claim because petitioner did not request an evidentiary hearing, and

2    brought claim only on appeal not in a collateral proceeding).  However, the mere request for

3    an evidentiary hearing may not be sufficient to establish diligence if a reasonable person

4    would have taken additional steps.  See Dowthitt v. Johnson, 230 F.3d 733, 758 (5th Cir.

5    2000) (petitioner requested hearing but found not diligent because he failed to present

6    affidavits of family members that were easily obtained without court order and with minimal

7    expense); see also Koste v. Dormire, 345 F.3d 974, 985-86 (8th Cir. 2003) (lack of diligence

8    despite hearing request because petitioner made no effort to develop the record or assert any

9    facts to support claim that his counsel was ineffective for knowing of and failing to

10   investigate his psychiatric condition), petition for cert. filed, (U.S. Nov. 17, 2003)(No. 03-

11   8988).  If an evidentiary hearing is requested, a petitioner's inability to persuade a state court

12   to conduct such a hearing does not in itself demonstrate lack of diligence.  See Cardwell, 152

13   F.3d at 338.

14          In sum, if this Court determines that a petitioner has not been diligent in establishing

15   the factual basis for his claims in state court, then the Court may not conduct a hearing unless

16   the petitioner satisfies one of § 2254(e)(2)'s narrow exceptions.  If, however, the petitioner

17   has not failed to develop the factual basis of his claim in state court, the Court will then

18   proceed to consider whether a hearing is appropriate or required under the criteria set forth

19   by the Supreme Court in Townsend.[7]  372 U.S. 293; see Baja, 187 F.3d at 1078 (quoting

20   Cardwell, 152 F.3d at 337).  A federal district court *must* hold an evidentiary hearing in a §

21   2254 case when the facts are in dispute if: (1) the petitioner "alleges facts which, if proved,

22

23          [7]    The admission of additional evidence not presented in state court may also
     implicate the exhaustion requirements of § 2254.  When supplemental evidence submitted
24   to the federal court does "not fundamentally alter the legal claim already considered by the
     state courts," then the claim remains exhausted and it need not be sent back to state court for
25   consideration of the additional evidence.  Vasquez v. Hillery, 474 U.S. 254, 260 (1986).
     However, if the additional evidence "places [petitioner's] claim in a significantly different
26   and stronger evidentiary posture than it had when presented in state court," then the claim
     is not exhausted.  Aiken v. Spalding, 841 F.2d 881, 883, 884 n.3 (9th Cir. 1988) (citing
27   Dispensa v. Lynaugh, 826 F.2d 375 (5th Cir. 1987), opinion vacated on reh'g on other
     grounds, 847 F.2d 211 (5th Cir. 1988)).
28

would entitle him to relief," and (2) the state court has not, "after a full hearing reliably found the relevant facts." Townsend, 372 U.S. at 312-13.   In addition, the Court established six circumstances under which there is presumptively no "full and fair hearing" at the state level:

> (1) the merits of the factual dispute were not resolved in the state hearing;
>
> (2) the state factual determination is not fairly supported by the record as a whole;
>
> (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;
>
> (4) there is a substantial allegation of newly discovered evidence;
>
> (5) the material facts were not adequately developed at the state-court hearing; or
>
> (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

See id. at 313.   In any other case in which the facts are in dispute and diligence has been established, the district court judge "has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim." Id. at 318 (noting that if a "habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings, [the judge] may, and ordinarily should, accept the facts as found in the hearing").

**Discovery**

Rule 6(a) of the Rules Governing Section 2254 Cases provides that "[a] party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and *for good cause shown* grants leave to do so, but not otherwise." Rule 6(a), 28 U.S.C. foll. § 2254 (emphasis added).   Thus, unlike the usual civil litigant in federal court, a habeas petitioner is not entitled to discovery "as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997); see also Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999).   The Supreme Court has developed a general approach to the question of whether a petitioner has established "good cause" sufficient to warrant discovery. See Bracy, 520 U.S. at 904-09. A habeas court must identify the essential elements of the petitioner's substantive claim and

- 18 -

1   then evaluate whether "specific allegations before the court show reason to believe that the

2   petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled

3   to relief." Id. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)); see also Ward

4   v. Whitley, 21 F.3d 1355, 1367 (5th Cir. 1994). However, a court should not allow a habeas

5   petitioner "to use federal discovery for fishing expeditions to investigate mere speculation."

6   Calderon v. United States Dist. Court for the Northern Dist. of Cal. (Nicolaus), 98 F.3d 1102,

7   1106 (9th Cir. 1996); see also Aubut v. State of Maine, 431 F.2d 688, 689 (1st Cir. 1970)

8   ("[h]abeas corpus is not a general form of relief for those who seek to explore their case in

9   search of its existence").

