1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9    Danny Lee Jones,                    )   No. CV-01-384-PHX-SRB
                                         )
10                  Petitioner,          )   <u>DEATH PENALTY CASE</u>
                                         )
11   vs.                                 )
                                         )
12                                       )   **MEMORANDUM OF DECISION**
     Dora Schriro, et al.,               )   **AND ORDER**
13                                       )
                                         )
14                  Respondents.         )
                                         )
15   _____ )

16          Danny Lee Jones (Petitioner) has filed a Petition for Writ of Habeas Corpus alleging

17   that he is imprisoned and sentenced to death in violation of the United States Constitution.

18   (Dkt. 1.)[1]   Petitioner's amended petition raises thirty-one claims along with numerous

19   subclaims.  (Dkt. 54.)

20          In an Order dated March 31, 2004, the Court denied relief on Claims 1, 2, 3, 6, 15, 16,

21   25, and 26 (in part).  (Dkt. 90.)  The Court subsequently dismissed Claims 4, 15, 19, and

22   20(A) with prejudice.  (Dkt. 121.)  The Court also dismissed Claims 20(O), (P), and (T) on

23   the merits in a separate order.  (Dkt. 220.)

24          This Order addresses the procedural status and/or the merits of the remaining claims.

25   For the reasons set forth herein, the Court concludes that Petitioner is not entitled to habeas

26   relief.

27

28
     _____
         [1]    "Dkt." refers to documents in this Court's file.

**BACKGROUND**

On April 16, 1992, a Mohave County grand jury indicted Petitioner on two counts of premeditated first-degree murder and one count of attempted premeditated first-degree murder.[2] (ROA 1.) The Arizona Supreme Court provided the following description of the events surrounding the crimes:

> In February 1992, defendant moved to Bullhead City, Arizona, and resumed a friendship with Robert Weaver. At this time, Robert, his wife Jackie, and their 7-year-old daughter, Tisha, were living in Bullhead City with Robert's grandmother, Katherine Gumina. As of March 1992, defendant was unemployed and was planning to leave Bullhead City.
>
> On the night of March 26, 1992, defendant and Robert were talking in the garage of Ms. Gumina's residence. Robert frequently entertained his friends in the garage, and during these times, he often discussed his gun collection. The two men were sitting on inverted buckets on the left side of the garage, and Ms. Gumina's car was parked on the right side of the garage. Both defendant and Robert had been drinking throughout the day and had used crystal methamphetamine either that day or the day before.
>
> At approximately 8:00 p.m., Russell Dechert, a friend of Robert's, drove to the Gumina residence and took defendant and Robert to a local bar and to watch a nearby fire. Dechert then drove defendant and Robert back to the Gumina residence at approximately 8:20 p.m. and left, telling defendant and Robert that he would return to the Gumina residence around 9:00 p.m.
>
> Although there is no clear evidence of the sequence of the homicides, the scenario posited to the jury was as follows. After Dechert left, defendant closed the garage door and struck Robert in the head at least three times with a baseball bat. Robert fell to the ground where he remained unconscious and bleeding for approximately 10 to 15 minutes. Defendant then entered the living room of the Gumina residence where Ms. Gumina was watching television and Tisha Weaver was coloring in a workbook. Defendant struck Ms. Gumina in the head at least once with the baseball bat, and she fell to the floor in the living room.
>
> Tisha apparently witnessed the attack on Ms. Gumina, ran from the living room into the master bedroom, and hid under the bed. Defendant found Tisha and dragged her out from under the bed. During the struggle, Tisha pulled a black braided bracelet off defendant's wrist. Defendant then struck

---

[2] "ROA" refers to the record on appeal prepared for Petitioner's direct appeal to the Arizona Supreme Court (Case No. CR-93-541-AP). "ROA-PCR" refers to the record on appeal from post-conviction proceedings prepared for Petitioner's petition for review to the Arizona Supreme Court (Case No. CR-00-512-PC). "RT" refers to the state court reporter's transcript. "ME" stands for the minute entries of the state court.

Tisha in the head at least once with the baseball bat, placed a pillow over her head, and suffocated her, or strangled her, or both.

Defendant next emptied a nearby gun cabinet containing Robert's gun collection, located the keys to Ms. Gumina's car, and loaded the guns and the bat into the car.  At some point during this time, Robert regained consciousness, and, in an attempt to flee, moved between the garage door and Ms. Gumina's car, leaving a bloody hand print smeared across the length of the garage door and blood on the side of the car.  Robert then climbed on top of a work bench on the east side of the garage, leaving blood along the east wall. Defendant struck Robert at least two additional times in the head with the baseball bat, and, as Robert fell to the ground, defendant struck him in the head at least once more.

A few minutes before 9:00 p.m., Dechert returned to the Gumina residence and noticed that the garage door, which previously had been open, was closed. Dechert went to the front door and knocked.  Through an etched glass window in the front door, he saw the silhouette of a person locking the front door and walking into the master bedroom. Dechert then looked through a clear glass portion of the window and saw defendant walk out of the master bedroom.  He heard defendant say, "I will get it," as if he were talking to another person in the house.  Defendant then opened the front door, closing it immediately behind him, walked out onto the porch, and stated that Robert and Jackie had left and would return in about 30 minutes.  Dechert noticed that defendant was nervous, breathing hard, and perspiring.  Although Dechert felt that something was wrong, he left the Gumina residence.  As he was leaving, Dechert heard the door shut as if defendant went back into the house.  Shortly thereafter, defendant left the Gumina residence in Ms. Gumina's car.

At approximately 9:10 p.m., Jackie Weaver returned home from work. When she opened the garage door, she found Robert lying unconscious on the garage floor.  Jackie ran inside the house and found Ms. Gumina lying on the living room floor and her daughter Tisha lying under the bed in the master bedroom. She then called the police, who on arrival determined that Tisha and Robert were dead and that Katherine Gumina was alive but unconscious.  The medical examiner later concluded that Robert's death was caused by multiple contusions and lacerations of the central nervous system caused by multiple traumatic skull injuries.  The cause of Tisha's death was the same as Robert's, but also included possible asphyxiation.

*State v. Jones*, 185 Ariz. 471, 477-78, 917 P.2d 200, 206-07 (1996).

At trial, Petitioner testified that he killed Robert Weaver in self-defense, that he struck Katherine Gumina reflexively and without criminal intent because she startled him, and that another person killed Tisha Weaver.  (RT 9/9/93 at 3-142.)  The jury convicted Petitioner on all counts.

The trial court then held a sentencing hearing.  With respect to Robert Weaver's murder, the trial court found three aggravating circumstances: that Petitioner committed the

murder for pecuniary gain, pursuant to A.R.S. § 13-703(F)(5); that he committed the murder in an especially heinous, cruel, or depraved manner, under § 13-703(F)(6); and that he was convicted of one or more other homicides that were committed during the commission of the offense, § 13-703(F)(8).  (ROA 118.)  With respect to Tisha's murder, the court found the above aggravating circumstances together with the additional factor that the victim was under fifteen years of age, pursuant to § 13- 703(F)(9).  (ROA 117.)

The trial court found no statutory mitigating circumstances with respect to either murder.  (ROA 117, 118.)  The court did find that Petitioner had proved several nonstatutory mitigating circumstances: that Petitioner suffered from long-term substance abuse; that he was under the influence of alcohol and drugs at the time of the offenses; that he had experienced a chaotic and abusive childhood; and that his substance abuse problem may have been caused by genetic factors and aggravated by head trauma.  (*Id.* at 5.)  The trial court concluded, however, that these circumstances were not sufficiently substantial to outweigh the aggravating circumstances or to call for leniency, and sentenced Petitioner to two consecutive death sentences.  (*Id.*)  The court also imposed a consecutive sentence of life imprisonment for the attempted first-degree murder of Ms. Gumina.  (ROA 119 at 4.)  On direct appeal, the Arizona Supreme Court affirmed the convictions and sentences.  *Jones*, 185 Ariz. at 477-78, 917 P.2d at 206-07.

On July 1, 1999, Petitioner filed a petition for post-conviction relief (PCR) pursuant to Rule 32 of the Arizona Rules of Criminal Procedure.  (ROA-PCR 44.)  The trial court held a limited evidentiary hearing, after which it denied the petition.  (ROA-PCR 59, 60, 72.)  On June 16, 1999, Petitioner filed a petition for review (ROA-PCR 74), which the Arizona Supreme Court summarily denied on February 13, 2001.

Petitioner filed a preliminary petition for writ of habeas corpus on February 28, 2001.  (Dkt. 1.)  He filed his amended petition on September 13, 2002 (Dkt. 54).  Respondents filed an answer to the amended petition (Dkt. 61), and Petitioner filed a traverse (Dkt. 66).

## PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT

Petitioner's claims are governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA). *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Woodford v. Garceau*, 538 U.S. 202, 210 (2003). The AEDPA requires that a writ of habeas corpus not be granted unless it appears that the petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509 (1982). To exhaust state remedies, the petitioner must "fairly present" his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

A claim is "fairly presented" if the petitioner has described the operative facts and the federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon the constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971). Discussing the importance of fair presentation, the United States Supreme Court has stated that, "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam). Following *Duncan*, the Ninth Circuit Court of Appeals has held that a state prisoner has not "fairly presented" (and thus exhausted) federal claims in state court unless he specifically indicated to that court that the claims were based on federal law. *See, e.g.*, *Lyons v. Crawford*, 232 F.3d 666, 669-70 (2000), *as amended by* 247 F.3d 904 (9th Cir. 2001) (general reference to insufficiency of evidence, right to be tried by impartial jury and ineffective assistance of counsel lacked the specificity and explicitness required to present federal claim); *Shumway v. Payne*, 223 F.3d 982, 987-88 (9th Cir. 2000) (broad reference to "due process" insufficient to present federal claim); *see also Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion."). A petitioner must make the federal basis of a claim

explicit by citing specific provisions of federal statutory or case law, even if the federal basis of a claim is "self-evident," *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), or by citing state cases that explicitly analyze the same federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).  Such explicit fair presentation must be made not only to the trial or post-conviction court, but to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).  If a petitioner's habeas claim includes new factual allegations not presented to the state court, the claim may be considered unexhausted if the new facts "fundamentally alter" the legal claim presented and considered in state court. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

A habeas petitioner's claims may be precluded from federal review in either of two ways.  First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds.  *Coleman*, 501 U.S. at 729-30.  Second, a claim may be procedurally defaulted if the petitioner failed to present the claim in any forum and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  *Id.* at 735 n.1.  This is often referred to as "technical" exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy.  *See id.* at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no remedies any longer 'available' to him."); *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

Rule 32 of the Arizona Rules of Criminal Procedure governs when petitioners may seek relief in post-conviction proceedings and raise federal constitutional challenges to their convictions or sentences in state court.  Rule 32.2 provides, in part:

> a. Preclusion.  A defendant shall be precluded from relief under this rule based upon any ground:
>
> .   .   .   .
>
> (2)  Finally adjudicated on the merits on appeal or in any previous collateral proceeding;

> (3) That has been waived at trial, on appeal, or in any previous collateral proceeding.
>
> b. Exceptions. Rule 32.2(a) shall not apply to claims for relief based on Rules 32.1(d), (e), (f), (g) and (h). When a claim under [these sub-sections] is to be raised in a successive or untimely post-conviction relief proceeding, the notice of post-conviction relief must set forth the substance of the specific exception and the reasons for not raising the claim in the previous petition or in a timely manner. If the specific exception and meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner, the notice shall be summarily dismissed.

Ariz. R. Crim. P. 32.2 (West 2003) (emphasis added). Thus, pursuant to Rule 32.2, petitioners may not be granted relief on any claim which could have been raised in a prior petition for post-conviction relief. Only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted from a prior petition or not presented in a timely manner will the preclusive effect of Rule 32.2 be avoided. Ariz. R. Crim. P. 32.2(b), 32.4(a).

Therefore, in the present case, if there are claims which have not been raised previously in state court, the Court must determine whether Petitioner has state remedies currently available to him pursuant to Rule 32. If no remedies are currently available, petitioner's claims are "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1. In addition, if there are claims that were fairly presented in state court but found defaulted on state procedural grounds, such claims also will be found procedurally defaulted in federal court so long as the state procedural bar was independent of federal law and adequate to warrant preclusion of federal review. *Harris v. Reed*, 489 U.S. 255, 262 (1989). A state procedural default is not independent if, for example, it depends upon an antecedent federal constitutional ruling. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002) (per curiam). A state bar is not adequate unless it was firmly established and regularly followed at the time of application by the state court. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*,

468 U.S. 1, 9 (1984).  As a general matter, however, the Court will not review the merits of procedurally defaulted claims unless a petitioner demonstrates legitimate cause for the failure to properly exhaust in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court.  *Coleman*, 501 U.S. at 735 n.1.

Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Id.* at 753.  Objective factors which constitute cause include interference by officials which makes compliance with the state's procedural rule impracticable, a showing that the factual or legal basis for a claim was not reasonably available to counsel, and constitutionally ineffective assistance of counsel.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  "Prejudice" is actual harm resulting from the alleged constitutional error or violation.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).  To establish prejudice resulting from a procedural default, a habeas petitioner bears the burden of showing not merely that the errors at his trial raised a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension.  *United States v. Frady*, 456 U.S. 152, 170 (1982).  If a petitioner cannot meet the cause and prejudice standard, the Court still may hear the merits of procedurally defaulted claims if failure to hear the claims would constitute a "fundamental miscarriage of justice."  *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

## STANDARD FOR HABEAS RELIEF

For properly preserved claims "adjudicated on the merits" by a state court, the AEDPA established a more rigorous standard for habeas relief.  *See Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (*Miller-El I*).  As the Supreme Court has explained, the AEDPA's "'highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh*, 521 U.S. at 333 n.7).

The phrase "adjudicated on the merits" refers to a decision resolving a party's claim which is based on the substance of the claim rather than on a procedural or other non-substantive ground. *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004). The relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-804 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim adjudicated on the merits by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The threshold question under AEDPA is whether [petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Musladin v. Lamarque*, 427 F.3d 653, 655 (9th Cir. 2005) ("AEDPA limits the source of clearly-established federal law to Supreme Court cases"); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. *Williams*, 529 U.S. at 381. Nevertheless, while only Supreme Court authority is binding, circuit court precedent may be of "persuasive value" in determining what law is clearly established and whether a state court applied that law unreasonably. *Musladin*, 427 F.3d at

655 (collecting cases); *see Clark*, 331 F.3d at 1069.

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam). In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406; *see Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. In order for a federal court to find a state court's application of Supreme Court precedent "unreasonable" under § 2254(d)(1), the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Visciotti*, 537 U.S. at 25.

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based upon an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, ___, 125 S. Ct. 2317, 2325 (2005) (*Miller-El II*). A state court decision "based on a factual determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El I*, 537 U.S. at 340.  In considering a challenge under 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Miller-El II*, 545 U.S. at ___ , 125 S. Ct. at 2325.

As the Ninth Circuit has noted, application of the foregoing standards presents difficulties when the state court decided the merits of a claim without providing its rationale. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000).  In those circumstances, a federal court independently reviews the record to assess whether the state court decision was objectively unreasonable under controlling federal law.  *Himes*, 336 F.3d at 853; *Pirtle*, 313 F.3d at 1167.  Although the record is reviewed independently, a federal court nevertheless defers to the state court's ultimate decision.  *Pirtle*, 313 F.3d at 1167 (citing *Delgado*, 223 F.3d at 981-82); *see also, Himes*, 336 F.3d at 853.  Only when a state court did not decide the merits of a properly raised claim will the claim be reviewed de novo, because in that circumstance "there is no state court decision on [the] issue to which to accord deference."  *Pirtle*, 313 F.3d at 1167; *see also, Menendez v. Terhune*, 422 F.3d 1012, 1025-26 (9th Cir. 2005); *Nulph v. Cook*, 333 F.3d 1052, 1056-57 (9th Cir. 2003).

### DISCUSSION

Respondents concede that Claims 10, 20, 21, and 26 (in part) have been properly exhausted.  Respondents contend that Claim 11 was procedurally defaulted by Petitioner's failure to present an argument in state court that his federal constitutional rights were violated, and that the remaining claims are precluded by the trial court's denial of Petitioner's PCR petition.

The Court will first determine which claims have been procedurally defaulted.  The Court will then examine the merits of the remaining claims.

1  **Procedural Default Analysis:**

2  **Claims 12, 13, 14, 17, and 18**

3      Respondents argue that Claims 12, 13, 14, 17, and 18,[3] which were presented in

4  Petitioner's PCR petition and rejected by the trial court, are procedurally barred pursuant to

5  Arizona Rule of Criminal Procedure 32.2(a)(3).  Petitioner counters that the court's order

6  denying these claims did not specifically cite Rule 32.2(a)(3) and therefore the decision did

7  not rest on an adequate and independent state procedural rule.

8      Petitioner presented these claims for the first time in his PCR petition.  (ROA-PCR

9  44.)  The PCR court denied the claims in an order dated February 23, 2000, "on the grounds

10  that they are preluded."  (ROA-PCR 59 at 1.)  As this Court previously noted, with respect

11  to Claims 3, 5, 6, 15 and 16, "Although the minute entry denying this claim did not identify

12  the court's basis for finding the claim precluded, it is clear from the transcript of the

13  conference that the court found preclusion based upon Rule 32.2(a)(3) . . . because it could

14  have been raised at trial or on direct appeal." (Dkt. 121 at 7; *see* Dkt. 90 at 9-10; RT 2/23/00

15  at 1-13.)  The same analysis applies to Claims 12, 13, 14, 17, and 18.

16      Arizona's preclusion rule is independent of federal law, *see Stewart v. Smith*, 536 U.S.

17  at 860, and the Ninth Circuit has repeatedly determined that Arizona regularly and

18  consistently applies its procedural default rules such that they are an adequate bar to federal

19  review of a claim.  *See Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (finding Rule

20  32.2(a)(3) regularly followed and adequate); *Poland v. Stewart*, 117 F.3d 1094, 1106 (9th

21  Cir. 1997) (same); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996) (previous

22  version of Arizona's preclusion rules "adequate"); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th

23  Cir. 1992) (en banc) (same).  Because Rule 32.2(a)(3) constitutes an adequate and

24

25      [3]      In Claim 12, Petitioner alleges that the trial court erred in refusing to strike a juror for cause, thereby forcing defense counsel to use a peremptory challenge.  In Claim 13,

26  Petitioner asserts that the State used its peremptory challenges in a discriminatory manner. Claim 14 alleges a violation of Petitioner's right to a jury drawn from a fair cross-section of

27  Mohave County.  Claims 17 and 18 allege that the trial court erred at sentencing by, respectively, improperly considering victim impact statements and hearsay statements.

