Jon M. Sands
Federal Public Defender
Leticia Marquez (Arizona Bar No. 017357)
Assistant Federal Public Defender
407 W. Congress St., Suite 501
Tucson, Arizona 85701-1310
leticia_marquez@fd.org
520.879.7622

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Danny Lee Jones, | ) | Case No. CV-01-00384-PHX-SRB |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **DEATH PENALTY CASE** |
| | ) | |
| Charles Ryan, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**Petitioner's Reply to Response to**
***Martinez/Dickens* Brief**

# Table of Contents

I.      Introduction.................................................................................................... 1

II.     Respondents misunderstand the relevant law regarding *Martinez* and
        *Dickens*.......................................................................................................... 1

III.    Respondents have distorted Jones's burden with respect to demonstrating
        his postconviction counsel's ineffective assistance.......................................... 5

IV.     The doctrines of estoppel and law of the case are inapplicable to Jones's
        *Dickens* claims. ............................................................................................... 9

        A.     Principles of estoppel do not apply............................................... 9

V.      Jones's claims are "fundamentally altered" under *Dickens*............................. 11

VI.     Respondents' argument that Jones has failed to demonstrate cause and
        prejudice to excuse the procedural default of his claims is premature............ 13

VII.    Respondents' analysis of Jones's aggravation and mitigation, in terms of
        weighing, is factually and legally incorrect.................................................... 18

VIII.   Conclusion...................................................................................................... 22

## I.    Introduction.

Danny Lee Jones stands by and hereby incorporates the arguments previously advanced in his *Martinez/Dickens*[1] Brief, as the majority of Respondents' assertions are addressed at length there. (ECF No. 246.) However, he replies to the following specific arguments advanced by Respondents in their response brief. (ECF No. 247.)

## II.    Respondents misunderstand the relevant law regarding *Martinez* and *Dickens*.

To establish the analysis this Court must use to determine whether Jones has demonstrated cause and prejudice under *Martinez*, Respondents rely heavily upon the Ninth Circuit's panel decision in *Clabourne v. Ryan*, 745 F.3d 362 (9th Cir. 2014). (ECF No. 247 at 12-13.) Noticeably absent from Respondents' recitation of the standard, however, is any reference to the Ninth Circuit's en banc opinion in *Dickens v. Ryan*. Discussion of *Dickens* is likewise absent from the panel decision in *Clabourne*. The *Clabourne* panel's failure to address *Dickens* may be attributable to the fact that in the wake of Mr. Dickens's death shortly after the en banc opinion was filed, Respondents filed a motion to vacate the opinion. (*Dickens v. Ryan*, No. 08-99017, ECF No. 96 (9th Cir. Jan. 29, 2014).) This motion was still under consideration by the *Dickens* en banc court at the time the *Clabourne* opinion was issued. However, the *Dickens* en banc court went on to deny

---

[1] *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc).

1

Respondents' motion, noting that "[t]he precedent set by the *en banc* panel in [Mr. Dickens's case] will undoubtedly affect cases now pending before this court. We see no reason to undo this precedent and force future panels to duplicate our efforts by re-deciding issues we have already resolved." (*Dickens v. Ryan*, No. 08-99017, ECF No. 99 (9th Cir. Mar. 11, 2014).) Accordingly, the *Clabourne* panel's failure to address the court's en banc precedent calls its analysis into question.[2] Jones respectfully refers the Court to his argument in his *Martinez/Dickens* Brief that the *Clabourne* panel's *Martinez* analysis is flawed and should be regarded with skepticism in light of the *Dickens* en banc decision. (*See* ECF No. 246 at 55-57.)

In their grudging acceptance of the fact that *Dickens* is the law of the circuit, Respondents misrepresent both the effect of *Dickens* and the scope of *Cullen v. Pinholster*, 563 U.S. 170 (2011). The Ninth Circuit's en banc opinion in *Dickens* rejected the state's argument in that case that consideration of new evidence where a claim had been rendered fundamentally altered would contravene *Pinholster*. *Dickens*, 740 F.3d at 1320. As the en banc court discussed, *Pinholster* addressed the restrictions on evidence to be considered by federal habeas courts deciding claims already adjudicated on the merits in state court. *Id.* The Ninth Circuit went

