**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Danny Lee Jones,<br><br>                Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>                Respondents. | No. CV-01-00384-PHX-SRB<br><br><u>DEATH PENALTY CASE</u><br><br>**ORDER** |

This case is before the Court on remand from the Ninth Circuit Court of Appeals.

A quarter century ago, Danny Jones was convicted of two counts of first-degree murder and one count of attempted first-degree murder. On March 26, 1992, Jones killed his friend Robert Weaver with a baseball bat. He then attacked Weaver's seventy-four-year-old grandmother with the bat; she died from her injuries after trial, having spent seventeen months in a coma. Finally, Jones killed Weaver's seven-year-old daughter, Tisha, dragging her out from under her bed, beating her with the bat, and then strangling or suffocating her. *State v. Jones*, 185 Ariz. 471, 477–78, 917 P.2d 200, 206–07 (1996). The trial judge sentenced Jones to death. The Arizona Supreme Court affirmed. *Id.*

After unsuccessfully pursuing post-conviction relief ("PCR") in state court, Jones filed a preliminary federal habeas corpus petition in this Court on February 28, 2001 (Doc. 1), and filed an amended petition on September 13, 2002 (Doc. 54). Jones also moved for evidentiary development. (*See* Docs. 104, 120.) The Court granted his requests for expansion of the record and an evidentiary hearing in support of Claims 20(O), (P),

and (T), alleging various instances of ineffective assistance of counsel at sentencing. (Doc. 121.) After holding a three-day evidentiary hearing in March 2006, the Court denied the claims, as well as Jones's remaining habeas claims. (Docs. 220, 221.)

The Ninth Circuit Court of Appeals reversed. *Jones v. Ryan*, 583 F.3d 626, 647 (9th Cir. 2009). On April 18, 2011, however, the United States Supreme Court granted Respondents' petition for certiorari, vacated the judgment, and remanded to the Ninth Circuit for further consideration in light of *Cullen v. Pinholster*, 563 U.S. 170 (2011). *Ryan v. Jones*, 563 U.S. 932 (2011).

Three years later, after briefing and oral argument, the Ninth Circuit vacated and deferred submission of the case pending the decision in *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc). *Jones v. Ryan*, No. 07-9900 (9th Cir. Sep. 05, 2013). Shortly after the decision, the Ninth Circuit remanded Jones's case to this Court to consider, under *Dickens* and *Martinez v. Ryan*, 566 U.S. 1 (2012), "Jones's argument that his ineffective assistance of counsel claims are unexhausted and therefore procedurally defaulted, and that deficient performance by his counsel during his post-conviction relief case in state court excuses the default." (Doc. 240-2.)

## APPLICABLE LAW

Federal habeas claims are analyzed under the framework of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The AEDPA provides that a petitioner is not entitled to habeas relief on any claim adjudicated on the merits in state court unless the state court's adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d).

In *Pinholster*, the Court emphasized that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U.S. at 181. "The federal habeas scheme leaves primary responsibility with the state courts . . . ." *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002). As the Court explained in *Pinholster*:

> Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief. It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*.

563 U.S. at 182.

For claims not adjudicated on the merits in state court, federal review is generally not available when the claims have been denied pursuant to an independent and adequate state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). For such claims, "federal habeas review . . . is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. *Coleman* held that ineffective assistance of counsel in PCR proceedings does not establish cause for the procedural default of a claim. *Id.*

In *Martinez v. Ryan*, 566 U.S. 1 (2012), however, the Court established a "narrow exception" to the rule announced in *Coleman*. Under *Martinez*, a petitioner may establish cause for the procedural default of an ineffective assistance claim "by demonstrating two things: (1) 'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez*, 566 U.S. at 14); *see Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015).

In *Dickens,* the Ninth Circuit held that factual allegations not presented to a state court may render a claim unexhausted, and thereby subject to analysis under *Martinez*, if the new allegations "fundamentally alter" the claim presented and considered by the state courts. 740 F.3d at 1318. A claim has not been fairly presented in state court if new evidence fundamentally alters the legal claim already considered by the state court or places the case in a significantly different and stronger evidentiary posture than it was

when the state court considered it. *Id.* at 1318–19 (citing *Vasquez v. Hillary*, 474 U.S. 254, 260 (1986); *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988); *Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988)).

