Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## THORNELL, DIRECTOR, ARIZONA DEPARTMENT OF CORRECTIONS *v.* JONES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 22–982.  Argued April 17, 2024—Decided May 30, 2024

Respondent Danny Lee Jones was convicted of the premeditated first-degree murders of Robert and Tisha Weaver and the attempted premeditated murder of Robert's grandmother Katherine Gumina.  Arizona law at the time required the trial court to "impose a sentence of death" if it found "one or more" statutorily enumerated "aggravating circumstances" and "no mitigating circumstances sufficiently substantial to call for leniency."  Ariz. Rev. Stat. Ann. §13–703(E).  The trial court found three aggravating circumstances that applied to both Robert's and Tisha's murders: Jones committed multiple homicides, §13–703(F)(8); he was motivated by "pecuniary" gain, §13–703(F)(5); and the murders were "especially heinous, cruel or depraved," §13–703(F)(6).  The trial court found an additional aggravating circumstance with respect to Tisha's murder: she was a young child, §13–703(F)(9).  The trial court also concluded that Jones had established four mitigating circumstances: long-term substance abuse, drug and alcohol impairment at the time of the murders, head trauma, and childhood abuse. 9 Record 2465.  The court concluded that these mitigating circumstances were "not sufficiently substantial to outweigh the aggravating circumstances," so it sentenced Jones to death.  *Ibid.* The Arizona Supreme Court affirmed after "review[ing] the entire record" and "independently weighing all of the aggravating and mitigating evidence presented." 185 Ariz. 471, 492, 917 P. 2d 200, 221.

Jones later sought state postconviction review on the theory that defense counsel was ineffective, but the Arizona courts rejected Jones's claims. Jones next filed a federal habeas petition in District Court and reasserted his ineffective-assistance-of-counsel claims.  The District Court held an evidentiary hearing but ultimately concluded that Jones

2                    THORNELL *v.* JONES

Syllabus

could not show prejudice because the additional information he presented "'barely. . . alter[ed] the sentencing profile presented to the sentencing judge.'" *Jones* v. *Schriro*, 450 F. Supp. 2d 1023, 1043 (quoting *Strickland* v. *Washington*, 466 U. S. 668, 700). The Ninth Circuit reversed, but this Court vacated that judgment and remanded for the Ninth Circuit to determine whether, in light of *Cullen* v. *Pinholster*, 563 U. S. 170, it had been proper to consider the new evidence presented at the federal evidentiary hearing. See *Ryan* v. *Jones*, 563 U. S. 932. On reconsideration, the Ninth Circuit again granted habeas relief. The panel held that it was permissible to consider the new evidence and concluded that there was a "'reasonable probability'" that "Jones would not have received a death sentence" if that evidence had been presented at sentencing. *Jones* v. *Ryan*, 52 F. 4th 1104, 1137. Ten judges dissented from the denial of en banc review. One dissent, joined by eight judges, asserted that the Ninth Circuit panel flouted *Strickland* by crediting "questionable, weak, and cumulative mitigation evidence" as "enough to overcome . . . weight[y] . . . aggravating circumstances." *Id.*, at 1155.

*Held*: The Ninth Circuit's interpretation and application of *Strickland* was in error. Pp. 7–16.

    (a) To succeed on his ineffective-assistance-of-counsel claim, Jones must show that counsel provided a "deficient" performance that "prejudiced" him. *Strickland*, 466 U. S., at 687. Jones can show prejudice only if "there is a reasonable probability that, absent [counsel's] errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.*, at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome. That requires a substantial, not just conceivable, likelihood of a different result." *Pinholster*, 563 U. S., at 189 (citation and internal quotation marks omitted). To determine whether a prisoner satisfies this standard, a court must "consider the totality of the evidence before the judge or jury"—both mitigating and aggravating. *Strickland*, 466 U. S., at 695.

    The Ninth Circuit departed from these well-established rules in at least three ways. First, it failed adequately to take into account the weighty aggravating circumstances. Second, it applied a strange Circuit rule that prohibits a court in a *Strickland* case from assessing the relative strength of expert witness testimony. Third, it held that the District Court erred by attaching diminished persuasive value to Jones's mental health conditions. See 52 F. 4th, at 1129. Contrary to the Ninth Circuit's suggestion, *Eddings* v. *Oklahoma*, 455 U. S. 104, permits a sentencer to find mitigating evidence unpersuasive.

    Jones argues that a habeas petitioner is entitled to relief whenever he or she "presents substantial evidence of the kind that a reasonable

Syllabus

sentencer might deem relevant to the defendant's moral culpability." Brief for Respondent 14. This rule is squarely at odds with the established understanding of prejudice under *Strickland*, which requires a "reasonable probability" of a different result. Where aggravating factors greatly outweigh mitigating evidence, there may be no "reasonable probability" of a different result. Pp. 7–9.

(b) Turning to the issue of prejudice in this case, the mitigating evidence Jones presented at the federal evidentiary hearing "would barely have altered the sentencing profile presented to the sentencing judge," and it is insufficient to show prejudice. *Strickland*, 466 U. S., at 700. Pp. 9–13.