10                            **ANALYSIS OF MOTIONS**

11       **Claim 4**

12       Claim 4 alleges the trial court erred by denying Petitioner's motion for a continuance

13   during the sentencing proceeding so that he could obtain and present additional mitigating

14   evidence pursuant to Eddings v. Oklahoma, 455 U.S. 104 (1982), and Lockett v. Ohio, 438

15   U.S. 586 (1978).[8] (Dkt. 54 at 56-60.) Petitioner seeks an evidentiary hearing to present new

16   evidence never considered by the state court relating to organic brain damage, post-traumatic

17   stress disorder, attention deficit hyperactivity disorder, polysubstance abuse and a mood

18   disorder. (Dkt. 72 at 27.) He also wishes to present evidence that he suffered head injuries

19   and physical, psychological, verbal and sexual abuse at the hands of relatives throughout his

20   childhood and adolescence. (Id. at 23.) Finally, he wishes to present evidence of prenatal

21   exposure to toxins and the effects of malnutrition and violence suffered by his mother. (Id.

22   at 24-25.) In essence, Petitioner seeks a hearing in order to demonstrate how he was

23   prejudiced by the alleged error of the trial court in denying his request for a continuance of

24

25

26       [8] In Lockett v. Ohio, 438 U.S. 586, 604 (1978), and Eddings v. Oklahoma, 455 U.S.
     104 (1982), the Supreme Court held that the Eighth and Fourteenth Amendments
27   substantively require that in a capital sentencing proceeding, the sentencer cannot be
     precluded from considering, as a mitigating factor, any aspect of a defendant's character
28   or record or any circumstance related to the offense.

1    sentencing.

2        In determining whether the denial of a continuance is so arbitrary as to violate
3    constitutional due process, there is no mechanical test for deciding the question. See Ungar
4    v. Sarifite, 376 U.S. 575, 589 (1964). The relevant inquiry consists of the "circumstances
5    present in every case, particularly in the reasons presented to the trial judge at the time the
6    request is denied." Id. In Morris v. Slappy, 461 U.S. 1, 11 (1983), the Court stated that state
7    trial courts must be accorded wide discretion in deciding whether to grant continuances,
8    notwithstanding that constitutional rights may be implicated. See also Ungar, 376 U.S. at
9    589. Such discretion generally will not exceed constitutional bounds unless it is exercised
10   on the basis of an "unreasoning and arbitrary insistence upon expeditiousness in the face of
11   a justifiable request for delay." Morris, 461 U.S. at 11-12 (further citation omitted).

12       In evaluating the merits of Claim 4, the Court's initial task will be to determine, based
13   on the circumstances at the time of Petitioner's sentencing, see Ungar, 376 U.S. at 589,
14   whether the trial court's denial of the requested continuance constituted a deprivation of
15   Petitioner's right to due process. This inquiry is necessarily made on the basis of the existing
16   state court record, including the basis for the continuance as presented to the trial judge, see
17   Morris, 461 U.S. at 11-12 (considering the record at length), and is a purely legal question.
18   Only if a constitutional violation is found will prejudice need to be evaluated. See Brecht
19   v. Abrahamson, 507 U.S. 619 (1993). Because the evidence Petitioner seeks to present in
20   an evidentiary hearing is relevant only to a harmlessness analysis, the Court finds no basis
21   for a hearing at this time. See Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir.1992)
22   (holding that evidentiary hearing not required if "there are no disputed facts and the claim
23   presents a purely legal question). If, when analyzing the merits of Claim 4, the Court
24   determines that the trial court's failure to continue sentencing violated Petitioner's
25   constitutional rights, it will sua sponte consider whether a hearing is necessary to determine
26   harmless error. See Rule 8, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254
27   (providing that the district court judge shall determine if an evidentiary hearing is required).
28   Accordingly, Petitioner's request for a hearing on Claim 4 for the purpose of establishing

1    prejudice from the trial court's denial of a continuance is denied without prejudice.

2    **Claim 20**

3    Claim 20 consists of twenty separate allegations of counsel ineffectiveness.  In his

4    motion for evidentiary hearing, Petitioner argues generally that any failure to develop the

5    factual basis of his claims cannot be attributed to him because during Rule 32 proceedings,

6    the trial court denied or failed to rule on various requests for investigative and expert

7    assistance, denying him the opportunity to conduct a "complete investigation." (Dkt. 72 at

8    3.) He also alleges that the court was biased because it expressed concern about case costs.

9    (Id. at 10.)  Petitioner does not, however, assert with any specificity how the alleged

10   deficiencies during post-conviction proceedings interfered with his ability to develop the

11   individual claims of ineffectiveness asserted in Claim 20.

12   It appears from the Court's review of Petitioner's claims that the alleged post-

13   conviction failures would not have affected his ability to develop the factual basis of every

14   one of the alleged instances of ineffectiveness.  For example, in Claim 20-A, Petitioner

15   asserts that trial counsel failed to enlist the assistance of qualified and experienced co-

16   counsel. During a 2000 evidentiary hearing, Rule 32 counsel had the opportunity to question

17   trial counsel about the need for second counsel.  (RT 2/23/00 at 14-16, 18-25; RT 4/4/00 at

18   44, 53-54, 55-56, 58, 71-72, 89, 95-97, 99, 105, 111-12, 123.) Nowhere in the instant motion

19   for evidentiary hearing does Petitioner allege what additional factual development is

20   necessary for resolution of Claim 20-A or why this additional factual development did not

21   occur in state court.   This is but one example of Petitioner's inadequate briefing.