28

1    independent state ground for preclusion, federal habeas review of these claims is barred

2    unless Petitioner establishes cause and prejudice or a fundamental miscarriage of justice.

3    Petitioner has alleged neither cause and prejudice nor that a fundamental miscarriage of

4    justice will occur if these claims are not reviewed on the merits.  Accordingly, Claims 12, 13,

5    14, 17, and 18 are procedurally barred and will not be reviewed on the merits.

6    **Claims 22-24 and 27-31**

7    These claims, which attack the constitutionality of the death penalty in general and

8    Arizona's death penalty statute in particular, were presented for the first time in Petitioner's

9    PCR petition. (ROA-PCR 44.) The trial court denied the claims "summarily" on the grounds

10   that it "does not believe that it has the authority to rule on those issues already addressed by

11   the Supreme Court." (ROA-PCR 59.)  Respondents argue that by this ruling the trial court

12   dismissed the claims as precluded because they had not been raised on direct appeal.  This

13   Court has already determined that the trial court's ruling did not deny these claims based

14   upon a procedural bar but addressed and rejected the claims on the merits.  (Dkt. 90 at 12.)

15   Therefore, Claims 22-24 and 27-31 have been properly exhausted, and the Court will address

16   them on the merits.

17   **Claim 11**

18   Petitioner alleges that the trial court erred by allowing the State to impeach Petitioner

19   with his prior misdemeanor theft convictions. (Dkt. 77-79.)  According to Petitioner, the

20   admission of the prior convictions violated his rights under the Fifth, Sixth, Eighth, and

21   Fourteenth Amendments. (*Id.* at 78-79.)  On direct appeal, Petitioner claimed that the trial

22   court's ruling violated Rule 609(a) of the Arizona Rules of Criminal Procedure and that the

23   error was not harmless. (Opening Brief at 35-37.)  The Arizona Supreme Court rejected the

24   claim, finding that if the trial court's decision was erroneous, the error was harmless. *Jones*,

25   185 Ariz. at 486, 917 P.2d at 217.

26   Respondents correctly note that on direct appeal Petitioner "did not argue, or even

27   indirectly suggest, that his federal constitutional rights were violated" by the trial court's

28

- 13 -

admission of the prior misdemeanors and therefore the claim is procedurally defaulted. (Dkt. 61 at 34.) The Court agrees that Petitioner did not "fairly present" this claim in state court.

"If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan*, 513 U.S. at 366. On direct appeal Petitioner did not, contrary to the assertion in his traverse (Dkt. 66 at 35), allege that the admission of the prior misdemeanor convictions violated his rights under the federal constitution; instead, his argument was based exclusively upon the trial court's erroneous application of Rule 609(a); nor was his citation of cases, federal and state, analyzing the application of Rule 609 sufficient to present a claim alleging a violation of the federal constitution. *See Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005) (petitioner must present "case law that engages in a federal constitutional analysis"). Therefore, Petitioner failed to alert the Arizona Supreme Court that the evidentiary error amounted to a denial of his constitutional rights as required by *Duncan*. *See Johnson v. Zenon*, 88 F.3d 828, 830-31 (petitioner did not fairly present his federal claim where he "limited his arguments exclusively to state evidentiary law").

Claim 11 was not fairly presented in state court. Consequently, the Court must determine whether Petitioner has remaining state court remedies or whether Claim 11 is technically exhausted but procedurally defaulted. Rules 32.2(b) and 32.4(a) of the Arizona Rules of Criminal Procedure provide that a petitioner may only file a successive, untimely PCR petition based on claims that fall within the exceptions to preclusion set forth in Rule 32.1(d)-(h). Absent an applicable exception, which Petitioner does not assert, Claim 11 is now foreclosed from being raised in state court. *See Beaty v. Stewart*, 303 F.3d 975, 987 & n.5 (9th Cir. 2002) (finding no available state court remedies and noting that petitioner did not raise any exceptions to Rule 32.2(a)); *see also Ortiz*, 149 F.3d at 931 (affirming the district court's conclusion that petitioner did not have an available state court remedy for claim that had never before been presented to the state courts despite opportunity). Thus,

- 14 -

Claim 11 is technically exhausted but procedurally defaulted.  In order for the Court to review the merits of Claim 11, Petitioner must establish cause and prejudice or a fundamental miscarriage of justice.

As cause to excuse his default, Petitioner asserts that failure to present this claim properly to the Arizona Supreme Court was due to ineffective assistance of appellate counsel. (Dkt. 66 at 36.)  Before ineffective assistance of counsel may be used as cause to excuse a procedural default, it must have been presented to the state court as an independent claim. *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000) ("ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"); *Murray*, 477 U.S. at 489-90 ("the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default"); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (exhaustion requires petitioner to raise ineffectiveness of appellate counsel claim separately in state court before alleging it as cause for default).

Respondents concede that Petitioner raised ineffective assistance of appellate counsel during PCR proceedings.  (Dkt. 54 at 131.)  They correctly assert, however, that Petitioner did not raise the particular allegations contained in Claim 11.  (*Id.*)  Allegations of ineffective assistance of counsel constitute separate claims, each of which must be exhausted in state court.  *See Strickland v. Washington*, 466 U.S. 668, 690 (1984) (stating that a petitioner making an ineffective assistance claim must identify the particular acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment).  Because Petitioner did not present in state court an independent appellate ineffectiveness claim based on the failure to properly present Claim 11 on direct appeal, such alleged ineffectiveness cannot constitute cause.

Finally, Petitioner has not claimed that a fundamental miscarriage of justice will occur if Claim 11 is not addressed on the merits.  Accordingly, Claim 11 is procedurally barred and will not be reviewed on the merits.

1   **Merits Analysis:**

2   **Claims 7, 8, and 9**

3       Petitioner alleges that the trial court violated his rights under the Fifth, Sixth, Eighth,

4   and Fourteenth Amendments (and, with respect to Claim 8, the Fourth Amendment as well)

5   by failing to suppress certain items of evidence.[4]  (Dkt. 54 at 68, 71, and 73.)  On direct

6   appeal, the Arizona Supreme Court rejected Petitioner's Fourth Amendment challenges to

7   the searches and seizures by which the evidence was obtained.  *Jones*, 185 Ariz. at 480-82,

8   917 Ariz. at 209-11.

9       The Supreme Court has explained that, "where the State has provided an opportunity

10  for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted

11  federal habeas corpus relief on the ground that evidence obtained in an unconstitutional

12  search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976).

13  Because Petitioner had an opportunity to litigate his suppression claims in state court, and

14  did so during an evidentiary hearing (*see* RT 2/1/93), Claims 7, 8, and 9 are not cognizable.

15  Despite Petitioner's attempt to recast the claims as violations of other constitutional

16  provisions, the Court concludes that only the Fourth Amendment aspect of Claims 7-9 has

17  been exhausted.  The Court also rejects Petitioner's unsupported assertion that *Stone* does not

18  apply to capital cases.  *See, e.g.*, *Marshall v. Hendricks*, 307 F.3d 36, 82 n.34 (3rd Cir. 2002)

19  ("There is nothing within the language of *Stone v. Powell* itself upon which to base a

20  distinction between capital and non-capital collateral review.  We have applied *Stone* without

21

22          [4]      When Petitioner left the Gumina residence he traveled by taxi to Las Vegas,
23  using one of Weaver's guns to pay the fare.  In Las Vegas Petitioner met a couple, the Vints,
    who let him stay at their apartment.  He stored his belongings, including a duffel bag, in the
24  Vints's dining-room closet.  The Vints soon became aware that Petitioner was a suspect in
    the Bullhead City murders; they notified the Las Vegas police, who arrested Petitioner at
25  another apartment rented by the Vints.  With the Vints' consent, the police seized Petitioner's
    possessions from the closet.   Subsequently, detectives from the Bullhead City Police
26  Department arrived and searched Petitioner's belongings, discovering a set of bloody clothes.
    The Las Vegas Police Department also conducted an inventory search.  Neither the Las
27  Vegas police nor the Bullhead City detectives had a warrant.   The trial court denied
    Petitioner's motion to suppress the evidence.  (ME 2/18/93.)

28

1   hesitancy to capital cases.").

2       Petitioner is not entitled to relief on Claims 7, 8, and 9.

3   **Claim 10**

4       Petitioner alleges that his rights under the Fifth, Sixth, and Fourteenth Amendments

5   were violated by the trial court's refusal to allow the Mohave County Public Defender's

6   Office, which had alleged the existence of a conflict of interest based upon its representation

7   of a potential trial witness, to withdraw from its representation.   (Dkt. 54 at 74-77.)