---

[2] The Ninth Circuit has not yet ruled on Clabourne's petition for rehearing en banc because the petition for panel rehearing and rehearing en banc was stayed pending the en banc decision in *McKinney v. Ryan*. (*Clabourne v. Ryan*, No. 09-99022, ECF No. 55 (9th Cir. Apr. 2, 2014).) Accordingly, the relevance and analysis of the *Clabourne* opinion is questionable at best.

on to explain what Respondents refuse to see: the Supreme Court's decision in *Pinholster* contemplated the possibility that new evidence could fundamentally alter a claim and that federal courts could then consider the new evidence in deciding the new claim. *Id.*

Reviewing the Supreme Court's opinion in *Pinholster*, it is clear that the Ninth Circuit got it right when it outlined *Pinholster*'s impact on fundamentally altered claims. *Pinholster* established the scope of § 2254(d)'s effect on record expansion in federal habeas proceedings. There, the Court quoted the text of the statute to demonstrate the limits of its reach. Section 2254(d) "applies *only* to claims adjudicated on the merits in State court proceedings." *Pinholster*, 563 U.S. at 186 (emphasis added) (internal quotation marks omitted). Necessarily then, claims not adjudicated on the merits in state court are not susceptible to the limits erected by § 2254(d), and federal habeas courts may take and consider new evidence in accordance with § 2254(e) when deciding unadjudicated claims. *Id.* at 185-86.

In her *Pinholster* dissent, Justice Sotomayor discussed a hypothetical case in which a habeas petitioner's claim of a *Brady* violation was denied on the merits in state court. *Pinholster*, 563 U.S. at 214-15 (Sotomayor, J., dissenting). Later, in federal habeas, the petitioner bolstered his claim with new evidence of withheld exculpatory evidence. *Id.* The majority of the Court accepted that this hypothetical

"may well present a new claim," on which the federal habeas court could consider the new evidence, though the Court declined to decide "where to draw the line between new claims and claims adjudicated on the merits." *Id.* at 186 n.10.

Respondents cleverly insert bracketed language into a quote from the Supreme Court's *Pinholster* opinion to support their argument that *Dickens* contravenes *Pinholster*. (ECF No. 247 at 15.) According to Respondents, "[i]f a claim has been adjudicated on the merits by a state court [such as occurred in *Dickens*] a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." (ECF No. 247 at 15 (quoting *Pinholster*, 131 S. Ct. at 1400) (second alteration in original).) However, as discussed above, the *Pinholster* opinion acknowledged that some quantum of new evidence can fundamentally alter a claim, rendering it unadjudicated, in which case new evidence may be considered by the federal court deciding the claim. *Pinholster*, 563 U.S. at 186 n.10. Hence, "[i]f a claim has been adjudicated on the merits by a state court [such as occurred in *Dickens*]," and new evidence fundamentally alters the claim, such as also occurred in *Dickens*, a federal court may consider the new evidence in deciding the new claim.

*Dickens* was rightly decided, this Court is bound by *Dickens*, and as in *Dickens*, Jones's new evidence fundamentally alters his claims of ineffective

assistance of counsel. This Court may properly consider Jones's new evidence in deciding his ineffective assistance claims.

### III. Respondents have distorted Jones's burden with respect to demonstrating his postconviction counsel's ineffective assistance.

Faithfully applying *Strickland*, Jones need only demonstrate that his postconviction counsel's performance was deficient and that Jones was prejudiced thereby. Respondents, however, set out the test from *Strickland v. Washington*, 466 U.S. 668 (1984), and immediately get to work ratcheting up Jones's burden to demonstrate ineffective assistance in his case.

Respondents begin by explaining the *Strickland* standard in a contextual vacuum. Divorced from the facts of this case, Respondents argue that a failure to investigate could be strategic and petitioners must demonstrate that counsel's failures rendered "the result of the trial unreliable or the proceeding fundamentally unfair." (ECF No. 247 at 18.) First, *Strickland* established that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. In light of the fact that postconviction counsel included the subject ineffective assistance claims in the postconviction petition, there is no plausible argument that the failure to investigate and develop factual support for the claims derived from a reasonable strategic decision. Second, *Strickland* established that a petitioner demonstrates prejudice when he shows that there is a reasonable probability that, but for