In state court Dickens argued that sentencing counsel provided ineffective assistance for failing to direct the work of a court-appointed psychologist and failed to adequately investigate Dickens's background. More specifically, Dickens alleged that counsel "conducted no investigation whatsoever into the possibility [petitioner] was suffering from any medical or mental impairment," and failed to direct the psychologist to any particular mitigating evidence. In his federal habeas petition, however, Dickens included extensive factual allegations suggesting that he suffered from Fetal Alcohol Syndrome (FAS) and organic brain damage. The Ninth Circuit

> reject[ed] any argument that *Pinholster* bars the federal district court's ability to consider Dickens's "new" IAC [ineffective assistance of counsel] claim. The state argues that the district court cannot consider new allegations or evidence proffered for the first time to the district court. In *Pinholster,* the Supreme Court made clear that a federal habeas court may not consider evidence of a claim that was not presented to the state court. However, this prohibition applies only to claims previously "adjudicated on the merits in State court proceedings."
>
> *Pinholster* does not bar Dickens from presenting evidence of his "new" IAC claim, because the claim was not "adjudicated on the merits" by the Arizona courts. While the Arizona courts did previously adjudicate a similar IAC claim, the new allegations and evidence "fundamentally altered" that claim . . . .

*Id.* at 1320 (citations omitted).

## DISCUSSION

At issue are three claims of ineffective assistance of counsel at sentencing. Jones previously argued that the claims were exhausted in state court, Respondents conceded that the claims were exhausted, and the Court found that the claims were exhausted. (*See* Doc. 90 at 7; Doc. 121.) The claims are as follows.

In Claim 20(O), Jones alleged that his trial counsel performed ineffectively by failing to secure the appointment of partisan mental health experts, specifically a

neuropsychologist and neurologist, who could have revealed Jones's "neurological disorders and organic mental illness." (Doc. 54 at 126.) In Claim 20(P), Jones alleged that counsel performed ineffectively by failing to make a timely motion seeking neurological and neuropsychological testing. (*Id.* at 126.) In Claim 20(T), Jones alleged that counsel performed ineffectively by failing to present additional mitigation evidence focusing on Jones's abusive childhood and the effects of his head trauma and drug abuse. (*Id.* at 129.)

Pursuant to the remand order, this Court must consider whether Claims 20(O), (P), and (T), are fundamentally altered and therefore "new" and defaulted pursuant to *Dickens* and, if so, whether Jones can demonstrate cause and prejudice for the default under *Martinez*.

**1. Background**

A. <u>Sentencing proceedings</u>

Jones was represented at trial by Mohave County Assistant Public Defender Lee Novak and co-counsel Katie Carty. After Jones was convicted, on September 13, 1993, the trial court set sentencing for November 8, 1993, ordered a presentence report ("PSR"), and granted Jones's request for a mental health examination.

At a presentence conference on October 28, 1993, the court granted Novak's unopposed request to continue sentencing and ordered Dr. Jack Potts, a forensic psychiatrist, to complete his evaluation by November 29, 1993. (ROA at 32; RT 10/28/93 at 3–4.) Dr. Potts interviewed Jones on November 26, 1993. (RT 12/1/93 at 2.) He reviewed the PSR and prepared a report.

The sentencing hearing was held on December 8, 1993. Novak presented testimony from Jones's stepfather, Randy Jones ("Randy"), and Dr. Potts. Randy testified that Jones's biological father, the first husband of Jones's mother, physically abused her while she was pregnant—in one instance throwing her down a flight of stairs—and that during Jones's birth her heart had stopped and forceps had been used to deliver the child. (RT 12/8/93 at 41, 44–45.) Randy testified that when Jones was four, he experienced black-outs, and for years thereafter bruised easily due to a calcium deficiency. (*Id.* at 42–46, 65.) He testified that Jones's first stepfather, the second husband of Jones's mother,

verbally and physically abused Jones, his half-sister, and his mother. (*Id.* at 42–46.) Randy also testified about various head injuries suffered by Jones, which occurred when Jones was approximately thirteen, fifteen, and nineteen years old. (*Id.* at 47–48, 49, 50, 65.) In the first two incidents, Jones had fallen off roofs. (*Id.* at 48, 49, 65–67.) The last incident, which resulted in unconsciousness and hospitalization, occurred during a mugging while Jones was serving in the Marines. (*Id.* at 50.)