(1) Jones presented evidence that, he claims, shows he suffers from various mental illnesses. But Arizona courts had already heard testimony that Jones "suffers from a major mental illness," likely a "form of Bipolar Affective Disorder." 4 Record 1070; 10 *id.*, at 2567. And they declined to give this evidence much weight because Jones did not "establish a causal connection between his alleged mental illness and his conduct on the night of the murders." 185 Ariz., at 492, 917 P. 2d, at 221. Jones's new evidence did not fix that problem because Jones's experts provided no real link between Jones's disorders and the murders. Pp. 9–10.

(2) Next, Jones introduced evidence that he suffers from cognitive impairment caused by physical trauma that he suffered during his mother's pregnancy, at birth, and later in life. But Arizona courts had already heard extensive evidence about Jones's head trauma and cognitive impairment and did not find this evidence sufficient to warrant leniency. *Ibid.* The little evidence Jones added at his evidentiary hearing at most corroborates the testimony that the Arizona courts already credited, and it would thus provide little benefit. Pp. 11.

(3) In federal court, Jones also alleged sexual abuse by his grandfather and physical abuse by his second stepfather. But this evidence would not help either. Again, the Arizona courts had heard about many other instances of childhood abuse but concluded they did not warrant leniency, primarily because the abuse appeared unconnected to the murders. 185 Ariz., at 490–491, 917 P. 2d, at 219–220; 9 Record 2465. The new allegations are likewise not causally connected and, at any rate, are uncorroborated. Arizona courts would give such self-reported and uncorroborated evidence "little . . . mitigating weight." *State* v. *Sharp*, 193 Ariz. 414, 425, 973 P. 2d 1171, 1182. Pp. 12–13.

(4) Finally, Jones produced evidence of substance abuse, but his history of substance abuse was "well-documented" at the time of sentencing, and the Arizona Supreme Court gave this fact "some mitigating weight," 185 Ariz., at 491, 917 P. 2d, at 220. There is no reasonable chance Arizona courts would reach a different result on essentially the

4                      THORNELL *v.* JONES

same evidence.  P. 13.

(c) The weakness of Jones's mitigating evidence contrasts sharply with the strength of the aggravating circumstances.  These circumstances—multiple homicides, cruelty, pecuniary motivation, and murder of a child—are given great weight in Arizona.  The Arizona Supreme Court has repeatedly held that one or more of these aggravating circumstances outweighed mitigation evidence—even evidence that was "not insubstantial." *State* v. *Hampton*, 213 Ariz. 167, 185, 140 P. 3d 950, 968.  Conversely, Jones and his *amici* identify *no* cases in which the Arizona Supreme Court has vacated the judgment of death in a case involving multiple murders—let alone all of the aggravating circumstances present here.  The absence of such a case strongly suggests that Jones has no reasonable probability of escaping the death penalty.  Pp. 13–14.

(d) Contrary to the Ninth Circuit's conclusion, "the *Strickland* prejudice analysis conducted by the Supreme Court" in other cases, 52 F. 4th, at 1131, does not support resentencing here.  In those cases, defense counsel introduced little, if any, mitigating evidence at the original sentencing, and the aggravating circumstances were weaker.  By contrast, Jones started with much more mitigation evidence, and the aggravating circumstances present here are weightier.  Had the Ninth Circuit engaged in the analysis required by *Strickland*, it would have affirmed the decision of the District Court denying habeas relief.  Pp. 14–16.

52 F. 4th 1104, reversed and remanded.

ALITO, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, GORSUCH, KAVANAUGH, and BARRETT, JJ., joined.  SOTOMAYOR, J., filed a dissenting opinion, in which KAGAN, J., joined.  JACKSON, J., filed a dissenting opinion.

Cite as: 602 U. S. ____ (2024)          1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

---

No. 22–982

---

## RYAN THORNELL, DIRECTOR, ARIZONA DEPARTMENT OF CORRECTIONS, PETITIONER *v.* DANNY LEE JONES

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[May 30, 2024]

JUSTICE ALITO delivered the opinion of the Court.

In this case, we review a decision of the Ninth Circuit ordering the resentencing of a defendant who, in order to steal a gun collection, committed three gruesome killings, including the cold-blooded murder of a 7-year-old girl. The Ninth Circuit held that the defendant's Sixth Amendment right to the effective assistance of counsel was violated during the sentencing phase of his capital trial. In reaching this conclusion, the Ninth Circuit substantially departed from the well-established standard articulated by this Court in *Strickland* v. *Washington*, 466 U. S. 668 (1984). Among other things, the Ninth Circuit all but ignored the strong aggravating circumstances in this case. As a result, we must reverse the judgment below.

I

A

Thirty-two years ago, Danny Lee Jones murdered Robert Weaver, his 7-year-old daughter Tisha Weaver, and his grandmother Katherine Gumina. Jones knew that Robert

Opinion of the Court

owned a $2,000 gun collection, and after spending a day drinking and talking with Robert, Jones decided he wanted to steal the guns.  He grabbed a baseball bat, beat Robert into unconsciousness, and headed indoors to find the collection.