22   Accordingly, the Court will deny Petitioner's motion for evidentiary hearing without

23   prejudice to refiling. Any renewed motion for a hearing on Claim 20 shall separately address

24   the factual development sought to be undertaken in federal court as well as diligence in state

25   court with respect to *each* allegation of ineffectiveness.

26   **Claim 26 (in part)**

27   The exhausted portion of Claim 26 alleges that lethal injection is cruel and unusual

28   punishment.  Petitioner presented this claim in his Rule 32 petition, and the trial court

1   summarily denied it. In these proceedings, Petitioner seeks an evidentiary hearing to present
2   evidence that an inmate suffers in an inhumane and unusual manner during lethal injection.
3   (Dkt. 72 at 28.) The exhibits relating to this claim that were proffered by Petitioner with his
4   amended petition include declarations and autopsy reports concerning Arizona prisoners
5   executed in 1993, 1996 and 2000.

6       Although not argued by the Respondents, it appears to the Court that the facts
7   contained in the documents were readily available during state post-conviction proceedings
8   and could have been developed by Rule 32 counsel. Therefore, it does not appear that the
9   state court's denial of an evidentiary hearing on this claim curtailed Petitioner from
10  investigating and presenting such information in his Rule 32 petition. Absent any contrary
11  showing, the Court concludes that Petitioner did not act diligently in investigating and
12  pursuing the facts of Claim 26, because his efforts were not reasonable in light of the
13  information available at the time. See Williams, 529 U.S. at 435. The Court also finds that
14  Petitioner has failed to establish one of the two narrow exceptions set forth in 28 U.S.C. §
15  2254(e)(2). Accordingly, Petitioner's motion for an evidentiary hearing on the lethal injection
16  aspect of Claim 26 is denied.

17  **Discovery**

18      In his motion for discovery, Petitioner seeks leave to subpoena a plethora of
19  investigative and other records relating to his case from the Bullhead City Police Department,
20  the Arizona Department of Public Safety, the Mohave County Attorney's Office, the Mohave
21  County Medical Examiner's Office, the Western Clinical Laboratory, and the Western
22  Arizona Regional Medical Center. He also seeks to subpoena from these agencies an array
23  of methods, policies and procedures normally followed and as applied in Petitioner's specific
24  case. Further, he seeks discovery from the Nevada Probation and Parole Department "for all
25  records, notes, impressions and information, confidential or otherwise" related to Petitioner
26  and from the United States Marine Corps for all enlistment "records, notes, service records
27  and discharge materials, including medical and psychiatric, of Randy L. Jones," Petitioner's
28  stepfather.

In his motion, Petitioner summarily asserts that he has raised "colorable constitutional violations which warrant additional development through the discovery of additional facts." (Dkt. 73 at 4.)  He further asserts that "good cause" is shown because his state post-conviction proceedings "did not provide him any opportunity to develop through discovery the facts supporting these claims."  (Id.)  In their opposition, Respondents argue that the motion should be denied because Petitioner failed "to set forth any specific facts linking the discovery he seeks to specific elements of the identified habeas claims." (Dkt. 79 at 3.)  The Court agrees.  Petitioner's broad-ranging motion is, on its face, insufficient to show good cause under Rule 6.  It fails to identify any specific theory or facts sought to be developed through the requested discovery, or to link the requested discovery to individual claims. Instead, Petitioner seeks the Court's assistance in reinvestigating all aspects of his case. Rule 6 discovery may not be used for fishing expeditions.  See Nicolaus, 98 F.3d at 1106. Accordingly, Petitioner's motion for discovery is denied.

Based on the foregoing,

**IT IS ORDERED** that Petitioner's motion for discovery is **DENIED** without prejudice. (Dkt. 72-1.)

**IT IS FURTHER ORDERED** that Petitioner's motion for an evidentiary hearing is **DENIED.**  (Dkt. 73-1.)  With respect to Claim 20, any renewed motion for evidentiary hearing shall be filed within forty-five (45) days of the filing of this Order.

**IT IS FURTHER ORDERED** that habeas relief on Claims 1, 2, 3, 6, 15, 16, 25 and 26 (in part) is **DENIED**.

**IT IS FURTHER ORDERED** that if, pursuant to Local Rule 1.10(p), Petitioner or Respondents file a Motion for Reconsideration of this Order, such motion shall be filed within fifteen (15) days of the filing of this Order. The filing and disposition of such motion shall not toll the time for the filing of a renewed motion for evidentiary hearing provided for in this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court forward a copy of this Order to all counsel of record, Petitioner Danny Lee Jones, and to the Clerk of the Arizona Supreme

1   Court, 1501 W. Washington, Phoenix, AZ 85007-3329.

2        DATED this 30 day of March, 2004.

3

4                                    _____
5                                         SUSAN R. BOLTON
                                      United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28