8   Petitioner contends that this ruling denied him the opportunity call a witness in his defense.

9   *Id.*

10      Facts:

11      Approximately two weeks before trial, defense counsel learned that Petitioner's

12  cellmate, Cordell Reid, could offer testimony that might corroborate Petitioner's claim that

13  he killed Weaver in self-defense and that someone else murdered Tisha.  (ROA 94.)  The

14  State then interviewed Reid and disclosed him as a potential witness.  (*Id.*)  Defense counsel,

15  Mohave County Public Defender Lee Novak, moved to withdraw from representing

16  Petitioner because his office had previously represented Reid and because he was familiar

17  with Reid through his conversations with another public defender.  (*Id.*)  Novak argued that

18  he would have to withdraw unless the prosecutor guaranteed that Reid would not be called

19  as a witness.  (RT 8/27/93 at 8.)  After a hearing on the issue, during which the State asserted

20  that it did not intend to call Reid as a witness, the trial court denied Novak's motion to

21  withdraw but stated that it would reconsider the issue if the State actually called Reid to

22  testify.  (*Id.* at 8.)

23      On direct appeal, Petitioner argued that the trial court should have allowed Novak to

24  withdraw because he had a conflict of interest and because the State's listing of Reid as a

25  potential witness created the appearance of impropriety. (Opening Brief at 20-21.)  Petitioner

26  also argued that the denial of the motion violated the United States and Arizona Constitutions

27  because it denied him the opportunity to call a witness.  (*Id.* at 21-25.)

28

The Arizona Supreme Court rejected this claim, finding that the trial court did not err in denying counsel's motion to withdraw:

> In this case, the trial court acted well within its discretion. First, no conflict of interest developed in this case because neither the state nor defense counsel called Reid as a witness at trial. The trial court properly reserved ruling on this issue until any actual conflict arose, and, because Reid did not testify, we need not address whether his testimony ultimately would have resulted in a conflict for defense counsel. Second, contrary to defendant's assertions, the trial court's order did not preclude defense counsel from calling Reid as a witness.

*Jones*, 185 Ariz. at 482, 917 P.2d at 211.

Analysis:

This Court must determine whether the Arizona Supreme Court's ruling was contrary to, or an unreasonable application of, clearly established federal law.

Petitioner's claim is based upon the premise that Novak's performance was adversely affected by the existence of a conflict of interest based upon Reid's status as a witness at Petitioner's trial.  The premise is faulty because, as the supreme court noted, neither the prosecution nor the defense ever called Reid as a witness.  Moreover, it is clear that Novak's decision not to call Reid was independent of the circumstances upon which the alleged conflict of interest was based – i.e., the fact that Reid had been represented by the public defender's office and that through that representation Novak gained a general awareness of Reid's liabilities as a witness.  Instead, Novak's decision not to call Reid was a strategic choice based upon the fact that Reid's proposed testimony was not credible; investigation had revealed that it was physically impossible for Reid to have observed the events he claimed to have witnessed at the Weaver residence.[5]

---

[5]   The following exchange, which occurred during the evidentiary hearing on the ineffective assistance claims Petitioner raised in the PCR proceedings, illustrates Novak's position with respect to Reid's value as a witness:

Q:   And after your investigation of what Cordell Reid had to say, and the State's investigation, in essence you had decided you were not going to call him?

A:   There was no way I could call that individual as a witness.

Based upon these facts, Petitioner has failed to "demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335 (1980); *see Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (an "actual conflict" is "a conflict *that affected counsel's performance* – as opposed to a mere theoretical division of loyalties"); *United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) (petitioner must allege specific facts demonstrating that counsel's relationship with a third party adversely affected the defense or prevented pursuit of viable litigation strategy); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir. 2001).

The decision of the Arizona Supreme Court, finding that there was no conflict of interest and therefore the trial court's denial of counsel's motion to withdraw was correct, was neither contrary to nor an unreasonable application of federal law. Therefore, Petitioner is not entitled to relief on Claim 10.

**Claim 20**

Petitioner alleges some 20 instances in which trial counsel was ineffective (Claims 20(A) through (T)). In previous Orders, the Court has addressed and dismissed four of these allegations: Claim 20(A) and Claims 20(O), (P), and (T). (Dkts. 121, 220.)

Clearly established federal law:

When a state court has addressed the merits of a petitioner's claim of federal constitutional error, a federal court may grant habeas relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Yarborough v. Gentry*, 540 U.S. 1, 4 (2003) (per curiam); *Woodford v. Visciotti*, 537 U.S. at 21. For a claim alleging ineffective assistance of counsel ("IAC"), the applicable law is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

To prevail under *Strickland*, a petitioner must show that counsel's representation fell

---

(RT 4/4/00 at 127.)

- 19 -

below an objective standard of reasonableness and that the deficiency prejudiced the defense. 466 U.S. at 687-88.  The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  To prove deficient performance, a defendant must also overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*  To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The right to effective assistance of counsel applies not just to the guilt phase, but "with equal force at the penalty phase of a bifurcated capital trial." *Silva v. Woodford*, 279 F.3d 825, 836 (9th Cir. 2002) (quoting *Clabourne v. Lewis*, 64 F.3d at 1378).  Trial counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," and "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Hayes v. Woodford*, 301 F.3d 1054, 1066 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 691).  To determine whether the investigation was reasonable, the court "must conduct an objective review of [counsel's] performance, measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith*, 539 U.S. at 523 (citation and quotation marks omitted).  As the Supreme Court recently reiterated, "In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made and by giving a 'heavy measure of deference to counsel's judgments.'" *Rompilla v. Beard*, 545 U.S. 374, ___, 125 S. Ct. 2456, 2462 (2005) (quoting *Strickland*, 466 U.S. at 689, 691).

With respect to prejudice at sentencing, the *Strickland* Court explained that "[w]hen a defendant challenges a death sentence . . . the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." 466 U.S. at 695. In *Wiggins*, the Court further noted that "[i]n assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence." 539 U.S. at 534. The "totality of the available evidence" includes "both that adduced at trial, and the evidence adduced in the habeas proceeding." *Id.* at 536 (quoting *Williams v. Taylor*, 529 U.S. at 397-98).

Under the AEDPA, the state court's decision is subject to another level of deference. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). In order to merit habeas relief, therefore, Petitioner must make the additional showing that the state court's ruling that counsel was not ineffective constituted an unreasonable application of federal law as set forth in *Strickland*. 28 U.S.C. § 2254(d)(1).

Analysis:[6]

20(B). Petitioner alleges that Novak's performance was deficient because he failed to investigate the partial alibi defense according to which Frank Sperlazzo killed the third victim, Tisha Weaver. Specifically, Petitioner contends that Novak should have called for testimony from Cordell Reid. (Dkt. 54 at 111-12.) Petitioner has demonstrated neither deficient performance nor prejudice from Novak's handling of the Sperlazzo information.

Petitioner provided the information to Novak a month before trial. (ROA-PCR 45, Ex. A at 3; RT 4/4/00 at 112.) Prior to that time, Petitioner had offered other explanations

---

[6]     With the exception of portions of Claims 20(I), 20 (L), and 20(S), the PCR court denied Petitioner's specific allegations of ineffective assistance without providing a rationale. (PCR-ROA 59 at 2-3.) With respect to those claims where the PCR court did not provide a rationale, this Court has independently reviewed the record and determined that the PCR court's denial of relief was not objectively unreasonable. *Himes*, 336 F.3d at 853.

of his role in the murders.[7]   (RT 4/4/00 at 61, 112, 120.)   After hearing Petitioner's accusation, Novak had his investigator, Austin Cooper, gather information on Sperlazzo. (ROA-PCR 45, Ex. A at 3.)  Cooper notified Novak that he had located witnesses who had information about Sperlazzo, but Novak did not call the witnesses at trial because they were reluctant to testify.   (*Id.*)   In addition, at Novak's request the State also investigated Petitioner's claim of Sperlazzo's involvement.   (RT 4/4/00 at 125-26.)   The resulting information did not support Petitioner's version of the crimes and further discredited the information brought forward by Reid.  (*See id.* at 127; RT 12/8/93 at 156-62.)  In light of this information, Novak's decision not to call Reid, who also had a lengthy felony record, was strategically sound.  *See Allen*, 395 F.3d at 999 (stating that counsel's strategic decisions are presumed sound, citing *Strickland*, 466 U.S. at 689)).   Moreover, Petitioner did present, though his own testimony, his version of the killings and his claim that it was Sperlazzo who killed Tisha.  (RT 9/9/93.)

Finally, militating against a finding that Petitioner was prejudiced by Novak's handling of the Sperlazzo information is the strength of the evidence indicating that Petitioner, not Sperlazzo, killed Tisha.   The Arizona Supreme Court summarized this evidence when it rejected "duress" and "participation of another" as mitigating factors:

> This evidence is not sufficient to establish that Sperlazzo participated in the crime . . . The state discredited Reid's story when it determined that Reid could not possibly have seen the Gumina residence from where he claimed to have been. Additionally, the physical evidence presented at trial showed that the three victims were attacked with the same type of blunt instrument, undermining defendant's claim that Sperlazzo killed Tisha Weaver.

*Jones*, 185 Ariz. at 490, 917 P.2d at 219.

---

[7]     After Petitioner's arrest in Las Vegas, Novak enlisted the aid of an investigator from the Clark County Public Defender's Office.  During interviews with the investigator in April 1992, Petitioner offered various versions of the events on the night of the murders, none of which involved Frank Sperlazzo. (Dkt. 172, Ex. 62.) Petitioner also stated, contrary to the premise upon which his defense at trial was based, that he did not know if Weaver was involved in any drug transactions.  (*Id.* at 8.)