5

counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 694. Respondents recite this standard in their response, but they add a citation to *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), for the proposition that some fundamental unfairness is required before prejudice may be found. (ECF No. 247 at 18.) The citation to *Lockhart*, however, makes no sense divorced from the facts of that case. Seizing upon the decision's onerous language, Respondents ignore Justice O'Connor's warning in her *Lockhart* concurrence that the decision "will, in the vast majority of cases, have no effect on the prejudice inquiry under *Strickland v. Washington*" because *Lockhart* "concerns the unusual circumstance where the defendant attempts to demonstrate prejudice based on considerations that, as a matter of law, ought not inform the inquiry." 506 U.S. at 373-74 (internal citations omitted) (O'Connor, J., concurring) (explaining no prejudice from counsel's failure to object where case supporting objection subsequently overruled). *Accord Lafler v. Cooper*, 132 S. Ct. 1376, 1386 ("The Court has rejected the argument that [*Lockhart v.*] *Fretwell* modified *Strickland* before and does so again now."); *Glover v. United States*, 531 U.S. 198, 202-03 (2001) (explaining *Lockhart* does not supplant *Strickland*); *Williams v. Taylor*, 529 U.S. 362, 393 (2000) (distinguishing *Lockhart* from cases where ineffective assistance deprives petitioner of substantive or procedural right).

Respondents next refine the *Strickland* inquiry as it applies in the capital sentencing context. Respondents outline how reviewing courts must weigh mitigation evidence, mindful of the potential aggravating effect of the evidence. (ECF No. 247 at 20.) However, Respondents' explication of this concept relies on cases in which courts applied AEDPA deference to determine whether the state court ruling was an unreasonable application of clearly established federal law. (*See id.* (citing *Andrews v. Davis*, 798 F.3d 759, 775-76 (9th Cir. 2015) (applying AEDPA); *Pinholster*, 131 S. Ct. at 1410 (applying AEDPA); *Bell v. Cone*, 535 U.S. 685, 701-02 (2002) (applying AEDPA)).) These cases, the reasoning of which is predicated on application of AEDPA, do not apply.

The remand order that resulted in these proceedings established that first, this Court must determine whether the new evidence has fundamentally altered Jones's ineffective assistance claims. If the Court answers this question in the affirmative, it is only then that the Court must determine whether cause and prejudice pursuant to *Martinez* excuses the procedural default of the claims. (9th Cir. ECF No. 138.) No weighing or reweighing occurs until after the Court determines that the claims have been fundamentally altered. Any weighing at that point would proceed under a de novo standard of review. The Court would not be constrained by the weight assigned by some other court; instead this Court would independently evaluate and weigh Jones's proffered mitigation evidence. Further,

if the Court has determined that the evidence has fundamentally altered the claims, it would be logically inconsistent to simultaneously characterize the evidence as "merely cumulative to what was presented at trial." (ECF No. 247 at 20.)

Finally, Respondents apply the *Strickland* standard to postconviction counsel in a manner that creates the illusion that the standard is prohibitively difficult to meet. (*See* ECF No. 247 at 23-25.) However, Respondents' argument misconstrues *Martinez*. First, in his opinion for the Court, Justice Kennedy did, indeed, compare postconviction counsel to counsel on direct appeal. This comparison, however, was not drawn to set out the standard for establishing ineffective assistance of postconviction counsel. Instead the comparison was used to illustrate that, as the appellate attorney is vital to safeguarding a prisoner's constitutional rights on appeal, the postconviction attorney is essential to ensuring a prisoner's ability to "vindicat[e] a substantial ineffective-assistance-of-trial-counsel claim." *Martinez*, 132 S. Ct. at 1317.

Second, Respondents' argument that postconviction counsel's failure to raise a claim does not amount to ineffective assistance unless the claim is a dead-bang winner has no application in this case. Here, Jones's postconviction counsel **did** raise the claims giving rise to this proceeding. Postconviction counsel's ineffective assistance derives from the fact that despite his raising the issues, counsel failed to investigate and develop factual support for them. Without factual support, the

claims were doomed to fail before the state court. Under the circumstances, Jones need not prove that omitted claims were stronger than claims included in the postconviction petition.

Respondents' attempt to stretch the *Strickland* prejudice inquiry beyond its logical limits is not novel, but it is misguided and should be disregarded.