Randy also testified about Jones's history of drug and alcohol use, which began when he was about thirteen, and his participation in drug treatment programs, including an in-house facility in San Francisco where he stayed for almost two years. (*Id.* at 52–61.) Randy described how Jones's behavior deteriorated after he began abusing substances; he also described Jones's behavior as improving when he was placed on lithium. (*Id.* at 51–52, 55–57, 60–61.)

Dr. Potts testified about the seven mitigating factors he identified in his report. (*Id.*) He offered detailed testimony about the first factor, Jones's "chaotic and abusive childhood" and its effect on his mental health and development. (*Id.* at 80–83.) Dr. Potts also listed as mitigating circumstances Jones's history of significant substance abuse, the likelihood that he suffered from an attenuated form of bipolar disorder, the fact that he had a history of multiple head traumas, and genetic loading for substance abuse and affective disorders. (*Id.* at 83–92, 94–98, 100–04.) In discussing Jones's head traumas, Dr. Potts noted that there were usually "long term neurologic sequelae" that can damage the brain and make it susceptible to other changes, such as lowered thresholds for aggressive outbursts. (*Id.* at 100.) He testified that additional testing would "clearly assist in coming to a more definitive conclusion" regarding whether Jones had brain damage. (*Id.* at 103.) He recommended additional neurological testing. (*Id.* at 137.)

Following Dr. Potts's testimony, Novak asked the court for a continuance to obtain the testing recommended by Dr. Potts. (*Id.* at 150–51, 165.) Novak explained that until he had received Dr. Potts's report, two days prior to the hearing, and heard his testimony, he had not realized the significance of Jones's history of head traumas with respect to possible neurological damage. (*Id.*) The prosecution opposed the request,

arguing that a factual basis did not exist for neurological testing. (*Id.* at 153–54.) Novak replied that Dr. Potts had not had sufficient time prior to the hearing to obtain neurological testing after receiving materials from the parties. (*Id.* at 154–55.) The trial court denied the request. (*Id.* at 165.)

The next day, prior to sentencing, Novak renewed his request for a continuance to obtain the testing recommended by Dr. Potts. To refute the prosecution's suggestion that Jones's head injuries and childhood abuse were wholly unsubstantiated, Novak proffered some of Jones's military medical records documenting Jones's head injury while he was in the Marines. (RT 12/9/93 at 6–8, 10–11.) The trial court admitted the records, but again denied the request for a continuance. (*Id.* at 16–17.)

In sentencing Jones, the trial court found three aggravating factors as to both murders: that they were committed (1) for pecuniary gain, (2) in an especially heinous, cruel, or depraved manner, and (3) during the commission of one or more other homicides. (ROA 117, 118.) With respect to Tisha's murder, the court found a fourth aggravating factor based on her age. (ROA 117.) The court found no statutory mitigating circumstances with respect to either murder, but found several non-statutory factors: that Jones (1) suffered from long-term substance abuse, (2) was under the influence of alcohol and drugs at the time of the offense, (3) had a chaotic and abusive childhood, and (4) that his substance abuse problem might have been caused by genetic factors and aggravated by head trauma. (ROA 117, 118.) With respect to each murder conviction, the court found that the mitigating circumstances were not sufficiently substantial to outweigh the aggravating circumstances or to call for leniency and sentenced Jones to death for each murder. (*Id.*) The Arizona Supreme Court affirmed the convictions and sentences on direct appeal. *Jones*, 185 Ariz. 471, 917 P.2d 200.