Once inside, Jones encountered Gumina, who was watching television, and Tisha, who was coloring in a workbook before heading to bed.  Jones struck Gumina hard enough to crack her skull, leaving her unconscious on the living room floor.  Tisha apparently watched Jones attack her great-grandmother and ran to hide under her parents' bed.  Marks on the carpet show that Jones dragged the girl out from under the bed before beating her hard enough "to create a wound several inches wide, extending from her left ear to her left cheek."  *State* v. *Jones*, 185 Ariz. 471, 489, 917 P. 2d 200, 218 (1996).  Jones then asphyxiated Tisha with a pillow.

Jones next began loading Robert's guns into Gumina's car.  At that point, Robert regained consciousness.  "Blood smears at the scene showed that [Robert] attempted to run from" Jones, but Jones "struck [him] in the head several more times.  The last blow . . . was delivered while [Robert] knelt helplessly on the floor of the garage."  9 Appellant's Excerpts of Record in No. 18–99005 (CA9), p. 2449 (Record).  Jones then skipped town with the guns, using them to pay for a trip to Las Vegas.

A short time later, Robert's wife came home from work and discovered the gruesome scene.  She called 911, but the first responders found that Robert and Tisha were already dead.  Gumina lived for 17 months before succumbing to her injuries. Before Gumina died, Jones was charged with two counts of premeditated first-degree murder and one count of attempted premeditated first-degree murder, and a jury found him guilty on all three charges.[1]

—————

[1] Arizona charged Jones before Gumina's death and elected not to

Opinion of the Court

### B

After Jones was convicted, the trial court proceeded to sentencing. Under Arizona law at the time, the court was required to "impose a sentence of death" if it found "one or more" statutorily enumerated "aggravating circumstances" and "no mitigating circumstances sufficiently substantial to call for leniency." Ariz. Rev. Stat. Ann. §13–703(E) (1993).

The trial court found three aggravating circumstances that applied to both Robert's and Tisha's murders. First, Jones committed multiple homicides "during the commission of the offense." §13–703(F)(8). Second, he was motivated by "pecuniary" gain, namely, Robert's guns. §13–703(F)(5). And third, the murders were "especially heinous, cruel or depraved." §13–703(F)(6). With respect to Tisha's murder, the court found an additional aggravating circumstance: She was a young child. §13–703(F)(9).

The trial court also heard mitigating evidence. The presentence report noted that Jones was abused as a child, began using drugs and alcohol at age 13, suffered brain trauma at ages 9 and 18, and had received "psychiatric treatments" as a child. 4 Record 1086–1088. Jones's second stepfather, Randy, described Jones's troubled personal life. He testified that Jones's father and first stepfather were physically abusive, that Jones's grandfather and uncle had introduced him to drugs as a preteen, and that Jones had suffered several head injuries that left him with "constan[t]" headaches. 9 *id.*, at 2522–2526.

Jones's counsel also submitted a report by and solicited testimony from Dr. Jack Potts, a court-appointed forensic psychiatrist who was later described by counsel as essentially "part of the defense team." 7 *id.*, at 1831. Dr. Potts identified several "mitigating factors" that he thought warranted leniency. 4 *id.*, at 1070–1071. First, he noted that Jones "was reared in a chaotic and at times grossly hostile

_____

amend the indictment after she died.

Opinion of the Court

environment where physical abuse was too prevalent." *Id.*,
at 1069. "The years he had of a relatively 'normal' child-
hood," Dr. Potts opined, were "too late . . . to counter the
earlier abuse." *Id.*, at 1070. Second, Dr. Potts suggested
that Jones's "serious head trauma" potentially "con-
tribut[ed] to his behavior." *Id.*, at 1068, 1071. Third, he
concluded with a "reasonable degree of medical certainty"
that Jones "suffers from a major mental illness," likely a
"form of Bipolar Affective Disorder." *Id.*, at 1070; 10 *id.*, at
2567. Fourth, he thought Jones was "genetic[ally]" predis-
posed to "substance abuse" and speculated that Jones
would not have murdered had he been sober. 4 *id.*, at 1070.
Fifth, Dr. Potts believed that Jones felt "remorse and re-
sponsibility" and that he had the "potential for rehabilita-
tion." *Id.*, at 1070–1071.

From this evidence, the trial court concluded that Jones
had established four mitigating circumstances: (1) Jones
suffered from long-term substance abuse; (2) that problem
may be caused by genetic factors and head trauma; (3) he
was under the influence of alcohol and drugs at the time of
the murders; and (4) he was abused as a child. 9 *id.*, at
2465. The court concluded that these circumstances were
"not sufficiently substantial to outweigh the aggravating
circumstances," so it sentenced Jones to death. *Ibid.* The
Arizona Supreme Court affirmed after "review[ing] the en-
tire record" and "independently weighing all of the aggra-
vating and mitigating evidence presented." *Jones*, 185
Ariz., at 492, 917 P. 2d, at 221.