1   Because Petitioner has failed to establish that Novak's performance with respect to

2   the Sperlazzo information was either deficient or prejudicial, the PCR court's denial of the

3   claim was not objectively unreasonable.  Petitioner is not entitled to relief on Claim 20(B).

4   20(C) and 20(D).  Petitioner alleges that trial counsel were deficient in their litigation

5   of his motion to suppress physical evidence.[8] (Dkt. 54 at 112.)  Petitioner also contends that

6   counsel were ineffective in the litigation of other pretrial issues, including failing to apprise

7   Petitioner of his right to testify at the suppression hearing and deficiently litigating the

8   admissibility of gruesome autopsy photographs and Petitioner's prior convictions.  (*Id.* at

9   114.)

10   In order to prove that counsel failed to litigate an issue competently, Petitioner must

11   "prove that his . . . claim is meritorious."  *Kimmelman v. Morrison*, 477 U.S. 365, 375

12   (1986).  The Arizona Supreme Court has already ruled against Petitioner on the issues

13   underlying these ineffective assistance claims.  *See Jones*, 185 Ariz. at 479-82, 484-86, 917

14   P.2d at 208-11, 213-15.  Because the issues are meritless, Petitioner cannot show that he was

15   prejudiced by the manner in which they were litigated.  *See Rupe v. Wood,* 93 F.3d 1434,

16   1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").

17   Petitioner is not entitled to relief on Claims 20(C) and (D).

18   20(E).  Petitioner alleges that Novak's performance was deficient because he failed

19   to raise a challenge to the State's peremptory strike of potential juror Rose Alvarado based

20   on her gender.  (Dkt. 54 at 116.)  Novak did raise a *Batson* objection, based on Alvarado's

21   race (Hispanic).[9]  (RT 8/31/93 at 36-8.)  The prosecutor then provided his rationale for

22

---

23   [8]   Co-counsel Ms. Carty was primarily responsible for litigating the suppression

24   issue.  The PCR court denied this aspect of Petitioner's ineffective assistance claim as not
     "colorable."  (ROA-PCR 60.)

25   [9]   In *Batson v. Kentucky,* the Supreme Court held that a prosecutor's

26   discriminatory peremptory challenge violates the defendant's equal protection right. 476 U.S.
     79, 85-89 (1986).  The Court further explained that when a defendant makes a prima facie

27   showing that the State has exercised its peremptory challenges to exclude members of a
     racial group, the State bears the burden of coming forward with a race neutral justification.

28

striking Alvarado, noting that the juror acknowledged that she knew Novak "socially" (RT 8/30/93 at 112) and that she had made eye contact with and smiled at Novak during voir dire. (RT 8/31/93 at 38-40.)   The court denied Novak's *Batson* challenge, finding that the prosecutor had "given a significant and a reasonable race neutral reason for the strike." (RT 8/31/93 at 40.)

Novak's performance was neither deficient – he made a *Batson* objection – nor prejudicial.  The trial court correctly overruled the objection after the prosecutor provided a clear, specific, and incontestably race- and gender-neutral explanation for his strike in the form of the juror's personal acquaintance with defense counsel. *See Hernandez v. New York*, 500 U.S. 352, 360 (1990) ("Unless discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."); *Stubbs v. Gomez*, 189 F.3d 1099, 1105-06 (9th Cir. 1999) (juror's demeanor and lack of eye contact were race-neutral reasons for prosecutor's peremptory strike).

Petitioner is not entitled to relief on Claim 20(E).

20(F), 20(G), and 20(H).  Petitioner alleges that Novak performed ineffectively during voir dire by failing to ask follow-up questions of six prospective jurors based upon their questionnaire responses (Dkt. 54 at 116-17); by failing to strike certain prospective jurors for cause (*id.* at 117-18); and by failing to object to the court's strike of prospective jurors and failing to rehabilitate those jurors through voir dire (*id.* at 118).  Because Petitioner has made no attempt to meet his burden under *Strickland* of affirmatively proving prejudice with respect to Novak's voir dire performance, these claims are without merit.

Petitioner has not alleged facts showing that any of the twelve persons who served as jurors during his trial were biased against him or otherwise unqualified to serve. He has not

---

*Id.*  at 97-98.  The court must then determine if the defendant has proven purposeful discrimination. *Id.*  In 1994, Court extended the *Batson* holding to prohibit gender discrimination. *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 129 (1994).

alleged facts showing that any of these jurors could have been disqualified from service had Novak conducted a more extensive voir dire examination.  Petitioner does not identify any member of his jury against whom he now alleges that Novak should have exercised a peremptory challenge.  Petitioner has not identified any objectionable juror whom Novak was forced to accept as a result of any deficiency on Novak's part during voir dire.  Finally, Petitioner has failed to allege any specific facts showing a reasonable probability that, but for the failure of his trial counsel to perform a more thorough voir dire, the composition of his jury would have been any more favorable than that of the actual jury that convicted him. Therefore, Petitioner is not entitled to relief on Claims 20(F), (G), or (H).

        20(I).  Petitioner claims that Novak was unprepared for cross-examination, failed to object to critical inadmissible testimony, and permitted prejudicial and inadmissible evidence to be heard and viewed by the jury.  (Dkt. 54 at 119-21.)  Specific deficiencies include Novak's failure to impeach witness Russell Dechert with inconsistent prior statements; failure to object to prejudicial testimony and hearsay statements; failure to object to the admission of items of physical evidence on chain-of-custody grounds; and failure to interview the State's expert witnesses and challenge the competency of their testimony. (*Id.*)

        In denying this claim, the PCR court provided the following analysis:

> Petitioners [sic] primary complaint with this claim is that defense counsel did not interview all of the witnesses.  At the evidentiary hearing, Mr. Novak explained that he had not interviewed the witnesses because he knew what they would say and he had the assistance of an expert who helped him with cross-examination.

(ROA-PCR 73 at 2.)

        Novak interviewed Dechert prior to trial.  (ROA-PCR 46, Ex. G.)  Petitioner faults Novak for failing to use the information obtained during the interview to impeach Dechert. The record indicates, however, that Novak did cross-examine Dechert about Weaver's involvement in drugs, his alcohol use, and his state of impairment on the evening he was killed. (RT 8/31/93 at 125-33.)  Dechert's responses to these questions were not inconsistent with the information he provided in his interview. Therefore, Novak did not perform

- 25 -

1   deficiently when he failed to use the interview for impeachment purposes.

2       Also without merit is Petitioner's contention that Novak performed ineffectively

3   during the testimony of Detective Brown, a Bullhead City Police Detective who interviewed

4   the cab driver who drove Petitioner to Las Vegas.  On direct examination, Brown referred

5   to a picture he had used to identify Petitioner as a "booking photo." (RT 9/1/93 at 108.)

6   Petitioner contends that Novak's failure to object to Brown's answer constitutes deficient

7   performance.    However, by remaining silent Novak might have engaged in a tactical

8   decision to avoid calling additional attention to prejudicial information that was already

9   before the jury.  *See, e.g.*, *State v. Noleen*, 142 Ariz. 101, 106, 688 P.2d 993, 998 (1984)

10  ("Counsel could have refrained from objecting because he did not wish to draw undue

11  attention to the [improper impeachment] testimony or because he felt the jury might think the

12  defendant was trying to conceal more than was actually revealed by the answers.").

13  Petitioner further argues that Novak should have objected to Brown's testimony regarding

14  what the cab driver told him about his contact with Petitioner.  However, at one point Novak

15  did raise a hearsay objection to this testimony.  (RT 9/1/93 at 116.)  The fact that the court

16  overruled the objection indicates that Petitioner was not prejudiced by counsel's failure to

17  raise the objection earlier.

18      Petitioner next challenges Novak's decision not to object on foundational grounds to

19  the introduction of various items of physical evidence.  Because Petitioner provides no basis

20  for his assertion that grounds existed for such objections, this argument is without merit.

21      Finally, Petitioner alleges that Novak's failure to interview the State's expert

22  witnesses constituted ineffective assistance. The Court disagrees.  "The fact that trial counsel

23  did not personally interview each witness does not constitute ineffective assistance."

24  *LaGrand v. Stewart,* 133 F.3d 1253, 1274 (9th Cir. 1998); *see Hendricks v. Calderon,* 70

25  F.3d 1032, 1040 (9th Cir. 1995) ("the duty to investigate and prepare a defense is not

26  limitless; it does not necessarily require that every conceivable witness be interviewed")

27  (citations and quotations omitted). This is especially so where a witness's account is

28

"otherwise fairly known to defense counsel." *Eggleston v. United States,* 798 F.2d 374, 376 (9th Cir. 1986) (internal quotation marks omitted).  At the evidentiary hearing, Novak indicated that he was familiar with the findings that would be testified to by the State's experts.  (*See* RT 4/4/00 at 66-67, 70, 73.)  Moreover, as the PCR court noted, at the evidentiary hearing Novak provided a reasonable basis for his decision not to interview the State's crime-scene and blood-splatter expert, Sam Howe. (ROA-PCR 73 at 2.)  Novak was familiar with Howe's qualifications from other trials (RT 4/4/00 at 70, 73), and he believed that the input he received from his own crime-scene expert had prepared him to cross-examine Howe. (*Id.* at 93, 95, 113-14.)  Based upon his experience in previous trials, Novak believed that the court would find that Howe was qualified to testify as a blood-splatter expert; he did not, therefore, object to Howe's testimony on foundational grounds. *(Id.* at 79).  However, on cross-examination Novak challenged Howe's qualifications and the validity of his conclusions (RT 9/2/93 at 64-73), and forced Howe to acknowledge that his findings could not rule out Petitioner's self-defense theory (*id.* at 70).