## IV.  The doctrines of estoppel and law of the case are inapplicable to Jones's *Dickens* claims.

### A.  Principles of estoppel do not apply.

Respondents assert Jones is estopped from arguing that his claims are unexhausted. According to Respondents, Jones's current position—that his new claims are not exhausted—is inconsistent with his earlier claim that they were exhausted. (ECF No. 247 at 25.) Jones has not taken inconsistent positions in the litigation. Jones still agrees that the claims presented in state court were exhausted, which is entirely consistent with the argument Jones first made in the Ninth Circuit. The question of whether these claims are transformed by the new evidence was raised in reply, and as an alternative argument, to Respondents' claim raised in the Ninth Circuit that *Pinholster* prohibits new evidence from being considered in habeas proceedings.[3] *See Dickens*, 740 F.3d at 1320.

---

[3]The claim was set forth as:

> *In the alternative*, Jones argues that [should the Ninth Circuit find the IAC evidence new] the additional evidence uncovered by habeas counsel, has fundamentally altered his IAC claims, rendering them unexhausted and procedurally defaulted. (9th Cir. ECF No. 122 at 20) (emphasis added).)

9

Jones and Respondents both find themselves arguing different views;[4] it is not uncommon to change argument based on a change in the law. A party changing positions in response to a change in the law is not merely permitted *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir. 1984) (finding no judicial estoppel where party altered its theory of recovery in response to change in law); it is "good lawyering," *In re Exxon Valdez*, 484 F.3d 1098, 1102 (9th Cir. 2007). Judicial estoppel does not apply.

B. The law of the case doctrine does not apply.

Respondents argue that under the law of the case doctrine, this Court cannot consider for a second time its decision regarding the claims raised here. (ECF No. 247 at 29.) Although under this doctrine a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case, it is not an "inexorable command." *Kimball v. Callahan*, 590 F.2d 768, 771-72 (9th Cir. 1979). This doctrine allows for an exception when there has been an intervening change in the law. *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir. 1990). Further, another exception exists if there is a change in the relevant circumstances. *United States v. Estrada-Lucas*, 651 F.2d 1261, 1263-64 (9th Cir. 1980). Since the Court's decision in this

---

[4] In the past, Respondents have argued that the evidence presented in habeas is "cumulative." (ECF No. 219 at 17-18.) Later, to take advantage of *Pinholster*, Respondents argued that this evidence is new. (9th Cir. ECF. No. 92 at 6.)

matter, *Pinholster* and *Dickens* have been decided. As illustrated by the Ninth Circuit's multiple requests for briefing, these decisions—a change in the law—individually or collectively, may have an effect on the outcome of this matter.

Moreover, law of the case is merely a prudential doctrine and does not limit this Court's power. *See Slotkin v. Citizens Cas. Co.*, 614 F.2d 301, 312 (2d Cir. 1979) (The law of the case "does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided."). Further, as the Supreme Court cautions, "law of the case doctrine was understandably crafted with the course of ordinary litigation in mind." *Arizona v. California*, 460 U.S. 605, 618-19 (1983). As set forth above and in other pleadings before this Court, there is little ordinary about this matter. The law of the case doctrine does not apply.

## V.    Jones's claims are "fundamentally altered" under *Dickens*.

Jones expanded the relevant ineffective assistance of counsel claims beyond the evidence that was presented in state court, to include a compelling mitigation profile, incorporating new facts that supported new diagnoses. Respondents argue that the claims presented in habeas are "word for word restatements of" the claims presented in state court. (ECF No. 247 at 31.) However, while the heading or title of the claim is the same, the factual allegations set forth in four expert reports and hundreds of pages of documents are far more compelling than the claim presented in state court, as outlined below.

11

A review of the detailed, 33-page report from Dr. Pablo Stewart, a psychiatrist who devoted 130 hours to Jones's evaluation, alerts the reader to the myriad of mental health problems Jones has faced since before birth. (ECF No. 246, Ex. 5; Tr. Mar. 21, 2006 at 172.) Compare this to the petitioner in *Dickens* who expanded his claim to include "factual allegations *suggesting*" a diagnosis of FAS and organic brain damage. *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (emphasis added). Meanwhile, Jones has transformed his claims to include *actual* diagnoses of five serious, complex and interwoven psychiatric disorders, supported by four expert opinions. (ECF No. 246, Exs. 5, 15, 16, 17.) Whereas at trial and postconviction a mental health expert could only speculate regarding "possible" disorders, at habeas not only did Jones provide diagnoses through numerous experts, but he also supported those with relevant records. (ECF No. 246, Exs. 6, 7, 8, 9, 10.) Jones's claim that he has "fundamentally altered" his legal claims in federal court is arguably stronger than that of *Dickens*. *See Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). Jones's new mitigation evidence, which includes diagnoses of Cognitive Brain Dysfunction, Attention Deficit/ Hyperactivity Disorder, Mood Disorder, Not Otherwise Specified, and Post Traumatic Stress Disorder, fundamentally alters his ineffective assistance of counsel claims. *See Aiken v. Spalding*, 841 F.2d 881, 883-84 n.3 (9th Cir. 1988) (new evidence fundamentally alters claim if it "places [the] claim in a significantly