B. PCR proceedings

During the PCR proceedings, Jones was represented by attorney David Goldberg, who filed a petition raising 25 claims. (Doc. 247-1, Ex. A.) The following claims correspond to habeas Claims 20(O), (P), and (T):

Claim 24(I)(2): "Counsel's reliance on a court appointed psychiatrist for sentencing was ineffective." (*Id.* at 85.)

Claim 24(I)(3): "Trial counsel's failure to recognize the need for neurological and neuropsychological testing and presentation of the results at sentencing was ineffective." (*Id.* at 87.)

Claim 24(I)(7): "Trial counsel failed to present meaningful additional witnesses and available evidence to support Jones's proposed mitigation." (*Id.* at 91.)

In support of these claims, counsel filed several motions for appointment of experts and discovery. (*See* Doc. 90.) These included motions for disclosure of jail and prison records, including any psychiatric/psychological evaluations, disciplinary records, grading or population placement calculations, and family history. The motions were granted. Counsel also filed motions seeking the appointment of an aggravation/mitigation specialist, an Arizona certified criminal defense specialist, and a neuropsychologist. Following oral argument, the court denied the motions.

On April 4, 2000, the PCR court held an evidentiary hearing on Claims 24(I)(3) and 24(I)(7). Randy Jones and Jones's mother testified, as did trial counsel Novak. Randy testified that he first spoke with Novak in July 1992 by telephone, talked with him again in October 1992, when Novak and his co-counsel visited the family in Nevada, and spoke with him a third time just prior to sentencing in December 1993. (RT 4/4/00 at 10, 11, and 15.) During these conversations, Randy provided background information about Jones's childhood, head injuries, and history of drug abuse and treatment. (*Id.*) Mrs. Jones testified that she informed Novak about the details of Jones's difficult birth, his head injuries, his drug use, which began at approximately age thirteen, and the physical abuse he suffered from his first stepfather. (*Id.* at 26–36.) She also testified that she told Novak that after she married Randy, Jones "had a normal childhood as far as school [and] baseball," and that they "had a good home life." (*Id.* at 29.)

Novak testified that he began work on Jones's defense immediately, and that one of the tasks undertaken by co-counsel was to develop Jones's life history. (*Id.* at 53–54.)

He testified that he considered Dr. Potts "part of the defense team." (*Id.* at 102.) He conceded, however, that if he were trying the case today he would immediately seek the appointment of a mitigation specialist. (*Id.* at 51.) He also testified that he only considered the need for a neurological exam after Dr. Potts testified at the sentencing hearing. (*Id.* at 99.)

The PCR court denied relief on Claim 24(I)(2) without explanation or factual findings. (ROA–PCR 59 at 2.) The court denied Claim 24(I)(3) because Dr. Potts "adequately addressed defendant's mental health issues at sentencing." (ROA–PCR 73 at 2–3). The court denied Claim 24(I)(7), finding that, "Testimony at the hearing showed that counsel presented the available witnesses and evidence to support mitigation. The additional witnesses and evidence suggested by Jones would have been redundant." (*Id.*) The court concluded that "Jones has not met its [sic] burden of proof of showing deficient performance by trial counsel." (*Id.*)

**2. Analysis**

Jones argues that Claims 20(O), (P), and (T) are fundamentally altered and unexhausted, and that their default is excused under *Martinez* by the ineffective assistance of PCR counsel. Respondents disagree. They also contend that the principles of judicial estoppel and law of the case prohibit Jones from now arguing that the claims are unexhausted. (Doc. 247 at 26–30.)

Until the case was remanded, there was no dispute that these claims were properly exhausted in state court and subject to federal habeas review under 28 U.S.C. § 2254(d). This Court carried out that review after holding an evidentiary hearing to receive the evidence that Jones now argues renders the claims unexhausted under *Dickens* and subject to *de novo* review under *Martinez*.

This scenario, which requires the Court to determine if PCR counsel performed ineffectively by failing to exhaust claims that the parties and the Court agreed were exhausted, is seemingly inconsistent with the goals of the AEDPA as defined in

*Pinholster*.[1] However, pursuant to the directive of the Ninth Circuit in its remand order, the Court addresses Jones's arguments.