## C

Jones sought state postconviction review on the theory
that defense counsel was ineffective. Jones argued that his
attorney should have retained an independent neuropsy-
chologist, rather than relying on Dr. Potts. The state court
denied this claim because it "remember[ed]" that Dr. Potts
"was a very good expert" at trial and "was defense oriented."

Opinion of the Court

7 Record 1950. Jones also claimed that trial counsel failed to make a timely request for neurological or neuropsychological testing. But after holding an evidentiary hearing on this claim, the state court rejected it on the merits. Jones then unsuccessfully sought review in the Arizona Supreme Court. Order in *State* v. *Jones*, No. CR–00–0512–PC (Feb. 15, 2001); 1 Record 186.

### D

Jones next filed a habeas petition in Federal District Court and reasserted his ineffective-assistance-of-counsel claims. See 28 U. S. C. §2254. The District Court held an evidentiary hearing but ultimately concluded that Jones could not show prejudice because the additional information he presented "'barely . . . alter[ed] the sentencing profile presented to the sentencing judge.'" *Jones* v. *Schriro*, 450 F. Supp. 2d 1023, 1043 (Ariz. 2006) (quoting *Strickland*, 466 U. S., at 700). The court reached this conclusion based on its assessment of "the credibility of the parties' witnesses," including witnesses introduced by the State to undercut Jones's claims. 450 F. Supp. 2d, at 1038. The Ninth Circuit reversed. See *Jones* v. *Ryan*, 583 F. 3d 626 (2009). But this Court vacated that judgment and remanded for the Ninth Circuit to determine whether, in light of *Cullen* v. *Pinholster*, 563 U. S. 170 (2011), it had been proper to consider the new evidence presented at the federal evidentiary hearing. See *Ryan* v. *Jones*, 563 U. S. 932 (2011).

On reconsideration, the Ninth Circuit again granted habeas relief. The panel held that it was permissible to consider the new evidence[2] and concluded that there was a

_____

[2]The panel reasoned that the postconviction review court had not reached the issue of prejudice, so it could review the issue *de novo*. Further, "Jones satisfied the standard for an evidentiary hearing pursuant to §2254(e)(2)" because he "exercised diligence in pursuing [his] claims in state court." *Jones* v. *Ryan*, 52 F. 4th 1104, 1123 (CA9 2022). Arizona

6                    THORNELL *v.* JONES

Opinion of the Court

"reasonable probability" that "Jones would not have re-
ceived a death sentence" if that evidence had been pre-
sented at sentencing. *Jones* v. *Ryan*, 1 F. 4th 1179, 1196,
1204 (CA9 2021). The panel's lengthy opinion made no
mention of the aggravating factors, and it did not consider
the State's rebuttal evidence.

Arizona sought en banc review. The Ninth Circuit denied
the State's petition, but the panel amended its opinion to
mention the aggravating circumstances and to rebuke the
District Court for "weigh[ing] the testimony of [competing]
experts against each other." *Jones* v. *Ryan*, 52 F. 4th 1104,
1128 (2022).

Ten judges dissented from the denial of en banc review.
Judge Ikuta, joined by two other judges, argued that the
panel should have deferred to the state postconviction re-
view court on the *Strickland* prejudice inquiry. Judge Ben-
nett, joined by eight others, assumed without deciding that
the panel could consider the new evidence. But he asserted
that the panel flouted *Strickland* by crediting "questiona-
ble, weak, and cumulative mitigation evidence" as "enough
to overcome . . . weight[y] . . . aggravating circumstances."
52 F. 4th, at 1155 (dissenting opinion). If not corrected,
Judge Bennett wrote, the panel's errors would enable
"courts to improperly grant sentencing relief to capital de-
fendants who have been convicted of the most horrific
crimes." *Id.*, at 1137.

We granted certiorari to review the Ninth Circuit's inter-
pretation and application of *Strickland*. 601 U. S. ___
(2023).

————————
does not challenge either determination. See Tr. of Oral Arg. 22; Brief
for Petitioner 20, n. 8. So we do not decide whether the Ninth Circuit's
interpretation of either the postconviction review court's decision or
§2254(e)(2) is correct.

Opinion of the Court

## II

Jones claims that his Sixth Amendment right to the effective assistance of counsel was violated during the sentencing phase of his capital trial.  To succeed on such a claim, a defendant must show that counsel provided a "deficient" performance that "prejudiced" him.  *Strickland*, 466 U. S., at 687.  When an ineffective-assistance-of-counsel claim is based on counsel's performance at the sentencing phase of a capital case, a defendant is prejudiced only if "there is a reasonable probability that, absent [counsel's] errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."  *Id.*, at 695.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome.  That requires a substantial, not just conceivable, likelihood of a different result."  *Pinholster*, 563 U. S., at 189 (citation and internal quotation marks omitted).  This standard does not require a defendant to show that it is more likely than not that adequate representation would have led to a better result,  but "[t]he difference" should matter "only in the rarest case."  *Strickland*, 466 U. S., at 697.  To determine whether a prisoner satisfies this standard, a court must "consider the totality of the evidence before the judge or jury"—both mitigating and aggravating. *Id.*, at 695.