Novak's decisions regarding the handling of these witnesses are entitled to deference. *See Strickland,* 466 U.S. at 689 (stating that judicial scrutiny of counsel's performance must be highly deferential) (citations and quotations omitted). Moreover, Petitioner has failed to indicate what additional information would have been gained by interviewing the witnesses. *See Eggleston*, 798 F.2d at 376.  He cannot, therefore, show that he was prejudiced by these aspects of Novak's performance.

This Court concludes that the PCR court's denial of this claim was neither contrary to nor an unreasonable application of clearly established federal law.  Petitioner is not entitled to relief on Claim 20(I).

20(J).  Petitioner contends that Novak's performance was deficient because he failed to call certain witnesses at trial or sentencing. (Dkt. 54 at 121.)  According to Petitioner, these witnesses, among whom was Cordell Reid, "would have corroborated [Petitioner's] testimony about the involvement of Frank [Sperlazzo] in the drug transaction and murder."

1    (*Id.*)

2        Novak investigated Petitioner's alibi defense and his investigator contacted the

3    witnesses referred to in this claim. The Court has already discussed the fact that Novak made

4    a strategic determination not to call for testimony from these witnesses. Petitioner has not

5    shown that Novak's decision was strategically unsound, let alone objectively unreasonable

6    and prejudicial under *Strickland*. Therefore, Petitioner is not entitled to relief on Claim 20(J).

7        20(K). Petitioner alleges that Novak was ineffective in failing to object to the

8    prosecutor's comments during closing argument. (Dkt. 54 at 122-23.) These comments

9    referred to Petitioner's failure to present evidence that would support his theory that

10   Sperlazzo murdered Tisha Weaver or rebut the State's expert testimony regarding the blood-

11   splatter evidence. (*Id.*) According to Petitioner, these remarks impermissibly implied that

12   Petitioner bore some burden to prove his innocence. (*Id.*)

13       This argument lacks merit. Petitioner cannot show that Novak's failure to object to

14   the prosecutor's comments was unreasonable or prejudicial. First, the prosecutor's remarks

15   were not improper. "The prosecutor may comment on the defendant's failure to present

16   exculpatory evidence, provided that the comments do not call attention to the defendant's

17   own failure to testify." *United States v. Mares*, 940 F.2d 455, 461 (9th Cir. 1991)

18   (prosecutor's remarks noting lack of support for the defense theory did not shift the burden

19   of proof to the defendant). Moreover, Petitioner did testify at trial; his credibility, therefore,

20   was open to challenge. *Portuondo v. Agard*, 529 U.S. 61, 67-70 (2000). Second, even if the

21   comments had been objectionable, the Ninth Circuit has observed that trial counsel may

22   properly decide to "refrain from objecting during closing argument to all but the most

23   egregious misstatements by opposing counsel on the theory that the jury may construe their

24   objections to be a sign of desperation or hyper-technicality." *United States v. Molina,* 934

25   F.2d 1440, 1448 (9th Cir. 1991). Finally, even if the comments were improper and should

26   have prompted objections from counsel, Petitioner cannot demonstrate that he was prejudiced

27

28

by Novak's silence, where the evidence of his guilt was overwhelming, *see Weygandt v. Ducharme*, 774 F.2d 1491, 1493 (9th Cir. 1985), and where the court instructed the jury, as the trial court did here (RT 9/9/93 at 98-99), that counsel's arguments were not evidence and that the defendant was not required to prove his innocence. *See Mares*, 940 F.2d at 461. Petitioner is not entitled to relief on Claim 20(K).

20(L). Petitioner alleges that trial counsel was ineffective because he failed to challenge the State's theory of the crimes. (Dkt. 54 at 123-24.) Specifically, Petitioner contends that Novak should have obtained scientific testing of hair samples and fingernail scrapings taken from Tisha's body and presented expert testimony concerning the crime scenes. (*Id.*)

This claim was addressed in the evidentiary hearing held before the PCR court. In his testimony, Novak explained that the State's expert tested tissue samples from Tisha's hands and was unable to identify the source of the blood traces found there. (RT 4/4/00 at 72-73.) Novak testified that he did not challenge those results because they were favorable to – or at least not inconsistent with – the defense theory of the case. (*Id.* at 73.) In explaining his decision not to seek additional testing, Novak further noted that Petitioner's version of the crimes had not remained consistent (*id.* at 74, 112), and that, prior to identifying Sperlazzo as Tisha's killer, Petitioner had admitted to Novak that he had killed the girl (*id.* at 112). Given this information, Novak made a reasonable determination that the available test results, which did not implicate Petitioner, were satisfactory. Moreover, Petitioner has presented nothing to support a showing that he was harmed by Novak's failure to procure additional forensic tests.

Petitioner also criticizes Novak's decision not to call for testimony from Chuck Morton, the crime-scene expert retained by the defense. At the evidentiary hearing, Novak testified that Morton consulted with him before and during the trial, and assisted him in preparing for cross-examination of the State's experts. (*Id.* at 93, 95, 113-14.) As the PCR

court noted (ROA-PCR 73 at 2), Novak indicated that it was Morton himself who recommended that he not be called to testify, partly because he had not actually visited the crime scene and partly because he and Novak had determined that his testimony was not necessary and that the defense case could be adequately advanced through Novak's cross-examination of the State's crime-scene expert.  (RT 4/4/00 at 93, 95, 113-14.)  Petitioner has failed to show that Novak's use of Morton's services was either unreasonable or prejudicial. He has presented no support, for example, for his argument that Morton, if called to testify, could have rebutted Howe's testimony regarding the manner in which Weaver was killed. (*See* ROA-PCR 73 at 2.)

The PCR court's denial of this claim was neither contrary to nor an unreasonable application of clearly established federal law.  Therefore, Petitioner is not entitled to relief on Claim 20(L).

20(N).[10] Petitioner alleges that Novak performed ineffectively at sentencing by failing to object to victim impact evidence presented to the court.  Because it was not improper for the State to present such evidence, in the form of statements from the victims' family members, counsel was not ineffective for failing to object to its introduction.  *See State v. Soto-Fong*, 187 Ariz. 186, 209, 928 P.2d 610, 633 (1996) ("a death penalty is not voidable merely because a victim offers irrelevant testimony at sentencing so long as there is no evidence that the trial court improperly considered the testimony"); *State v. Gulbrandson*, 184 Ariz. 46, 66, 906 P.2d 579, 599 (1995); *State v. Bolton*, 182 Ariz. 290, 315-16, 896 P.2d 830, 855-56 (1995).  As the Arizona Supreme Court correctly observed in affirming Petitioner's death sentences, "Nothing in the record indicates that the trial court gave any aggravating weight to the [victims'] recommendations when he sentenced defendant." *Jones*, 185 Ariz. at 490 n.3, 917 P.2d at 219 n.3.  Moreover, one of the statements was introduced

---

[10]     Claim 20(M) consists only of a general contention that counsel was ineffective at sentencing and need not be addressed independently.  (*See* Dkt. 54 at 125-26.)

to rebut Petitioner's argument in mitigation that Weaver's wife did not favor the death penalty for Petitioner. *See State v. Greene*, 192 Ariz. 431, 436 n.1, 967 P.2d 106, 111 n.1 (1998). Petitioner is not entitled to relief on Claim 20(N).

20(Q). Petitioner alleges that trial counsel performed deficiently by failing to file a written sentencing memorandum or to respond to the State's memorandum. (Dkt. 54 at 128.) Petitioner, who acknowledges that Novak presented the trial court with a lengthy oral argument in support of a life sentence, has offered no authority for the proposition that counsel was required under prevailing professional standards to reduce his sentencing arguments to writing. Petitioner also fails to detail the alleged inaccuracies in the State's sentencing memoranda or propose a response that counsel could have offered that would have altered the trial court's sentencing determination. Therefore, Petitioner has shown neither deficient performance nor prejudice, and he is not entitled to relief on Claim 20(Q).

20(R). Petitioner contends that Novak was ineffective at sentencing for failing to object, on hearsay grounds, to the admission of the victim impact evidence and other out-of-court statements by Reid and Sperlazzo. (Dkt. 54 at 128.) The Court has already addressed counsel's performance with respect to the admission of the victim impact statements. Regarding the other statements, which were introduced to rebut Petitioner's mitigation argument that Sperlazzo was involved in the murders, A.R.S. § 13-703(C) provides that at the penalty phase of a capital case, "the prosecution or the defendant may present any information that is relevant to any of the mitigating circumstances . . . , regardless of its admissibility under the rules governing the admissibility of evidence at criminal trials." Because the statements were admissible under Arizona law, counsel did not perform deficiently by failing to raise a hearsay objection. *See State v. Greenway*, 170 Ariz. 155, 161, 823 P.2d 22, 28 (1991) ("The State may proffer hearsay statements to rebut a defendant's mitigating evidence."). Therefore, Petitioner is not entitled to relief on Claim 20(R).