different and stronger evidentiary posture than it had when presented in state court"). Similar to the *Dickens* claim, "the new evidence [in this case] creates a mitigation case that bears little resemblance to the naked *Strickland* claim raised before the state courts." *Dickens*, 740 F.2d at 1319.

**VI.    Respondents' argument that Jones has failed to demonstrate cause and prejudice to excuse the procedural default of his claims is premature.**

Ignoring the fact that Jones has never had the opportunity to develop evidence of his postconviction counsel's ineffectiveness, Respondents argue that Jones's claims of ineffective assistance of trial counsel should evade review because Jones has not proved postconviction counsel's ineffective assistance on the pleadings. This argument is premature. Jones should be granted a hearing so that he may adduce evidence to support his claim of ineffective assistance during postconviction. *See Dickens*, 740 F.3d at 1321-22 (explaining petitioner allowed to present evidence to support claim of postconviction counsel's ineffectiveness and that cause and prejudice hearing appropriate).

Respondents seek to contradict Jones's claim that postconviction counsel was ineffective by arguing that there are many ways to skin a cat, and though postconviction counsel's strategy was ultimately unsuccessful, he engaged in nothing more than a "reasonable miscalculation or lack of foresight." (ECF No. 247 at 34.) Presenting claims unsupported by a reasonable investigation or an adequate factual record is not tantamount to a reasonable miscalculation; it is

nothing more than deficient performance. No reasonable lawyer would, as a matter of reasonable strategy, choose to present claims without factual support. Yet this is what Jones's postconviction counsel did when he failed to undertake an adequate investigation into Jones's medical, psychiatric, and social histories.

Respondents attempt to minimize postconviction counsel's role in failing to investigate Jones's neurological and neuropsychological function by pointing out that counsel had asked the PCR court for funding for neurological or neuropsychological testing and been refused. (ECF No. 247 at 35-36.) It is unfortunate yet true that, unlike retained counsel, appointed counsel are at the mercy of the court to obtain funding necessary for an adequate investigation of their clients' cases. However, the "duty to investigate . . . cannot be abridged because counsel is only appointed, not retained." *Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir. 1997) (internal citations and quotation marks omitted).

Jones's postconviction counsel had a duty to educate the trial court that the psychiatric examination by the court-appointed psychiatrist at trial did not and could not render superfluous the neurological and neuropsychological examinations the same court-appointed expert had previously recommended. Postconviction counsel failed to carry out this duty, resulting in deficient performance.

Respondents move on to fault Jones for failing to inform postconviction counsel that Randy Jones was emotionally and physically abusive, such that counsel would have been alerted to the fact that Jones's sister was a fruitful source of mitigation evidence. (ECF No. 247 at 38.) However, counsel's duty to investigate certainly encompasses a duty to at least ask the client's family of origin about what it was like growing up together. *See Silva v. Woodford*, 279 F.3d 825, 847 (9th Cir. 2002) (holding even where client "forecloses certain avenues of investigation," counsel retains duty to investigate and seek out "alternative sources of information and evidence"); *Lambright v. Stewart*, 241 F.3d 1201, 1207 (9th Cir. 2001) (explaining failure to interview client's sister amounted to deficient performance where counsel had indication of mental disorder). Moreover, the fact that neither Jones nor his stepfather promptly disclosed the fact that Jones was physically and emotionally abused by his stepfather is neither surprising nor sufficient to absolve postconviction counsel of the duty to investigate. *Lewis v. Dretke*, 355 F.3d 364, 367-68 (5th Cir. 2003) (holding fact that client's family was "not forthcoming" about abuse insufficient to support conclusion counsel provided effective assistance).