### A. The claims are not fundamentally altered

Jones contends that his state claims have been fundamentally altered and therefore are unexhausted and subject to *de novo* review. Citing the evidence produced in these habeas proceedings, Jones argues that the claims raised in state court have been "changed . . . in federal court to include extensive and detailed factual allegations proving that he suffers from Cognitive Dysfunction (brain damage), Poly-Substance Abuse, Post-Traumatic Stress Disorder ("PTSD"), Attention Deficit/Hyperactivity Disorder ("AD/HD") and Mood Disorder, Not Otherwise Specified ("NOS")." (Doc. 246 at 37.) Jones also cites evidence that "[c]ontributing factors to these disorders included Jones's prenatal exposure to chrome, nicotine and caffeine and his traumatic birth." (*Id.*) Finally, Jones cites the new or more-detailed allegations that "he was physically, mentally, and sexually abused throughout his childhood" and "had a series of head injuries starting with his traumatic birth and including a mugging while Jones was in the military." (*Id.*) The Court discussed this evidence in its order denying relief on Claims 20(O), (P), and (T). (Doc. 220 at 9–25.)

This new information provides additional evidentiary support for Jones's allegations but does nothing to alter the legal bases of the claims. *See Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999); *Chacon v. Wood,* 36 F.3d 1459, 1468 (9th Cir. 1994); *see also Escamilla v. Stephens*, 749 F.3d 380, 395 (5th Cir. 2014) (finding

---

[1] The Supreme Court explained that the AEDPA "demonstrates Congress' intent to channel prisoners' claims first to the state courts. *Pinholster*, 563 U.S. at 182. "It would be strange to ask federal courts to analyze whether a state court''s adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id.* at 182–83; *see Moore v. Mitchell*, 708 F.3d 760, 785 (6th Cir. 2013) ("*Pinholster* plainly bans such an attempt to obtain review of the merits of claims presented in state court in light of facts that were not presented in state court. *Martinez* does not alter that conclusion.").

*Martinez* inapplicable where new evidence did not fundamentally alter but "merely provided additional evidentiary support" for already-adjudicated state court claim). In *Dickens*, the petitioner exhausted only a "naked *Strickland* claim" which "did not identify any specific conditions that sentencing counsel's allegedly deficient performance failed to uncover." 740 F.3d at 1319. Here, by contrast, Jones argued in PCR Claim 24(I)(2) that he was prejudiced by trial counsel's reliance on Dr. Potts, an expert appointed by the court to examine Jones and provide a report prior to sentencing, who was "untrained in the specifics of neuropsychology" and whose findings "did not reveal neurological disorders and organic mental illness." (Doc. 247-1, Ex. A at 85.) In Claim 24(I)(3), Jones alleged that trial counsel performed ineffectively by failing "to present coherent evidence of Jones's brain injuries and the resulting effects." (*Id.* at 88–89.) Specifically, Jones alleged that trial counsel failed to pursue neurological and neuropsychological testing that could have revealed "significant frontal lobe head traumas through physical injuries and drug or alcohol abuse." (*Id.* at 88.)

Likewise, Claim 24(I)(7) contained specific allegations of ineffective assistance based on trial counsel's failure to present mitigating evidence of Jones's "abusive childhood"; "organic brain injury from trauma and drug abuse," including a "history of blackouts," one of which occurred while he was in the military; the effects of such trauma on his behavior; and his amenability to rehabilitation. (*Id.* at 91 & n.9.) This evidence was available through witnesses including Jones's ex-wife, family members, friends, and counselors, and from birth, education, military, and prison records. (*Id.*)

The new information presented in this Court, including the experts' opinions and the lay testimony about Jones's social history, was contemplated in the allegations raised in state court, which is why the Court allowed evidentiary development of the claims. Thus, the evidence Jones has produced in this Court supplements but does not "fundamentally alter the legal claim already considered by the state courts . . . ." *Vasquez*, 474 U.S. at 260.