The Ninth Circuit departed from these well-established rules in at least three ways.  First, it failed adequately to take into account the weighty aggravating circumstances in this case.  As noted, the panel's initial opinion did not mention those circumstances at all.  After the State petitioned for rehearing and 10 judges voted to grant the petition, the panel issued an amended opinion that at least mentioned the aggravating circumstances, but it failed to give them the weight that they would almost certainly be accorded by an Arizona sentencing judge.

Second, the Ninth Circuit applied a strange Circuit rule

that prohibits a court in a *Strickland* case from assessing the relative strength of expert witness testimony.  See 52 F. 4th, at 1128–1129.  This rule is clearly unsound.  Determining whether a defense expert's report or testimony would have created a reasonable probability of a different result if it had been offered at trial necessarily requires an evaluation of the strength of that report or testimony.  And where a prosecution expert has expressed a contrary opinion, it is hard to see how a court could decide how much weight to give the defense expert without making a comparative analysis.

Third, the Ninth Circuit held that the District Court erred by attaching diminished persuasive value to Jones's mental health conditions because it saw no link between those conditions and Jones's conduct when he committed the three murders.  See *id.*, at 1129.  The Ninth Circuit seemed to suggest that this conclusion was supported by *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982), but that is not so.  *Eddings* held that a sentencer may not "refuse to consider . . . any relevant mitigating evidence."  *Id.*, at 114.  It did not hold that a sentencer cannot find mitigating evidence unpersuasive.  See *id.*, at 114–115 (emphasizing that "[t]he sentencer . . . may determine the weight to be given relevant mitigating evidence").

Picking up what he takes to be the implications of these three features of the Ninth Circuit's analysis, Jones argues that a habeas petitioner is entitled to relief whenever he or she "presents substantial evidence of the kind that a reasonable sentencer might deem relevant to the defendant's moral culpability."  Brief for Respondent 14.  Whether or not this rule represents a fair extrapolation of the Ninth Circuit's reasoning, it is squarely at odds with the established understanding of prejudice, which requires a "reasonable probability" of a different result.  Imagine a defendant with the worst possible aggravating circumstances, say,

multiple, vulnerable victims; torture; a lengthy record of violent crime; no remorse; and a vow to kill again if given the chance. According to Jones, if the defense is able to show that trial counsel failed to produce any mitigating evidence that can be characterized as "substantial," the defendant must be resentenced. But in such a case, where the aggravating factors greatly outweigh the mitigating evidence, there may be no "reasonable probability" of a different result. Thus, Jones's argument is squarely inconsistent with *Strickland*.

## III

With the proper understanding of *Strickland* in mind, we turn to the prejudice issue in this case. Most of the mitigating evidence Jones presented at the federal evidentiary hearing was not new, and what was new would not carry much weight in Arizona courts. Conversely, the aggravating factors present here are extremely weighty. As a result, there is no reasonable probability that the evidence on which Jones relies would have altered the outcome at sentencing.

### A

We begin with the mitigating evidence. In the District Court, Jones introduced evidence of (1) mental illness, (2) cognitive impairment caused by a history of head trauma, (3) childhood abuse, and (4) substance abuse. Jones claims that this evidence requires resentencing, but as the District Court aptly observed, this evidence "would barely have altered the sentencing profile presented to the sentencing judge," and it is insufficient to show prejudice. *Strickland*, 466 U. S., at 699–700.

#### 1

Jones claims that his newly proffered evidence shows that he suffers from "PTSD, AD/HD, mood disorder, [and] bipolar depressive disorder." Brief for Respondent 45. But

it is not reasonably likely that this evidence would have resulted in a different sentence.

Arizona courts had already received testimony that Jones "suffers from a major mental illness," likely a "form of Bipolar Affective Disorder." 4 Record 1070; 10 *id.*, at 2567. Yet they declined to give this evidence much weight because Jones did not "establish a causal connection between his alleged mental illness and his conduct on the night of the murders." *Jones*, 185 Ariz., at 492, 917 P. 2d, at 221; accord, *State* v. *Prince*, 226 Ariz. 516, 542, 250 P. 3d 1145, 1171 (2011) (discounting poor mental health when no "expert could establish [the defendant's] mental state on the night of the shootings"); *State* v. *Boggs*, 218 Ariz. 325, 343, 185 P. 3d 111, 129 (2008) (same).

Jones's new evidence did not fix that problem. One of Jones's experts reiterated that Jones has a mood disorder, but he did not express an opinion on whether that disorder affected Jones on the night of the murders. 4 Record 823–825. Two experts diagnosed Jones with PTSD, but neither testified that he experienced such symptoms at the time of the murders. 2 *id.*, at 506–508; *id.*, at 451–453. Likewise, no expert linked Jones's AD/HD to the murders; indeed, one of the State's witnesses testified that there is no link between that disorder and violence. *Id.*, at 459. Because none of Jones's experts provided a real link between Jones's disorders and the murders, their testimony would have done him little good in the Arizona courts. See *State* v. *Poyson*, 250 Ariz. 48, 53, 58, 475 P. 3d 293, 298, 303 (2020) (failure to link mitigating evidence to the crime may diminish its weight); *State* v. *Stuard*, 176 Ariz. 589, 608, n. 12, 863 P. 2d 881, 900, n. 12 (1993) ("[E]vidence of causation is required before mental impairment can be considered a significant mitigating factor").