20(S). Petitioner alleges that Novak performed ineffectively by failing to object to rebuttal testimony offered by the State which was not disclosed prior to sentencing. (Dkt.

54 at 128.)  At the sentencing hearing, the State called Larry Butler, an investigator with the county attorney's office, to rebut Petitioner's mitigation argument, offered through the testimony of the defense investigator, that Sperlazzo was involved in the murders.  (RT 12/8/93 at 156.)  Butler testified that it was physically impossible for Reid, who claimed to have witnessed an argument between Weaver and another male in Weaver's backyard, to have made such an observation from his position on a nearby balcony; he also testified that Sperlazzo took a polygraph test.  (*Id.* at 157-60.)

In denying this claim the PCR court explained: "Contrary to the petitioner's claim, it is clear from the record that the subject matter of Butler's testimony was disclosed to the defense.  Mr. Butler's testimony addressed an issue raised by the defense.  Any objection to the testimony would have been overruled."  (ROA-PCR 73 at 2.)

The Court agrees that this claim lacks merit.  Counsel's performance was neither deficient nor prejudicial.  Contrary to Petitioner's assertion, Novak did object to Butler's testimony, on hearsay grounds.  (*Id.* at 157.)  The trial court overruled the objection, stating that "[t]his is rebuttal time."  (*Id.*)  Moreover, while the State did not provide notice that Butler would testify in rebuttal, he "was not a surprise witness" to Novak because Novak had requested that the State investigate Sperlazzo.  (RT 4/4/00 at 125-26.)  Nor was Novak surprised that Butler's investigation included an interview with Reid.  As previously discussed, Novak had already determined that Reid would not be a credible witness.  (*Id.* at 127.)  Finally, regarding Sperlazzo's polygraph test, although Novak testified that he believed that he was not aware before Butler's testimony that Sperlazzo had been tested (*id.* at 126), the prosecutor testified that he had discussed the results with Novak and informed Novak that the results were neither helpful nor admissible (*id.* at 135-36).  Based upon these circumstances, Petitioner cannot show that he was prejudiced by counsel's performance.

The Court concludes that the PCR court's denial of this claim was neither contrary to nor an unreasonable application of clearly established federal law.  Therefore, Petitioner is

1    not entitled to relief on Claim 20(S).

2    **Claim 21**

3    Petitioner alleges that appellate counsel was ineffective based on his failure to raise

4    the following claims on direct appeal: jury selection issues; the State's failure to preserve

5    exculpatory evidence; inadequate funding for expert services; an erroneous jury instruction

6    on the element of premeditation; the constitutionality of Petitioner's death sentence; and the

7    constitutionality of Arizona's death penalty scheme.  (Dkt. 54 at 131.)

8    Because there is no state court ruling on the merits of this claim, *see* ROA-PCR 59

9    at 1, this Court's review is de novo.[11]

10   The Fourteenth Amendment guarantees a criminal defendant the right to effective

11   assistance of counsel on his first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387, 391-405

12   (1985).  A claim of ineffective assistance of appellate counsel is reviewed according to the

13   standard set out in *Strickland*.  *See Miller v. Keeney*, 882 F.2d 1428, 1433-34 (9th Cir. 1989).

14   Petitioner must show that counsel's appellate advocacy fell below an objective standard of

15   reasonableness, and that there is a reasonable probability that, but for counsel's deficient

16   performance, Petitioner would have prevailed on appeal.  *See Smith v. Robbins*, 528 U.S.

17   259, 285-86 (2000); *see also Miller*, 882 at 1434 n.9 (citing *Strickland*, 466 U.S. at 688, 694).

18   "A failure to raise untenable issues on appeal does not fall below the *Strickland*

19   standard."  *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002); *see also Wildman v.*

20   *Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) (holding that appellate counsel could not be

21   found to have rendered ineffective assistance for failing to raise issues that "are without

22   merit").  Moreover, appellate counsel does not have a constitutional duty to raise every

23   nonfrivolous issue requested by petitioner.  *See Miller*, 882 F.2d at 1434 n.10 (citing *Jones*

24   *v. Barnes*, 463 U.S. 745, 751-54 (1983)); *see also Smith v. Stewart*, 140 F.3d at 1263, 1274

25

26   _____

27   [11]   Respondents do not contend that this claim is procedurally barred.  (*See* Dkt.
     61 at 51-52.)

28

- 33 -

n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because doing so "is not necessary, and is not even particularly good appellate advocacy").   Courts have frequently observed that the "weeding out of weaker issues is . . . one of the hallmarks of effective appellate advocacy." *See Miller*, 882 F.2d at 1434; *see also Smith v. Murray*, 477 U.S. 527, 536 (1986).   Therefore, even if appellate counsel declines to raise weak issues, counsel will frequently remain above an objective standard of competence and have caused no prejudice to the client.   *Id.*

Petitioner has presented neither facts nor arguments which would rebut the "strong presumption" that appellate counsel's performance was reasonable.   *Strickland*, 466 U.S. at 669.   He does not, for example, allege that the issues counsel failed to raise on direct appeal were obvious and stronger than the ones he did raise.   *See, e.g.*, *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).   Nor does he offer any support for the proposition that he was prejudiced by appellate counsel's performance.   Instead, Petitioner has simply listed appellate counsel's alleged deficiencies and concluded that they entitle him to relief.   (Dkt. 54 at 130-31.)   Conclusory allegations of deficient performance are insufficient and do not entitle Petitioner to habeas relief.   *See Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (citing *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)).

For the reasons set forth above, the Court concludes that Petitioner is not entitled to relief on Claim 21.

**Claims 22, 23, 24, and 28**

In these claims Petitioner challenges the constitutionality of Arizona's death penalty statute, arguing that it fails to channel the sentencer's discretion (Claim 22) (Dkt. 54 at 131); improperly places the burden on the defendant to prove that the death penalty should not be imposed and fails to require the state to prove beyond a reasonable doubt that the death penalty should be imposed (Claim 23) (*id.* at 135); is a "mandatory scheme" that impermissibly limits the consideration of mitigating factors and creates a "presumption of death" (Claim 24) (*id.* at 137); and improperly invests prosecutor's with "unbridled

discretion" when deciding whether to seek the death penalty (Claim 28) (*id.* at 166). Because no clearly established federal law supports any of these contentions, Petitioner's claims are without merit.

As stated above, Petitioner raised these claims in his PCR petition (ROA-PCR 44) and the PCR court rejected them as contrary to precedent established by the Arizona and/or United States Supreme Court (ROA-PCR 59 at 1). This decision was neither contrary to nor an unreasonable application of clearly established federal law.

Rulings of both the Ninth Circuit and the United States Supreme Court have upheld Arizona's death penalty statute against allegations that particular aggravating factors do not adequately narrow the sentencer's discretion. *See Lewis v. Jeffers*, 497 U.S. 764, 774-77 (1990); *Walton v. Arizona*, 497 U.S. 639, 649-56 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *Woratzeck v. Stewart*, 97 F.3d 329, 335 (9th Cir. 1996). The Ninth Circuit has also explicitly rejected the argument that Arizona's death penalty statute is unconstitutional because it "does not properly narrow the class of death penalty recipients." *Smith v. Stewart*, 140 F.3d at 1272.

In *Walton*, the United States Supreme Court rejected the argument that "Arizona's allocation of the burdens of proof in a capital sentencing proceeding violates the Constitution." 497 U.S. at 651. *Walton* also rejected the claim that Arizona's death penalty statute is impermissibly mandatory and creates a presumption in favor of the death penalty because it provides that the death penalty "shall" be imposed if one or more aggravating factors are found and mitigating circumstances are insufficient to call for leniency. *Id.* at 651-52 (citing *Blystone v. Pennsylvania*, 494 U.S. 299 (1990), and *Boyde v. California*, 494 U.S. 370 (1990)); *see Kansas v. Marsh*, 126 S. Ct. 2516, 2524 (2006) (relying on *Walton* to uphold Kansas's death penalty statute, which directs imposition of the death penalty when the state has proved that mitigating factors do not outweigh aggravators); *Smith*, 140 F.3d at 1272 (summarily rejecting challenges to the "mandatory" quality of Arizona's death penalty

statute and its failure to apply the beyond-a-reasonable-doubt standard).

In *Smith*, the Ninth Circuit likewise rejected the argument that Arizona's death penalty statute is constitutionally infirm because "the prosecutor can decide whether to seek the death penalty." 140 F.3d at 1272; *see Gregg v. Georgia*, 428 U.S. 153, 199 (1976) (pre-sentencing decisions by actors in the criminal justice system that may remove an accused from consideration for the death penalty are not unconstitutional); *Silagy v. Peters*, 905 F.2d 986, 993 (7th Cir. 1990) (holding that the decision to seek the death penalty is made by a separate branch of the government and is therefore not a cognizable federal issue).

For the reasons set forth above, Petitioner is not entitled to relief on Claims 22, 23, 24, and 28.

**Claim 26**

Petitioner alleges that death by lethal injection violates the Eighth Amendment. (Dkt. 54 at 142.) The PCR court's denial of this claim (ROA-PCR 59 at 1) is neither contrary to nor an unreasonable application of clearly established federal law. The Supreme Court has never held that execution by lethal injection constitutes cruel and unusual punishment. *See, e.g.*, *Stewart v. LaGrand*, 526 U.S. 115, 119 (1999), and the Ninth Circuit has rejected the argument, *Poland v. Stewart*, 117 F.3d 1094, 1105 (9th Cir. 1997). Therefore, Petitioner is not entitled to relief on Claim 26.