To conclude their attack on Jones's claim of ineffective assistance of postconviction counsel, Respondents argue that Jones suffered no prejudice from postconviction counsel's failures. According to Respondents, the evidence of

15

Jones's psychiatric disorders and cognitive dysfunction adduced in the federal habeas proceedings is cumulative to the evidence presented at sentencing. (ECF No. 247 at 54.) This is difficult to comprehend in light of the State's closing argument at the penalty hearing. There, the State argued that there was no evidence at all to support the claims of "the abusive and chaotic childhood and the mental condition." (Tr. Dec. 9, 1993 at 52.) At the time, the State urged that the mitigation presentation was an "11th hour defense" and characterized the evidence in mitigation as "some garbage" aimed at "dress[ing] it up [so that] perhaps someone will buy it." (*Id*.) Further, as mentioned above in Section III, before the Court examines whether Jones has demonstrated cause and prejudice to excuse the procedural default of these claims, the Court will have found the new evidence has fundamentally altered the claims. Findings that the new evidence renders the claims fundamentally altered and that the new evidence is merely cumulative to that presented at sentencing are mutually exclusive.

In another attempt to diminish the weight of the new mitigating evidence, Respondents point out that the new evidence is inconsistent with the story presented at trial and in the postconviction proceedings. (ECF No. 247 at 57.) This inconsistency is immaterial when the heart of Jones's argument is that both trial and postconviction counsel performed deficiently by failing to adequately investigate and present mitigation evidence.

16

Respondents conclude by arguing that the totality of the mitigation evidence does not surmount the aggravation evidence, nor could it, as Respondents find it "difficult to imagine *any* mitigation that would have led the sentencer to conclude that a life sentence was appropriate." (ECF No. 247 at 63 (emphasis in original).) Respondents rely on their assertions that the new evidence is cumulative, it does not have a causal nexus to the crimes, it is based solely on Jones's own statements, and a sentencer "might find" the evidence more aggravating than mitigating. (ECF No. 247 at 62-63.)

Jones need not prove, however, that the new evidence "would have led the sentencer to conclude that a life sentence was appropriate." He need only prove there is a reasonable probability of a different outcome had counsel not performed deficiently. *Strickland*, 466 U.S. at 694. This "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Jones's new evidence of sexual, physical, and emotional abuse, psychiatric disorders, and cognitive dysfunction undermines confidence in the outcome of his sentencing proceedings. However, should the Court find that it cannot conclude on this record that Jones was prejudiced by his postconviction counsel's deficient performance, Jones should be granted a hearing so that he may adduce evidence of the same.

In their final argument on the subject of cause and prejudice under *Martinez*, Respondents misstate the holding of *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), to conclude that Jones's failure to "satisfy either prong of *Strickland* with regard to his trial counsel's performance" resulted in a "fail[ure] to establish prejudice under *Martinez*." (ECF No. 247 at 64.) *Clabourne*, however, did not adopt this procedure for establishing prejudice. Instead, the court held, consistent with the Supreme Court's clear language in its *Martinez* opinion, that petitioners demonstrate prejudice by showing that the underlying ineffective assistance of trial counsel claim has "some merit." *Clabourne*, 745 F.3d at 377.

Therefore, Jones need only show that reasonable jurists could debate whether trial counsel performed deficiently, prejudicing Jones or that the ineffective assistance claim is "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Considering the procedural history of this case, including this Court's grant of a certificate of appealability on each of the subject ineffective assistance claims and the Ninth Circuit's grant of habeas relief on the claims, Respondents' assertion that Jones has not demonstrated *Martinez* prejudice is, itself, meritless.

**VII.   Respondents' analysis of Jones's aggravation and mitigation, in terms of weighing, is factually and legally incorrect.**

As part of their *Strickland* analysis, Respondents spend much of their brief discussing the evaluation, weighing and reweighing of the aggravation and

18

mitigation evidence for the purposes of proving prejudice resulting from postconviction counsel's ineffective assistance. (ECF No. 247.)

Respondents basically argue that no mitigation imaginable could possibly cause a juror to afford Jones mercy. Respondents' claim that in this case the death penalty is a foregone conclusion is legally incorrect. "There is no more important hearing in law or equity than the penalty phase of a capital trial." *Correll v. Ryan*, 539 F.3d 938, 946 (9th Cir. 2008) (quoting *Gerlaugh v. Stewart*, 129 F.3d 1027, 1050 (9th Cir. 1997) (Reinhardt, J., concurring and dissenting)). According to Respondents, the additional evidence would have had a *de minimis* effect in light of the aggravation in this case; however, "[t]he Constitution prohibits imposition of the death penalty without adequate consideration of factors which might evoke mercy." *Hendricks v. Calderon*, 70 F.3d 1032, 1044 (9th Cir. 1995).