In *Landrigan v. Schriro*, the Ninth Circuit held that expert testimony regarding Landrigan's organic brain dysfunction did not fundamentally alter a state claim that

counsel was constitutionally ineffective for failing "to undertake a reasonable investigation of mitigating factors, including information that could have been derived from Landrigan's biological father and his adoptive sister." 441 F.3d 638, 648 (9th Cir. 2006), *rev'd on other grounds*, 550 U.S. 465 (2007), *and vacated*, 501 F.3d 1147 (9th Cir. 2007). The court explained that the new information "does not 'fundamentally alter the ineffective assistance claim presented to the state court. It simply provides additional evidentiary support for the claim . . . ." *Id.*

Similarly, in *Lopez v. Schriro*, 491 F.3d 1029, 1041 (9th Cir. 2007), the Ninth Circuit held that the district court erred in finding the petitioner's ineffective assistance of counsel claim was unexhausted. The court explained that "Lopez did at least make the general allegations of his counsel's lack of penalty phase preparation to the Arizona Supreme Court (including improper delegation to an inexperienced subordinate and failure to prepare mental health experts), and the state court record contains some evidence of a dysfunctional childhood and alcoholism." *Id.* The claims Jones raised in state court contained more than general allegations, and they were likewise exhausted.

Because Jones has not raised a new legal theory concerning trial counsel's performance, or placed the claim in a significantly different and stronger evidentiary posture, the PCR court had a "meaningful opportunity" to consider Jones's claims. *Id.* at 257; *cf. Poyson v. Ryan*, 879 F.3d 875, 896 (9th Cir. 2018) (finding state court did not have a meaningful opportunity to consider claim that included not only new facts but "a fundamentally new theory of counsel's ineffectiveness").

Claims 20(O), (P), and (T) were not fundamentally altered by the new evidence Jones presented in federal court, and *Martinez* does not apply to these exhausted claims.

B. PCR counsel was not ineffective

Even assuming, contrary to the record, that Claims 20(O), (P), and (T) are fundamentally altered and therefore unexhausted, *Martinez* does not excuse their default because PCR counsel did not perform ineffectively.

As noted, in making the cause determination *Martinez* calls for the performance of PCR counsel to be analyzed under the *Strickland* standard. 566 U.S. at 14; *see*

*Clabourne*, 745 F.3d at 377. "To demonstrate that the performance by PCR counsel was deficient, [petitioner] must show that counsel's failure to raise the underlying IAC claim did not 'fall[ ] within the wide range of reasonable professional assistance' and 'overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Murray v. Schriro*, 882 F.3d 778, 816 (9th Cir. 2018) (quoting *Strickland*, 466 U.S. at 689); *see Runningeagle v. Ryan*, 825 F.3d 970, 984 n.15 (9th Cir. 2016) (noting that *Strickland* standard applies even though *Martinez* did not define the scope of PCR counsel's duty to investigate). The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689. To satisfy *Strickland*, a petitioner must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

As discussed above, Goldberg presented the allegations contained in Claims 20(O), (P), and (T) during the PCR proceedings. In support of the claims, he requested "a thorough and independent neuropsychological assessment" to discover neurological and neuropsychological disorders and their relationship to the crime. (ROA-PCR 27 at 3, 5–6; *see* Doc. 121 at 39–40.) The PCR court denied his request. (*See* RT 4/12/99 at 26.)

Goldberg also requested a mitigation specialist to locate witnesses, including neighbors, childhood friends, and fellow residents at the drug rehab clinic, to corroborate Jones's traumatic birth, abusive childhood, head injuries, drug abuse, mental illness, and issues concerning his biological father. (ROA-PCR 24 at 3–4; *see* RT 4/12/99 at 15–16.) The PCR court denied the request, concluding that a private investigator could adequately conduct the mitigation investigation. (RT 4/12/99 at 16–17.)

Goldberg sought an investigator with capital case experience. However, the court insisted that he retain a local investigator. Because the only qualified investigator in Mohave County was the defense investigator counsel used during trial, Goldberg agreed to retain him despite his belief that using the same investigator as trial counsel presented a conflict of interest. (RT 6/1/99 at 3–8.)