Opinion of the Court

### 2

Next, Jones introduced evidence that he suffers from cognitive impairment caused by physical trauma that he suffered during his mother's pregnancy, at birth, and later in life.  Brief for Respondent 44.  But there is no reason to think that this evidence would have meaningfully changed how the state court viewed the case.

Arizona courts had already heard extensive evidence about Jones's head trauma and cognitive impairment.  For instance, the sentencing court learned that Jones's biological father knocked his mother down stairs when she was pregnant with him, 4 Record 1067, 9 *id*., 2523, that his birth was traumatic, *ibid.*, and that he was physically abused by his first stepfather, 4 *id*., at 1067.  The sentencing court knew that Jones had been knocked unconscious as the result of three falls during childhood and adolescence and a mugging in his late teens.  *Id*., at 1068, 1087; 9 *id*., at 2526, 2528–2529; 10 *id*., at 2556–2557, 2569, 2580.  It also heard from Dr. Potts that Jones's head trauma potentially contributed to his behavior.  4 *id*., at 1068, 1071.  Yet it did not find this evidence sufficient to warrant leniency.  And after reviewing the same evidence, the Arizona Supreme Court concurred.  *Jones*, 185 Ariz., at 492, 917 P. 2d, at 221 (crediting Dr. Potts's assumption that Jones had brain damage).

Jones added little on this issue at his evidentiary hearing.  He alleged a few additional head injuries from car accidents and fights, but "there is no medical documentation to corroborate any of these injuries." *Jones*, 450 F. Supp. 2d, at 1039, and n. 11.  And though his experts flagged a handful of poor test scores and grades, Jones's IQ and standardized test scores are mostly average.  2 Record 347, 358–376, 379–399; 3 *id*., at 798.  This vague evidence at most "corroborate[s]" testimony the Arizona courts already credited. *Jones*, 185 Ariz., at 492, 917 P. 2d, at 221.  Introducing it "would have offered an insignificant benefit, if any at all." *Wong* v. *Belmontes*, 558 U. S. 15, 23 (2009) (*per curiam*).

Opinion of the Court

3

Jones also alleges significant childhood abuse.  Brief for Respondent 44.  Again, however, Arizona courts had heard much on this topic.  They knew that Jones's father abused his pregnant mother, that his first stepfather beat both of them, and that his grandfather introduced him to drugs at a young age.  And they received testimony that any period of normalcy during Jones's childhood was "too late" and "not strong enough to counter the earlier abuse."  4 Record 1069–1070.  They nevertheless concluded that this abuse did not warrant leniency, primarily because it appeared unconnected to the murders.  *Jones*, 185 Ariz., at 490–491, 917 P. 2d, at 219–220; 9 Record 2465.

In federal court, Jones added two new allegations.  First, he asserted that the grandfather who introduced him to alcohol also sexually abused him.  Second, he claimed that his second stepfather, Randy, physically abused him.  It is not likely that these allegations would have moved the state court either.

The sexual-abuse allegation is entirely uncorroborated.  Jones did not mention it until his federal habeas proceedings.  2 *id.*, at 503–504.  And his mother and second stepfather explained that they "never saw any indication that [Jones] may have been sexually abused by anyone, nor were they aware of any sexual perpetrators in the family."  Record in No. 2:01–cv–00384 (D Ariz., Feb. 13, 2006), ECF Doc. 172–3, p. 49.  Arizona courts would give this self-reported and uncorroborated evidence "little . . . mitigating weight."  *State* v. *Sharp*, 193 Ariz. 414, 425, 973 P. 2d 1171, 1182 (1999); accord, *State* v. *Gerlaugh*, 144 Ariz. 449, 462, 698 P. 2d 694, 707 (1985).

Jones's physical-abuse allegation against Randy is not much more helpful.  Granted, his sister seconded his allegation.  4 Record 982–987.  But other record evidence contradicts it.  For instance, Jones told Dr. Potts that Randy

Opinion of the Court

was "quite stern and a disciplinarian yet *certainly not physically abusive*." *Id.*, at 1067–1068 (emphasis added). On another occasion well before this litigation, Jones said that "[a]s far as I'm concerned," Randy "is my real dad[;] he's the only one that has treated me good. *He has never hit me or anything*." *Id.*, at 1020 (emphasis added). Given Jones's "obvious motive to fabricate," Arizona courts would view this abuse allegation with some "skepticism." *State* v. *Medrano*, 185 Ariz. 192, 194, 914 P. 2d 225, 227 (1996); see also *Gerlaugh*, 144 Ariz., at 462, 698 P. 2d, at 707; *State* v. *Carriger*, 143 Ariz. 142, 153, 692 P. 2d 991, 1002 (1984). And even crediting the allegation, it suffers from the same weakness that led the Arizona courts to discount Jones's other abuse allegations: it is not causally connected to the murders.