**Claims 27 and 31**

Petitioner challenges the constitutionality of two of the aggravating factors found by the trial court. In Claim 27, Petitioner alleges that the cruel, heinous, or depraved aggravating factor set forth in ARS § 13-703(F)(6) is vague and overbroad on its face and arbitrary and capricious as applied. (Dkt. 54 at 161.) In Claim 31, Petitioner alleges that A.R.S. § 13-703(F)(9), establishing as an aggravating factor the murder of a child under fifteen years of age by an adult, violates due process, equal protection, the right to counsel, and the prohibition on cruel and unusual punishment. (*Id.* at 172.)

1

Claim 27:

2        With respect to the cruel, heinous, or depraved factor, Petitioner argues that Arizona

3   has failed to adopt a sufficiently narrow construction of (F)(6) such that the factor's

4   application is appropriately directed and limited.  (*Id.* at 161.)  Conversely, Petitioner

5   contends that the trial court did not properly apply the "cruelty" factor as it has been

6   narrowed by the Arizona Supreme Court.  (*Id.*)

7        In *Walton*, 497 U.S. at 654-55, the Supreme Court held that the "heinous, cruel or

8   depraved" factor was facially vague.  *Id.* at 654-55.  Nevertheless, the Court upheld the

9   factor's constitutionality, reasoning that the Arizona Supreme Court had construed the terms

10  heinous, cruel and depraved "narrowly enough to limit and guide the discretion of

11  sentencers."  *Id.*  The ruling in *Walton* disposes of the first aspect of Petitioner's claim.

12       Petitioner raised the second aspect of this claim on direct appeal (Opening Brief at 39-

13  44).  The Arizona Supreme Court held that the cruel, heinous, or depraved factor had been

14  proven beyond a reasonable doubt with respect to both murders.  *Jones*, 185 Ariz. at 486-88,

15  917 P.2d at 215-17.  The court specifically found that both murders met the definition of

16  cruelty, which exists under Arizona law when the defendant "inflicts mental anguish or

17  physical abuse before the victim's death," because both Weaver and Tisha had time to

18  contemplate their fate before Petitioner finally dispatched them.  *Id.* at 487, 917 P.2d at 216

19  (quoting *State v. Walton*, 159 Ariz. 571, 586, 769 P.2d 1017, 1032 (1989)).

20       Petitioner offers no argument or analysis to support his contention that the trial court

21  did not apply the narrowed version of (F)(6), and this Court finds that Petitioner's challenge

22  to the application of state law by the trial court and the Arizona Supreme Court is without

23  merit.

24       As a general matter, a state court's errors in applying state law do not give rise to

25  federal habeas corpus relief.  *See Estelle v. McGuire,* 502 U.S. 62, 71-72 (1991). A federal

26  court is limited on habeas review to determining "whether the state court's [application of

27

28

- 37 -

state law] was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." *Lewis v. Jeffers,* 497 U.S. at 780. In making that determination, the court must inquire "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 781 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

A review of the evidence adduced at trial, and summarized by the Arizona Supreme Court, indicates that a rational trier of fact could have found that Petitioner inflicted physical abuse or mental anguish upon his victims before they died. Therefore, Petitioner is not entitled to relief on Claim 27.

Claim 31:

Petitioner argues that the factor set forth in § 13-703(F)(9), by establishing an aggravating circumstance based upon the age of the victim, "does little to narrow the class of [death-eligible] defendants," "establishes an arbitrary distinction based purely on the characteristics of the victim," and "creates confusion and takes away from the individualized treatment that each defendant is to be afforded." (Dkt. 54 at 172-73.)

It is difficult to imagine an aggravating factor less susceptible than (F)(9) to a challenge on the grounds of vagueness or overbreadth. The Court also rejects Petitioner's arguments that (F)(9) establishes an arbitrary aggravating factor that impermissibly focuses on the status of the victim rather than on the defendant's culpability.

Legislative enactments are presumed constitutional. *See Gregg,* 428 U.S. at 175. The party challenging the constitutionality of a statute bears a heavy burden in proving the statute to be unconstitutional. *Id.* Petitioner has made no showing that the statutory aggravating factor set forth in § 13-703(F)(9) is unconstitutional. Moreover, this Court finds that the aggravating circumstance is valid because it provides a "principled distinction between those who deserve the death penalty and those who do not." *Lewis v. Jeffers,* 497 U.S. at 776.

This conclusion is supported by the Arizona Supreme Court's analysis of the issue in *State v. Smith*, 193 Ariz. 452, 974 P.2d 431 (1999), where the court rejected the defendant's argument that "the age of the victims is an unconstitutional aggravating factor because it takes into account whom the defendant killed rather than the propensities of the defendant." *Id.* at 462, 974 P.2d at 441. In upholding the constitutionality of (F)(9), the court explained:

> We find that the age of a victim is an appropriate aggravating factor because a rational basis exists for it. By adopting the (F)(9) factor, the legislature determined that the young and old are especially vulnerable and should be protected. It is not irrational for the legislature to conclude that murders of children and the elderly are more abhorrent than other first-degree murders. Thus, in the absence of sufficient mitigating factors, murders of this sort should be punished more severely. In addition, the age of the victim is relevant to an inquiry into the defendant's characteristics and propensities. Those who prey on the very young or the very old are more dangerous to society.

*Id.*

Petitioner has not met his burden of demonstrating that the (F)(9) factor is unconstitutional. Therefore, he is not entitled to relief on Claim 31.

**Claims 29 and 30**

In Claim 29, Petitioner contends that the death penalty, as administered in Arizona, violates the Fifth, Sixth, Eighth, and Fourteenth Amendments because it "does not serve a deterrent purpose." (Dkt. 54 at 168.) In Claim 30, he alleges violations of his equal protection and due process rights because "Arizona's death penalty statute at the time of [Petitioner's] sentencing was applied in a manner that discriminates against poor, male defendants." (*Id.* at 170.) The PCR court rejected these claims as "already addressed by the Supreme Court." (ROA-PCR 59 at 1.) Because Petitioner's challenges to the death penalty are not supported by United States Supreme Court precedent, the PCR court's decision was neither contrary to nor an unreasonable application of clearly established federal law.

With respect to Claim 29, clearly established federal law is set forth in *Gregg*, 428 U.S. at 183, in which the Supreme Court posited that the death penalty serves two potential functions, retribution and deterrence. Regarding deterrence as a justification for capital punishment, the Court, upholding Georgia's death penalty statute, observed:

- 39 -

> The value of capital punishment as a deterrent of crime is a complex factual issue the resolution of which properly rests with the legislatures, which can evaluate the results of statistical studies in terms of their own local conditions and with a flexibility of approach that is not available to the courts.
>
> In sum, we cannot say that the judgment of the Georgia Legislature that capital punishment may be necessary in some cases is clearly wrong. Considerations of federalism, as well as respect for the ability of a legislature to evaluate, in terms of its particular State, the moral consensus concerning the death penalty and its social utility as a sanction, require us to conclude, in the absence of more convincing evidence, that the infliction of death as a punishment for murder is not without justification and thus is not unconstitutionally severe.

*Id.* at 186-87 (citation omitted).

With respect to Claim 30, clearly established federal law holds that "a defendant who alleges an equal protection violation has the burden of proving 'the existence of purposeful discrimination'" and must demonstrate that the purposeful discrimination "had a discriminatory effect" on him. *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) (quoting *Whitus v. Georgia*, 385 U.S. 545, 550 (1967)). Therefore, to prevail under the Equal Protection Clause, Petitioner "must prove that the decisionmakers in *his* case acted with discriminatory purpose." *Id.* Petitioner has not attempted to meet this burden. All he offers in support of his equal protection claim is reference to statistics showing that fewer women than men are convicted of capital crimes and executed. He offers no evidence specific to his case that would support an inference that his sex or economic status played a part in his sentence. *See Richmond v. Lewis*, 948 F.2d 1473, 1490-91 (1991), *vacated on other grounds*, 986 F.2d 1583 (9th Cir. 1993) (holding that statistical evidence that Arizona's death penalty is discriminatorily imposed based on race, sex, and socio-economic background is insufficient to prove that decisionmakers in petitioner's case acted with discriminatory purpose).

Petitioner is not entitled to relief on Claims 29 or 30.

### CONCLUSION

For the reasons set forth above, the Court finds that Petitioner has failed to establish entitlement to habeas relief on any of his claims.

- 40 -

1    Accordingly,

2    **IT IS HEREBY ORDERED** that Petitioner's Amended Petition for Writ of Habeas

3    Corpus (Dkt. 54) is **DENIED**.  The Clerk of Court shall enter judgment accordingly.

4    **IT IS FURTHER ORDERED** that the stay of execution entered by this Court on

5    March 2, 2001, is **VACATED.**

6    **IT IS FURTHER ORDERED** that the Clerk of Court send a courtesy copy of this

7    Order to Noel Dessaint, Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix,

8    Arizona 85007-3329.

9
10   DATED this 1st day of September, 2006.

11
12
13   _____
                 Susan R. Bolton
14           United States District Judge

15
16
17
18
19
20
21
22
23
24
25
26
27
28