Further, despite horrible aggravation—in some cases worse than that in this case—courts have found prejudice resulting from ineffective assistance of counsel. *See Smith (Joe) v. Stewart*, 189 F.3d 1004, 1013 (9th Cir. 1999) ("The horrific nature of the crimes involved here does not cause us to find an absence of prejudice."); *Douglas v. Woodford*, 316 F.3d 1079, 1091 (9th Cir. 2003) ("The gruesome nature of the killing did not necessarily mean the death penalty was unavoidable."); *Lockett v. Anderson*, 230 F.3d 695, 716 (5th Cir. 2000) (despite

"inherent unforgivable viciousness" of crime, objectively reasonable juror confronted with available mental health mitigation might not have voted for death).

Respondents also highlight that the "weighing process includes evaluating whether its impact on the jury might be aggravating rather than mitigating." *Andrews v. Davis*, 798 F.3d 759, 776 (9th Cir. 2015). In this case, however, a reviewing court does not have to assess or speculate as to whether Jones's jury would have sentenced him to death. In fact, even without the benefit of any mitigation, at least two jurors would have sentenced Jones to life. (Ex. 26, Gwendelyn Munro Decl.; Ex. 27, Mary Lou Herridge Decl.)[5] These sworn statements illustrate how even the most aggravated crime may "evoke mercy" in the sentencer; death is never a foregone conclusion.

Respondents also rely on *Wong v. Belmontes*, 558 U.S. 15 (2009), for the proposition that cumulative evidence need not have been presented by trial counsel. First, as detailed in Jones's *Martinez/Dickens* Brief, the factual scenario in this case is extremely different from that in *Belmontes* because the voluminous new mitigating evidence offered here completely transforms the picture presented at sentencing. It is not merely cumulative. Second, *Belmontes* dealt with counsel's strategic decision to keep out certain evidence so as to avoid opening the door to devastating evidence of a prior murder. 558 U.S. at 25. No such strategic decision

---

[5]Exhibits 26 and 27, hereto attached, are numbered in sequential order following the exhibits numbered in Petitioner's *Martinez/Dickens* Brief.

exists in this case. As Respondents argued, there is not much more negative evidence that could have been presented by Jones, than the aggravation factors presented by the State. Jones had nothing to lose. Regardless, the potential for harmful rebuttal does not automatically justify a decision not to present mitigating evidence. *Williams v. Taylor*, 529 U.S. at 364 ("Although not all of the additional evidence documented during the habeas proceedings was favorable [to petitioner], the failure to introduce the comparatively voluminous amount of mitigating evidence was not justified by a tactical decision" and constituted unreasonable performance on the part of trial counsel.).

Unlike in *Belmontes*, counsel in this case was obligated to try to investigate and present mitigation to ameliorate the aggravating evidence already before the trial court. The anemic evidence that was presented does not ameliorate the failure to present powerful mental health evidence, childhood sexual and physical abuse evidence, and evidence of brain damage. *See Sears v. Upton*, 561 U.S. 945, 955 (2010) ("We certainly have never held that counsel's effort to present *some* mitigation evidence should foreclose an inquiry into whether a facially deficient mitigation investigation might have prejudiced the defendant. To the contrary, we have consistently explained that the *Strickland* inquiry requires precisely the type of probing and fact-specific analysis that the state trial court failed to undertake below.") (emphasis in original).

1

**VIII.  Conclusion.**

2

Jones has demonstrated that the new evidence submitted in federal habeas

3

4

has fundamentally altered his ineffective assistance of counsel claims. Because

5

Jones has also shown cause and prejudice pursuant to *Martinez* for the procedural

6

default of the claims included in this briefing, he respectfully requests that the

7

8

Court reach the merits of his underlying claims and grant relief.

9

RESPECTFULLY SUBMITTED this 18th day of April, 2016.

10

JON M. SANDS
Federal Public Defender

11

Leticia Marquez

12

Assistant Federal Public Defender

13

14

/s/*Leticia Marquez*

Leticia Marquez

15

Counsel for Petitioner, Danny Jones

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of April, 2016, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrant(s):

Jeffrey Sparks
Assistant Attorney General
Office of the Attorney General
Capital Litigation Section
1275 W. Washington Street
Phoenix, Arizona  85007

By: /s/ *Tamelyn McNeill*

23