Jones argues that Goldberg should have done more to "educate" the PCR court on the need for a neuropsychological evaluation. (Doc. 250 at 14.) Jones's arguments, however, are conclusory and do not suggest, let alone demonstrate, that PCR counsel performed deficiently in pursuing neuropsychological evidence. (*Id.*) In addition, this Court has already determined that Goldberg "diligently attempted to develop neuropsychological evidence in support of [Claims 20(O), (P), and (T)]," but was prevented from doing so by the PCR court's denial of funds for a neuropsychological examination. (Doc. 121 at 40.)

Jones also contends that Goldberg performed an inadequate investigation into Jones's background, including obtaining additional records and information from lay witnesses showing that Jones was sexually abused by his grandfather and that Jones's stepfather Randy was physically and emotionally abusive. (Doc. 246 at 52; Doc. 250 at 15.) As the Court previously found with respect to trial counsel's performance, however, PCR counsel "did not perform deficiently by failing to uncover information not shared by [Jones] until nearly ten years after his trial." (Doc. 220 at 35 n.14.) Goldberg was never put on notice of these instances of physical, emotional, and sexual abuse. *See Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998). Jones further contends that Goldberg did not do enough to convince the judge to appoint a new investigator. (Doc. 246 at 50–51.)

In support of these allegations Jones cites *Hinton v. Alabama*, 134 S. Ct. 1081 (2014), and *Panetti v. Quarterman*, 551 U.S. 930 (2007). His reliance on these cases is misplaced. In *Hinton*, the Supreme Court held that trial counsel performed ineffectively when he presented an unqualified expert based on a misunderstanding of the state's funding statutes. *Id.* at 1089. In *Panetti*, the Court held that the petitioner's due process rights were violated by the state court's refusal to allow an examination by a defense expert to counter the court-appointed experts' opinion that he was competent to be executed. 551 U.S. at 952. Here, Goldberg performed competently by requesting an appropriate expert and investigator.

In *Martinez*, the Court created an equitable exception to *Coleman* to "protect prisoners with a potentially legitimate claim of ineffective assistance of trial

counsel . . . ." 566 U.S. at 9. Without this qualification, it is possible that "no state court at any level will hear the prisoner's claim." *Id.* at 10. Here, Goldberg carried out his duty to investigate and preserve potentially meritorious claims of ineffective assistance of trial counsel. *See Runningeagle*, 825 F.3d at 984 n.15. Claims 20(O), (P), and (T) were considered by the PCR court and then, supported with new evidence, by this Court. Jones has not carried his burden of showing that Goldberg "made errors so serious that [he] was not functioning as . . . 'counsel.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

Even if Claims 20(O), (P), and (T) were procedurally defaulted, PCR counsel's performance was not deficient and the default is not excused.

### 3. Conclusion

As the Ninth Circuit has observed in discussing the performance of counsel at sentencing, "There will always be more documents that could be reviewed, more family members that could be interviewed and more psychiatric examinations that could be performed," *Leavitt v. Arave*, 646 F.3d 605, 612 (9th Cir. 2011). Any new mitigating evidence will place an ineffective assistance of counsel claim in a stronger posture. In this case, however, the new evidence developed in federal court did not fundamentally alter Jones's state court claims, which remain exhausted. Even if the claims were unexhausted, their default would not be excused under *Martinez* because PCR counsel did not perform ineffectively.

Accordingly, the Court rejects "Jones's argument that his ineffective assistance of counsel claims are unexhausted and therefore procedurally defaulted, and that deficient performance by his counsel during his post-conviction relief case in state court excuses the default." (Doc. 240-2.)

/ / /
/ / /
/ / /
/ / /
/ / /

Having considered Jones's claims under *Martinez* and *Dickens*, this Court has not changed its conclusion that Claims 20(O), (P), and (T) be dismissed with prejudice.

Dated this 24th day of May, 2018.

_____
Susan R. Bolton
United States District Judge