4

Finally, Jones points to evidence of substance abuse, namely, that his grandfather introduced him to drugs and alcohol when he was "only nine years old." Brief for Respondent 44. But Jones's history of substantive abuse was "well-documented" at the time of sentencing. *Jones*, 185 Ariz., at 491, 917 P. 2d, at 220. The Arizona Supreme Court, for instance, recounted that "by the time [Jones] was 17 years old, he had used many types of drugs and was an alcoholic." *Ibid.*; see also 4 Record 1086–1088 (presenting report noting that Jones began consuming alcohol and using drugs at 13). And that court gave this fact "some mitigating weight." *Jones*, 185 Ariz., at 491, 917 P. 2d, at 220. There is no reasonable chance that those courts would reach a different result on a second look at essentially the same evidence.

B

The weakness of Jones's mitigating evidence contrasts

14              THORNELL *v.* JONES

sharply with the strength of the aggravating circum-
stances.  These circumstances—multiple homicides, cru-
elty, pecuniary motivation, and murder of a child—are
given great weight in Arizona.  See *State* v. *Garza*, 216 Ariz.
56, 72, 163 P. 3d 1006, 1022 (2007) (multiple-homicides ag-
gravator gets "'extraordinary weight'"); *Poyson*, 250 Ariz.,
at 57, 475 P. 3d, at 302 (the cruelty and pecuniary-motiva-
tion aggravators are "particularly weighty"); *State* v. *New-
ell*, 212 Ariz. 389, 406, 132 P. 3d 833, 850 (2006) (young age
of the victim is a "compelling aggravating circumstanc[e]"
in favor of the death penalty).

Indeed, in a host of cases, the Arizona Supreme Court has
held that one or more of these aggravating circumstances
outweighed mitigation evidence—even evidence that was
"not insubstantial."  *State* v. *Hampton*, 213 Ariz. 167, 185,
140 P. 3d 950, 968 (2006) (concluding that the multiple-
homicides aggravator outweighed evidence of a "horren-
dous childhood"); see also *Poyson*, 250 Ariz., at 57–58, 475
P. 3d, at 302–303 (listing several cases in which the multi-
ple-homicides aggravator alone outweighed all mitigating
circumstances); *State* v. *McKinney*, 245 Ariz. 225, 227, 426
P. 3d 1204, 1206 (2018) (cruelty and pecuniary-motivation
aggravators outweighed evidence that a defendant had "en-
dured a horrific childhood" and suffered from mental ill-
ness).  Conversely, Jones and his *amici* identify *no* cases in
which the Arizona Supreme Court has vacated the judg-
ment of death in a case involving multiple murders—let
alone a case involving all of the aggravating circumstances
present here.  The absence of such a case strongly suggests
that Jones has no reasonable probability of escaping the
death penalty.

IV

To justify its contrary conclusion, the Ninth Circuit
pointed to "the *Strickland* prejudice analysis conducted by
the Supreme Court" in "similar cases."  52 F. 4th, at 1131.

In these cases, the Ninth Circuit stated, we found prejudice when counsel failed to present "classic mitigating evidence," even though the defendants had committed "brutal crimes." *Id.*, at 1133.

A review of the precedents cited by the Ninth Circuit shows that they are very different from the case now before us. In each of the ineffective-assistance-of-counsel cases on which the Ninth Circuit relied, this Court found that defense counsel introduced little, if any, mitigating evidence at the original sentencing. See *Porter* v. *McCollum*, 558 U. S. 30, 41 (2009) (*per curiam*); *Williams* v. *Taylor*, 529 U. S. 362, 395–398 (2000); *Rompilla* v. *Beard*, 545 U. S. 374, 378, 393 (2005); *Wiggins* v. *Smith*, 539 U. S. 510, 515, 534–535 (2003). Jones, by contrast, started with much more mitigation. And in most of the other cases, the sentencer found only a few aggravating circumstances. See *Porter*, 558 U. S., at 42 (three aggravators, two of which the sentencing judge thought "were insufficient to warrant death"); *Williams*, 529 U. S., at 370, 398 (one aggravator); *Wiggins*, 539 U. S., at 537 (one aggravator). That is a far cry from the weighty aggravating circumstances present here. *Poyson*, 250 Ariz., at 57, 475 P. 3d, at 302.

\*     \*     \*

When a capital defendant claims that he was prejudiced at sentencing because counsel failed to present available mitigating evidence, a court must decide whether it is reasonably likely that the additional evidence would have avoided a death sentence. This analysis requires an evaluation of the strength of all the evidence and a comparison of the weight of aggravating and mitigating factors. The Ninth Circuit did not heed that instruction; rather, it downplayed the serious aggravating factors present here and overstated the strength of mitigating evidence that differed very little from the evidence presented at sentencing. Had the Ninth Circuit engaged in the analysis required by

Opinion of the Court

*Strickland*, it would have had no choice but to affirm the decision of the District Court denying habeas relief.  We therefore reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

Cite as: 602 U. S. ____ (2024)          1

SOTOMAYOR, J., dissenting

# SUPREME COURT OF THE UNITED STATES

_____

No. 22–982

_____

## RYAN THORNELL, DIRECTOR, ARIZONA DEPARTMENT OF CORRECTIONS, PETITIONER *v.* DANNY LEE JONES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[May 30, 2024]

JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN joins, dissenting.

I agree with the Court that "the Ninth Circuit all but ignored the strong aggravating circumstances in this case." *Ante*, at 1. That was error. As part of the prejudice inquiry for ineffective-assistance-of-counsel claims, courts must "consider all the evidence—the good and the bad," *Wong* v. *Belmontes*, 558 U. S. 15, 26 (2009) (*per curiam*), and must "reweigh the evidence in aggravation against the totality of available mitigating evidence," *Wiggins* v. *Smith*, 539 U. S. 510, 534 (2003).

The majority unnecessarily goes further and engages in the reweighing itself. See *ante,* at 8–14. The record in this case is complex, contested, and thousands of pages long. In light of this "extensive record" and "intricate procedural history, . . . this is not an appropriate case to reach and settle [a] fact-sensitive issue." *CRST Van Expedited, Inc.* v. *EEOC*, 578 U. S. 419, 435 (2016). That is particularly true when, as here, the majority in the first instance parses a complex record containing contested medical diagnoses and disputed allegations of abuse and trauma.

"It is not the Court's usual practice to adjudicate either legal or predicate factual questions in the first instance."

2                    THORNELL *v.* JONES

S<small>OTOMAYOR</small>, J., dissenting

*Ibid.*; see also *Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7
(2005) ("[W]e are a court of review, not first view"). Because
I would vacate the judgment below and remand for the
Ninth Circuit to consider the full record in the first in-
stance, I respectfully dissent.

# SUPREME COURT OF THE UNITED STATES

_____

No. 22–982

_____

## RYAN THORNELL, DIRECTOR, ARIZONA DEPARTMENT OF CORRECTIONS, PETITIONER *v.* DANNY LEE JONES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[May 30, 2024]

JUSTICE JACKSON, dissenting.

In its search for legal error in this capital habeas case, the Court makes many mistakes of its own, including misreading the Ninth Circuit's opinion.\* I write separately to emphasize a particular misstep: the Court's conclusion that "the Ninth Circuit all but ignored the strong aggravating circumstances in this case." *Ante,* at 1. In my view, the Ninth Circuit's analysis satisfied its obligations under *Strickland* v. *Washington*, 466 U. S. 668 (1984).

Per our longstanding test for evaluating an ineffective-assistance-of-counsel claim in a capital case, a court "must consider the totality of the evidence" and ask "whether there is a reasonable probability that, absent the [trial counsel's] errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.*, at 695. That is precisely what the Ninth Circuit did here. The panel not only evaluated the mitigating evidence that Jones's trial counsel

_____

\*Compare, *e.g.*, *ante*, at 7–8 (accusing the panel of "appl[ying] a strange Circuit rule that prohibits a court in a *Strickland* case from assessing the relative strength of expert witness testimony"), with *Jones* v. *Ryan*, 52 F. 4th 1104, 1129 (CA9 2022) ("This is not to say, of course, that a district court is prohibited from making credibility determinations").

2                    THORNELL *v.* JONES

JACKSON, J., dissenting

failed to unearth, it also specifically considered all of the aggravating factors.  See *Jones* v. *Ryan*, 52 F. 4th 1104, 1131 (CA9 2022).  To assess prejudice, it then reasoned extensively—by analogy—considering precedent where both the Circuit and this Court had granted habeas relief even in the presence of similar aggravators.  See *id*., at 1131–1133.

To be sure, the Ninth Circuit's discussion of the aggravating factors was concise.  But there is no benchmark length for any such discussion.  Indeed, this Court has granted habeas relief after similarly succinct evaluations of aggravating factors.  See, *e.g.*, *Porter* v. *McCollum*, 558 U. S. 30, 41–42 (2009) (*per curiam*) (discussing aggravators in one paragraph); *Rompilla* v. *Beard*, 545 U. S. 374, 390–393 (2005) (no discussion of aggravators); *Wiggins* v. *Smith*, 539 U. S. 510, 534–538 (2003) (same).  We can hardly fault the Ninth Circuit for using the same approach that this Court itself has previously used.

Thus, to me, the Court's claim that the Ninth Circuit "all but ignored" the aggravators, *ante,* at 1, rings hollow.  And the majority's real critique does not appear to relate to the Ninth Circuit's methodology.  Rather, it merely takes issue with the weight that the Ninth Circuit assigned to each of the relevant facts.  I agree with JUSTICE SOTOMAYOR that we are not the right tribunal to parse the extensive factual record in this case in the first instance.  That is doubly true where the Ninth Circuit committed no legal error in reviewing that record to begin with.  I respectfully dissent.